**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KATE HOFFOWER, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:22-cv-2079 |
| SEAMLESS CONTACTS, INC., | ) ) | Honorable Matthew F. Kennelly |
| Defendant. | ) ) ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

I.    Plaintiff's IRPA Claim Fails as a Matter of Law.................................................................. 5

   A.   Plaintiff Lacks Standing Because She Does Not Allege Injury In Fact. ............................ 5

   B.   The Complaint Fails to Plausibly Allege that Seamless "<u>Advertises</u>" Or "<u>Promotes</u>" Its
Directory Using Plaintiff's Name or Identity. .................................................................... 6

      1.   Plaintiff's Conclusory Allegations Do Not Create an "Advertisement." ....................... 6

      2.   Seamless Does Not Use Plaintiff's Identity to Entice the Purchase of Some Other
Product. ............................................................................................................................. 7

      3.   This Case Is Not Like the Plaintiff-Specific Enticement Cases. .................................... 8

      4.   Seamless's Use Is Exempt from Liability Under IRPA § 35(b)(1). ............................... 9

   C.   Seamless's Directory Is Exempt from Liability as a Matter of Public Concern. .............. 10

      1.   The First Amendment and IRPA § 35(b)(2) Protect Seamless's Use........................... 10

      2.   Even Assuming Seamless "Advertises" and "Promotes" Its Website Using Plaintiff's
Name, that Use Is Exempt Under IRPA § 35(b)(4)....................................................... 12

      3.   Section 230 of the CDA Immunizes Seamless's Use. .................................................. 13

II.   Plaintiff Fails To State A Claim For Unjust Enrichment.................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...............................................................................................4, 5

*Bell Atlantic v. Twombly,*
550 U.S. 544 (2007)...................................................................................................5

*Best v. Berard,*
776 F. Supp. 2d 752 (N.D. Ill. 2011) (Kennelly, J.) ................................................11

*Bonilla v. Ancestry.Com Operations Inc.,*
No. 20-cv-07390, 2021 WL 5795306 (N.D. Ill. Dec. 7, 2021).................................9

*Brooks v. Thomson Reuters,*
No. 21-cv-01418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ............................8

*Callahan v. Ancestry.com Inc.,*
No. 20-cv-08437, 2021 WL 2433893 (N.D. Cal. June 15, 2021)............................6

*Callahan v. Ancestry.com Inc.,*
No. 20-cv-08437, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021) .............................9, 13, 14, 15

*Carafano v. Metrosplash.com, Inc.,*
339 F.3d 1119 (9th Cir. 2003) ................................................................................13

*Collier v. Murphy,*
No. 02 C 2121, 2003 WL 1606627 (N.D. Ill. Mar. 26, 2003) ................................15

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n,*
149 F.3d 679 (7th Cir. 1998) ..................................................................................12

*Dex Media West, Inc. v. City of Seattle,*
696 F.3d 952 (9th Cir. 2012) .................................................................6, 7, 11, 13

*Dobrowolski v. Intelius, Inc.,*
No. 17 CV 1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018).............................8

*G.G. v. Salesforce.com, Inc.,*
No. 20-CV-02335, 2022 WL 1541408 (N.D. Ill. May 16, 2022)...........................13

*Health Sys. Agency v. Va. State Bd. of Med.,*
424 F. Supp. 267 (E.D. Va. 1976) ..........................................................................11

*Jordan v. Jewel Food Stores, Inc.*,
743 F.3d 509 (7th Cir. 2014) ................................................................7

*Kimzey v. Yelp! Inc.*,
836 F.3d 1263 (9th Cir. 2016) ............................................................14

*Lukis v. Whitepages Inc.*,
454 F. Supp. 3d 746 (N.D. Ill. 2020) ...................................................9

*Mashallah, Inc. v . West Bend Mut. Ins. Co.*,
20 F. 4th 311 (7th Cir. 20121) .............................................................15

*Nieman v. VersusLaw, Inc.*,
512 Fed. App'x 635 (7th Cir. 2013) ...................................................12

*Siegel v. ZoomInfo Techs., Inc.*,
No. 21 C 2023, 2021 WL 4306148 (N.D. Ill. Sept. 22, 2021)..............9

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)...............................................................................6

*United States ex rel. Suarez v. AbbVie, Inc.*,
503 F. Supp. 3d 711 (N.D. Ill. 2020) ...................................................3

*Thompson v. Getty Images (US), Inc.*,
No. 13 C 1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013) ..............1, 8

*Vrdolyak v. Avvo, Inc.*,
206 F. Supp. 3d 1384 (N.D. Ill. 2016) .................................5, 6, 12, 13

*Zglobicki v. Travel Channel, LLC*,
No. 11 C 6346, 2012 WL 725570 (N.D. Ill. Feb. 2, 2012)...................11

**Statutes**

765 ILCS 1075/5.....................................................................................5

765 ILCS 1075/30...................................................................................5

765 ILCS 1075/35(b) ..................................................................10, 11, 13

47 U.S.C. § 230......................................................................................13

iii

Defendant Seamless Contacts, Inc. ("Seamless") operates a website directory featuring professional contact information, Compl. ¶ 5—the modern, online equivalent of a phone book. Seamless is aware of no case in which a phone book publisher was ever accused of—let alone held liable for—violating the publicity rights of those listed in the phone book, even if the phone book contained advertisements or was otherwise profitable for its publisher. For good reason. Such a claim would, on its face, stretch beyond its breaking point the right of publicity because, as explained below, courts including this one have held that phone books and similar directories receive full First Amendment protection. Despite that well-settled protection, Plaintiff alleges that when a trial user of Seamless's directory searches for her name and sees an "Upgrade" button displayed on the same page as the search results, that somehow *converts* Seamless's harmless professional directory into a vehicle to "advertise" or "promote" itself using her name for a "commercial purpose" by "exploit[ing]" her "valuable intellectual property." *See, e.g.*, Compl. ¶¶ 3, 4, 10, 17, 19, 22. That attempt to stretch the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq.* ("IRPA") finds no support in the plain language of the statute, its common law roots, or any existing caselaw. It falls flat for two broad reasons.

First, contrary to Plaintiff's conclusory allegations, the passive display of her name among search results does not qualify as an "advertisement" or "promotion" for Seamless's services merely because those search results are near a "Upgrade" graphic. Moreover, this Court has instructed that IRPA prohibits the use of a person's identity to promote or entice the purchase "of some other product." *Thompson v. Getty Images (US), Inc.*, No. 13 C 1063, 2013 WL 3321612 at *2 (N.D. Ill. July 1, 2013). That crucial link is missing here because the thing being previewed (Seamless's directory) is the exact thing allegedly being "advertised." Relatedly, because Seamless's use qualifies as an "audio-visual work" that "does not constitute in and of

itself a commercial advertisement for a product, merchandise, goods, or services" it is exempt from liability under IRPA § 35(b)(1). And fundamentally, Plaintiff fails to allege any of the hallmarks of a use suggestive of promotion or advertisement: there is no targeted advertising sent to her contacts urging them to subscribe to learn more about her; there are no pop-up ads featuring her; and there are no "sneak peaks" of her information or "bait and pay" techniques framed around her. Without plausible allegations that Seamless exploited Hoffower's name or likeness to advertise or promote Seamless, her claims fail. Indeed, with no plausible advertisement, she fails even to allege a concrete injury sufficient to confer standing.

And second, Seamless's directory—which contains information about Plaintiff that is ***publicly available elsewhere on the Internet***—is a matter of free speech of interest to the public. It follows that Seamless's use of Plaintiff's name is (a) protected by the First Amendment to the Constitution and IRPA's § 35(b)(2) exception for public affairs; (b) exempted by § 35(b)(4)'s exception even for advertisements relating to public affairs; and (c) insulated by § 230 of the federal Communications Decency Act ("CDA"). The Court should dismiss these claims.

## RELEVANT FACTS

Seamless operates a searchable database that connects business professionals with potential customers. Compl. ¶ 6. Its website, www.seamless.ai, displays profiles including names, contact information, job titles, places of work, cities of residence, and other information. *Id.* ¶¶ 1, 4. Plaintiff is one of millions of listings. *Id.* ¶ 24. She and the putative class members are non-users of Seamless's directory who claim not to have provided any information to Seamless. *Id.* ¶ 2. Seamless offers free trials to potential subscribers, during which trial users can view and download profiles until the trial user's trial "Credits" have run out. *Id.* ¶ 8. The screenshots in the Complaint reveal that those views are fully unobstructed and in clear text, and

the Complaint does not allege that Seamless either directs or limits which directory entries are searched during the trial period. After the trial credits are exhausted, users may continue to view additional directory entries by purchasing a subscription plan. *Id.* ¶¶ 8–10.

Plaintiff alleges that "Seamless extracted Ms. Hoffower's name and personal information from online sources including her social media accounts and her employer's website." *Id.* ¶ 41-42. That is a concession that the information about her contained in Seamless's directory is publicly available elsewhere on the Internet. Indeed, not only is the contact information included in the Seamless database readily available through a Google search[1] - additional information about Ms. Hoffower including her photograph, state license number and phone number is also available by simple internet search.

Evidently understanding that settled law would doom a claim against Seamless's mere republication of this publicly available information, Plaintiff tweaks her claim to allege without basis that Seamless "exploited" her name in connection with its free trial subscriptions to "advertise" or "promote" its online directory. The Complaint, however, is conspicuously devoid of plausible facts to support that claim. At best, the three proffered screenshots (Compl. ¶¶ 34–35, 37) show search results displayed on the same page as other functionalities, including

---

[1] *See, e.g.*, Kate Hoffower, RDT, LCPC, LSOTP, LSOE profile on Oak Brook Counseling & Wellness "Meet Our Team" page, *available at* https://www.oakbrookwellness. com/kate-hoffower-ma-lcpc; Kate Hoffower profile on Psychology Today webpage, *available at* https://www.psychologytoday.com/us/therapists/kate-hoffower-oak-brook-il/418057; Kate Hoffower profile on The Mental Health Directory webpage, *available at* https:// thementalhealthdirectory.com/healthdirectory/kate-hoffower/ (all websites last visited June 8, 2022). These sites can be judicially noticed under Rule 201(b) of the Federal Rules of Evidence because their existence is both "generally known within the trial court's territorial jurisdiction" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." This Court has judicially noticed private websites as "matters of public record" when deciding a motion to dismiss. *E.g.*, *United States ex rel. Suarez v. AbbVie, Inc.*, 503 F. Supp. 3d 711, 721-22 (N.D. Ill. 2020) (citation omitted). Here, Seamless is not even asking the Court to accept the truth of any statement on the websites—just that they exist and purport to disclose publicly available personal and professional details about the Plaintiff.

"Available Credits" and the option to "Upgrade" once the credits are exhausted. But Plaintiff pleads no facts to support her claim that her identity was used "for commercial purposes" prohibited by IRPA.

Importantly, Plaintiff has **_not_** alleged that any information other than her name, city of residence, email address, place of work, and job title appeared in the Seamless directory; that the directory contains any inaccurate contact information; that her directory information is private; that anyone other than her lawyers searched for or viewed her name on Seamless's directory; that searching for her during the trial period requires payment; that she or anyone else paid to search for or access her contact information; that her name or information was used in targeted email or similar advertisements; that her name or information was used in "pop up" or partially obscured "sneak-peak" advertisements; that her photographic likeness was used in any way; or that she has earned, or could earn, any compensation from her name or phonebook data.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, it is not enough for a complaint to plead facts "that are 'merely consistent with' a defendant's liability";

more than a "sheer possibility" is required to reach the plausibility standard. *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007)).

Critically, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). As explained below, it defies common sense for Plaintiff to claim that Seamless is "advertising" or "promoting" its directory using her identity merely by including an "Upgrade" button where free trial users can upgrade to a paid subscription somewhere near the search results for Plaintiff's (or anyone's) name. With no plausibly alleged advertisement or promotion using Plaintiff's name or identity, her IRPA claim fails, and her unjust enrichment claim goes along with it.

## I.     Plaintiff's IRPA Claim Fails as a Matter of Law.

"To state a claim under the IRPA, [P]laintiff must allege: (1) the use of [her] identity; (2) for commercial purposes; and (3) without [her] consent." *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1386 (N.D. Ill. 2016) (citing 765 ILCS 1075/30). A "commercial purpose" is defined as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS 1075/5. The Complaint misses the mark.

### A.     Plaintiff Lacks Standing Because She Does Not Allege Injury In Fact.

Plaintiff does not allege an injury in fact sufficient to meet Article III's standing threshold, so the Court should dismiss Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). The "'irreducible constitutional minimum' of standing consists of three elements": "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed

by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation

omitted). "[A]t the pleading stage, the plaintiff must clearly allege facts demonstrating each

element." *Callahan v. Ancestry.com Inc.*, No. 20-cv-08437, 2021 WL 2433893, at *3 (N.D. Cal.

June 15, 2021) (citation omitted). Here, Plaintiff does not plausibly plead an advertisement or

promotion and therefore has not plausibly pleaded a concrete injury in fact. Her Complaint does

not confer upon her standing to sue, and the Court should dismiss it under Rule 12(b)(1).

**B.** **The Complaint Fails to Plausibly Allege that Seamless "<u>Advertises</u>" Or "<u>Promotes</u>" Its Directory Using Plaintiff's Name or Identity.**

1. ***Plaintiff's Conclusory Allegations Do Not Create an "Advertisement."***

Seizing on the second definition of "commercial purpose," Plaintiff invokes "advertise"

and its variants 23 times in her Complaint, and "promote" and its variants 8 times. But those

allegations need not be—and should not be—taken at face value. They should instead be taken

for what they are: conclusory assertions lacking plausible facts.

A Plaintiff's conclusory invocation of "advertisement" is not enough to survive a motion

to dismiss. Exercising appropriate scrutiny over similar "advertisement" allegations in 2016, this

Court (Gettleman, J.) dismissed a plaintiff's IRPA claim after rejecting the plaintiff's premise

that a defendant's online attorney directory's use of advertisements on attorney profiles

converted each profile into an advertisement in violation of IRPA. Specifically, the plaintiff in

*Vrdolyak*, 206 F. Supp. 3d at 1388, brought a putative class action against an online attorney

directory, contending that "placing another attorney's 'ad' or 'Sponsored Listing' on plaintiff's

profile page turns the entire profile into an ad for the sponsored attorney" in violation of IRPA.

The defendant argued, to the contrary, "that its listings are simply a computerized version of the

paper 'yellow pages' listings that received full constitutional protection in *Dex Media West, Inc.*

*v. City of Seattle*, 696 F.3d 952, 962 (9th Cir. 2012) ."[2] *Id.* Agreeing with the defendant, Judge Gettleman rejected the plaintiff's "advertisement" premise. "At the end of the day," he reasoned, "this issue depends on whether one views defendant's actions as providing an attorney listing or directory, with advertisements placed on it, or whether one views each attorney profile as an advertisement for the 'Sponsored Listing.'" *Id.* He found that defendant's actions were more similar to "the yellow pages directory, which received First Amendment protection" than they were to the defendant's actions in another case, *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 515 (7th Cir. 2014), where a supermarket used Michael Jordan's identity in an advertisement.

That reasoning applies with full force and supports dismissal here. Plaintiff anchors her right of publicity claim in the fact that the search results for her name appear on a page that includes, among other platform functionalities, an "Available Credits" counter that monitors free credit usage and an "Upgrade" button that allows a user to opt-in to a paid upgrade for additional searches. Compl. ¶¶ 8, 35. Her Complaint contains three screenshots of Seamless's directory: one (*id.* ¶ 34) doesn't contain a "Upgrade" button, and another (*id.* ¶ 37) doesn't even contain her name or any information about her whatsoever. It strains the common understanding of "advertisement" for Plaintiff to plead, from the mere presence of certain "upgrade" graphics near search results for her name (¶ 35 screenshot), that Seamless is somehow using Plaintiff's name or identity to "advertise" or "promote" its services. Indeed, as Plaintiff concedes, a trial user can see her information without paying anything.

> **2.** ***Seamless Does Not Use Plaintiff's Identity to Entice the Purchase of Some Other Product.***

---

[2] In *Dex Media*, the Ninth Circuit concluded that "publications like yellow pages directories and newspapers receive full First Amendment protection not only because their content is somehow inextricably intertwined, but because, as a threshold matter, they do not constitute commercial speech." 696 F.3d at 962.

For a use to qualify as a commercial "advertisement" under IRPA, the advertisement must be for purposes of enticing the purchase of a product or service separate from the one on which the plaintiff's identity appears. Dismissing a similar claim, this Court explained that "[t]he statute's commercial purpose requirement does not prohibit the mere sale of someone's photograph. Rather IRPA prohibits the use of an individual's image to promote or entice the purchase of *some other product than the photograph itself*." *Thompson*, 2013 WL 3321612, at *2 (Kennelly, J.) (citation omitted) (emphasis added).[3] By the same logic, IRPA's "commercial purpose" requirement also does not prohibit the mere re-publication of anyone's already-public contact information in an online directory like Seamless's. Like the defendant in *Thompson*, Seamless here "displays a preview of the exact thing it seeks to sell." *Id.* In *Thompson*, the previewed thing was a *photograph*; here, the previewed thing is a *database of contact information*. For both, "showing a buyer [a preview of the thing] that she is considering whether to buy" does not qualify as a "'commercial purpose' as the IRPA uses that term." *Id.* IRPA prohibits neither use.

3. ***This Case Is Not Like the Plaintiff-Specific Enticement Cases.***

Plaintiff is sure to cite in her opposition brief a number of recent right-of-publicity cases in which courts have allowed IRPA and similar claims against website providers to proceed past motions to dismiss. Those cases offer Plaintiff no help, though, because unlike the plaintiffs in those other cases, this Plaintiff is not made the unwitting subject of an advertisement or promotion through the use of her photo in targeted sales emails, salacious "teaser" profiles

---

[3] Other courts have applied the same limitation to right-of-publicity claims. *E.g.*, *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018) ("The plaintiffs' identities are not used to promote a separate product—they are used because plaintiffs' identities are part of the product offered for sale."; *Brooks v. Thomson Reuters*, No. 21-cv-01418, 2021 WL 3621837, at * 4 (N.D. Cal. Aug. 16, 2021) ("Virtually all right of publicity cases involve the use of a person's name or likeness to advertise a separate product.") (citation omitted).

promising tidbits about her personal life, or pop-up ads "baited" with partially obscured facts about her. *See, e.g.*, *Bonilla v. Ancestry.Com Operations Inc.,* No. 20-cv-07390, 2021 WL 5795306, at *1 (N.D. Ill. Dec. 7, 2021) (alleging that Ancestry "advertises by sending promotional emails" containing "'hints' corresponding to yearbook records Ancestry believes may be related to the potential customer"); *Siegel v. ZoomInfo Techs., Inc.*, No. 21 C 2023, 2021 WL 4306148, at *1 (N.D. Ill. Sept. 22, 2021) (alleging that trial users of defendants' directories saw only a fraction of available "teaser" information about the plaintiffs, presented through pop-up windows or previews featuring their images, with full access conditioned on payment); *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 753 (N.D. Ill. 2020) ("In the free previews . . . , clicking on 'view results,' 'get their background check,' 'continue to results,' 'view all relatives,' or 'criminal records' leads to a pay screen offering monthly subscription packages."). In short, those other sites dangle information about the plaintiffs in front of users and try to convince users to pay to learn more, so Seamless refers to those cases as the "***plaintiff-specific enticement cases***." This is ***not*** such a case.

In the plaintiff-specific enticement cases, some courts have held that the allegations are enough to support the inference, at the pleading stage, that the plaintiffs were being used as an advertisement or promotional "inducement" to sell an unrelated product. *But see Callahan v. Ancestry.com Inc.*, No. 20-cv-08437, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021) (dismissing right of publicity claim). Seamless is not aware of any case, however, imposing liability simply because the plaintiff's name appears in a list of directory search results that is located near other website functionalities, including a paywall or "upgrade" button. More is required to transform directory search results into actionable, commercial exploitation of a plaintiff's publicity right.

4. ***Seamless's Use Is Exempt from Liability Under IRPA § 35(b)(1).***

Not only does Plaintiff's failure to allege a plausible commercial use through so-called "advertising" or "promotion" using her name or identity fail to meet the elements of her IRPA claim, but it also reveals that Seamless's use is exempt from liability under IRPA's statutory exceptions. IRPA § 35(b)(1) provides that the Act does not apply to the "use of an individual's identity in an attempt to . . . describe . . . that individual in a[n] . . . audio-visual work, provided that the . . . work . . . does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services . . . ." 765 ILCS 1075/35(b)(1). As already explained, nothing alleged in Plaintiff's Complaint plausibly establishes that Seamless's incorporation of her name in its directory is itself a "commercial advertisement," so Seamless's use to describe Plaintiff on its website (i.e., an "audio-visual work") is expressly exempt from liability.

**C.     Seamless's Directory Is Exempt from Liability as a Matter of Public Concern.**

It bears repeating that the only service that Seamless is alleged to offer is an online directory featuring professional contact information: the modern equivalent of a phone book. Unlike certain of the plaintiff-specific enticement cases, it offers nothing salacious like arrest records. Under settled law, a directory like that qualifies as a matter of public interest, which means it is (1) protected by the First Amendment and IRPA § 35(b)(2); exempt under IRPA § 35(b)(4); and immunized from liability under the CDA.

1.     ***The First Amendment and IRPA § 35(b)(2) Protect Seamless's Use.***

To allow Plaintiff's IRPA claim to proceed would create tension between IRPA and Seamless's First Amendment right to publish a yellow-pages-style online directory, which qualifies as a matter within the public interest. In any event, IRPA § 35(b)(2) expressly exempts from liability the use of one's identity in connection with public affairs. Interpreting that exemption in light of the First Amendment supports dismissal of Plaintiff's IRPA claim.

This Court has recognized that the First Amendment's "core purposes are implicated with the government—either directly or through a legal standard that imposes civil liability— 'imposes sanctions on the publication of truthful information of public concern.'" *Best v. Berard*, 776 F. Supp. 2d 752, 757 (N.D. Ill. 2011) (citation omitted) (Kennelly, J.). The Court accordingly interprets IRPA "consistent with its meaning but with an[] eye toward avoiding a First Amendment violation." *Id.* at 759. This Court in *Best* therefore determined that the plaintiff's arrest, while not newsworthy, was still a matter of public concern such that the exemption in IRPA § 35(b)(2) for public affairs, interpreted in light of the First Amendment, supported dismissal. 765 ILCS 1075/35(b)(2); *see also Zglobicki v. Travel Channel, LLC*, No. 11 C 6346, 2012 WL 725570, at *2 (N.D. Ill. Feb. 2, 2012) (dismissing hot-dog restaurant patrons' IRPA claim against television show featuring the restaurant because the show was "a subject of general interest and of value and concern to the public'). The same reasoning supports dismissal here. As noted in *Dex Media*, 696 F.3d at 954, a yellow-pages directory including "names, addresses, and phone numbers of local businesses and professionals" qualifies as a matter of public interest fully protected by the First Amendment. The Ninth Circuit there saw no "principled reason to treat telephone directories differently from newspapers, magazines, television programs, radio shows, and similar media that does not turn on an evaluation of their contents." *Id.* at 965. Online searchable directories are the modern version of the old-fashioned yellow-pages, and like their paper-printed counterparts, they are fully protected under the First Amendment because of the informational role they serve. *Id.* at 953-54; s*ee also Health Sys. Agency v. Va. State Bd. of Med.*, 424 F. Supp. 267, 269 (E.D. Va. 1976) (physician directory protected).

As the Court in *Vrdolyak* explained, to hold that a directory is not protected by the First

Amendment "would lead to the unintended result that any entity that publishes truthful newsworthy information about individuals such as teachers, directors and other professionals, such as a newspaper or yellow page directory, would risk civil liability simply because it generated revenue from advertisements placed by others in the same field[,]" 206 F. Supp. 3d at 1388, or here, simply because it offered trial memberships in an effort to generate subscription revenue. After all, it's called the Illinois *Right of Publicity* Act, not the Illinois *Anti-Trial Memberships* Act; IRPA liability cannot turn on the presence of an "Upgrade" button.

The fact that Seamless offers a paid version of its directory makes no difference because "speech is protected even when 'carried in a form that is "sold" for profit.'" *Nieman v. VersusLaw, Inc.*, 512 Fed. App'x 635, 638 (7th Cir. 2013) (affirming dismissal of plaintiff's invasion of privacy claim against websites that allegedly allowed plaintiff's potential employers to learn about his prior lawsuit against another employer) (citations omitted). "If the result were otherwise, then even an editorial in The New York Times would constitute commercial speech because the newspaper seeks subscribers through advertisements." *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998). Accordingly, Seamless's use of Plaintiff's name and identity in its directory is "for non-commercial purposes" and is therefore exempt under § 35(b)(2) when interpreted in light of the First Amendment.

2. ***Even Assuming Seamless "Advertises" and "Promotes" Its Website Using Plaintiff's Name, that Use Is Exempt Under IRPA § 35(b)(4).***

Plaintiff has not plausibly pleaded that Seamless is advertising or promoting its directory using Plaintiff's identity merely because Plaintiff's name appears in search results on the same page as an "Upgrade" button. But even assuming that such adjacency qualifies as "advertising" or "promotion" using her name, that use is expressly exempted from liability by IRPA § 35(b)(4). Specifically, the "Act does not apply to . . . promotional materials, advertisements, or

- 12 -

commercial announcements for" other exempted uses, including those described in paragraph (b)(2). 765 ILCS 1075/35(b)(4). Paragraph (b)(2), in turn, exempts uses "for non-commercial purposes, including any . . . public affairs," and courts have held that directory information qualifies as a matter in the public interest. *See, e.g.*, *Dex Media* and *Vrdolyak*, *supra*. In short, although Seamless does not use Plaintiff's identity to advertise its directory, if the Court credits Plaintiff's conclusory allegations on that point, such advertisement is still expressly exempt from liability.

3. ***Section 230 of the CDA Immunizes Seamless's Use.***

Seamless's use is independently protected by § 230 of the CDA, which was developed to stimulate and promote a robust and competitive free market for the Internet and other interactive computer service providers. *See* 47 U.S.C. §§ 230(b)(1)–(2). In aid of these goals, the CDA bars liability for claims—including privacy-related right of publicity claims—predicated on the re-publication of "information provided by another information content provider." 47 U.S.C. § 230(c)(1). *See e.g.*, *Callahan*, No. 20-cv-08437, 2021 WL 783524, at *5 (N.D. Cal. Mar. 1, 2021) (dismissing right of publicity claims as barred by CDA); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (CDA barred right of publicity claim). "[I]nvocation of § 230 immunity in a Rule 12(b)(6) motion is '[c]onsistent with Congress' intent to confer broad immunity for the re-publication of third-party content.'" *G.G. v. Salesforce.com, Inc.*, No. 20-CV-02335, 2022 WL 1541408, at *4 (N.D. Ill. May 16, 2022) (citation omitted).

Plaintiff's allegations confirm at most that Seamless displays contact information it obtains from third parties, which squarely qualifies for immunity under the CDA. Plaintiff cannot plausibly contend that the content, which she claims as her own "intellectual property" and violative of her rights (i.e., her "name, city of residence, email address, place of work, and job title"), Compl. ¶ 33, is Seamless's original content. Indeed, she admits that she "does not

know how Seamless obtained" that information, *id.* ¶¶ 13, 41, and that "Seamless **extracted Ms. Hoffower's name and personal information from online sources** including her social media accounts and her employer's website." *Id.* ¶ 41 (emphasis added). That is nothing short of a concession that her information is publicly available on the Internet and that Seamless did not create it. And according to Plaintiff's Complaint, in order to see Plaintiff's name on the Seamless directory, a user must search for it him- or herself. *Id.* ¶ 8.

Evidently anticipating a CDA defense, Plaintiff baldly asserts that, "Seamless is the sole author, designer, and implementor **of the advertising techniques and profiles giving rise to this lawsuit**." *Id.* ¶ 12 (emphasis added). That is not enough to evade the CDA. As explained in Part I.B., *supra*, there is no plausible use of Plaintiff's name as an "advertisement" or "promotion" for Seamless's directory, contrary to her conclusory allegations. And although she might argue that the directory information is displayed in a format that includes unique or proprietary search functionality such as an upgrade feature displayed with search results, that same argument failed in *Callahan* and should fail here too:

> Ancestry extracts yearbook data (names, photographs, and yearbook date), puts the content on its webpages and its email solicitations, adds information (such as estimate birth year and age), and adds interactive buttons (such as a button promoting a user to upgrade to a more expensive subscription). The plaintiffs say that by these actions, Ancestry creates content. . . . Ancestry did not transform data and instead offered data in a form – a platform with different functionalities – that did not alter the content. Adding an interactive button and providing access on a different platform did not create content. They just added functionality.

*Callahan*, 2021 WL 783524, at *6 (*citing Kimzey v. Yelp! Inc.,* 836 F.3d 1263, 1270 (9th Cir. 2016) (holding that Yelp! had § 230 immunity for display of restaurant contact, location, and review information despite Yelp!'s adding search functionality, filters, and star ratings)). If anything, the conduct alleged in *Callahan* is more transformative than the conduct here, as Plaintiff makes no allegation that Seamless created targeted ads or email solicitations featuring

her identity, as was claimed in *Callahan.* 2021 WL 783524, at *1. The CDA is a complete bar to Plaintiff's claims, whether they are viewed as a broad attack on the re-publication of already-public data or a narrow attack on the inclusion of her contact information on the same page as an "Upgrade" button, and there is no reason in law or logic to depart from the court's reasoning in *Callahan* on this very point.

## II. Plaintiff Fails To State A Claim For Unjust Enrichment.

A Plaintiff having no IRPA claim and unable to show improper conduct has no unjust enrichment claim. *See Collier v. Murphy*, No. 02 C 2121, 2003 WL 1606627, at *3 (N.D. Ill. Mar. 26, 2003) (dismissing plaintiff's unjust enrichment claim that was "merely [a] claim[] for relief based on his substantive counts [including an IRPA claim], which have been dismissed"); *see also Mashallah, Inc. v . West Bend Mut. Ins. Co.*, 20 F. 4th 311 (7th Cir. 20121) ("To the extent that the unjust enrichment claim is premised on [other] claims, the unjust enrichment claims cannot survive the proper dismissal of those matters.") (citation omitted). Because Plaintiff's IRPA claim should be dismissed for the reasons explained above, her unjust enrichment claim should be dismissed along with it.

## CONCLUSION

This case proceeds from the same premise as a number of plaintiff-specific enticement cases that have survived dismissal: that a directory is "advertising" or "promoting" its online directory by using her name, likeness, or identity. But facts matter, and they show that this case stands apart from any of the plaintiff-specific enticement cases. This Plaintiff's alleged facts do not plausibly support her claim that Seamless has appropriated her name or identity for commercial use by exploiting it in "advertisements" or "promotions" of its online directory of professional contact information, so the Court should dismiss the Complaint as an attempt to effect a sea of change on IRPA and expand liability to all corners of the Internet.

Dated: June 27, 2022                          Respectfully submitted,

                                              SEAMLESS CONTACTS, INC.

                                              By: /s/ Steven L. Baron
                                                    One of its attorneys

Ann Marie Mortimer (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
(213) 532-2000
amortimer@HuntonAK.com

Brian A. Wright (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
951 East Byrd Street
Richmond, Virginia 2321
(804) 788-8710
wrightb@HuntonAK.com

Steven L. Baron (ARDC #6200868)
Sharon R. Albrecht (ARDC #6288927)
BARON HARRIS HEALEY
150 South Wacker Drive, Suite 2400
Chicago, Illinois 60606
(312) 741-1030
sbaron@bhhlawfirm.com
salbrecht@bhhlawfirm.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 27, 2022, I caused a copy of the foregoing to be electronically filed using the CM/ECF system, which will send notification to counsel of record of such filing by operation of the Court's electronic system. Parties may access this filing via the Court's electronic system.

By: <u>/s/ Steven L. Baron</u>