**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

KATE HOFFOWER, on behalf of herself and
all others similarly situated,

                    Plaintiff,

v.

SEAMLESS CONTACTS INC., a Delaware
Corporation,

                    Defendant.

Case No. 1:22-cv-02079

Judge Matthew F. Kennelly

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

i

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ............................................................................................ 1

II.  LEGAL STANDARDS ................................................................................................... 2

III. Argument ............................................................................................................... 3

    A.  Plaintiff Alleged Injury Sufficient to Establish Article III Standing ........................... 3

    B.  Plaintiff Alleges Seamless Uses Her Identity for a "Commercial Purpose." ............... 4

    C.  Seamless's Advertisements Promoting its Service to B2B Marketers at Private Companies Does Not Fall Within the "News" or "Public Affairs" Exemption. ........ 10

    D.  CDA Immunity Does Not Apply. .............................................................................. 12

    E.  Plaintiff's Unjust Enrichment Claim is Properly Plead .............................................. 15

IV. CONCLUSION........................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Atlantic Recording Corp. v. Project Playlist, Inc.*,
603 F. Supp. 2d 690 (S.D.N.Y. 2009) .............................................................. 14, 15

*Best v. Berard*,
776 F. Supp. 2d 752 (N.D. Ill. 2011) ...................................................................... 11

*Best v. Malec*,
No. 09-cv-7749, 2010 WL 2364412 (N.D. Ill. June 11, 2010).................................. 9

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983)................................................................................................... 10

*Bonilla v. Ancestry.com*,
574 F. Supp. 3d 582 (N.D. Ill. 2021)........................... 2, 3, 4, 7, 8, 9, 11, 12, 15

*Boshears v. PeopleConnect*,
No. 21-cv-01222-MJP, 2022 WL 888300 (W.D. Wash. Mar. 25, 2022) ...... 2, 12, 13

*Brooks v. Thomson Reuters Corp.*,
No. 21-cv-01418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ........................... 12

*Brown v. Intelius, Inc.*,
No. 4:12-cv-852, 2012 WL 5878230 (E.D. Mo. Nov. 21, 2012) ........................... 12

*Callahan v. Ancestry*,
No. 20-cv-8437-LB, 2021 WL783524 (N.D. Cal. Mar. 1, 2021)........................ 2, 4

*Callahan v. PeopleConnect*,
No. 20-cv-09203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021),
*aff'd in part*, No. 21-16040 (9th Cir. Mar. 18, 2022) ................................. 2, 3, 8, 12

*Camacho v. The Control Group Media Co.*,
No. 21-cv-1954, 2022 WL 3093306 (S.D. Cal. July 18, 2022)...................... 2, 12, 14

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) .................................................................................. 15

*Collier v. Murphy*,
No. 02-cv-2121, 2003 WL 1606637 (N.D. Ill. Mar. 26, 2003) ................................ 9

*Commodity Trend Ser. v. Commodity F. T. Comm*,
149 F.3d 679 (7th Cir. 1998) .................................................................................. 12

*Dex Media W., Inc. v. City of Seattle,*
    696 F.3d 952 (9th Cir. 2012) ................................................................... 6, 12

*Doe v. Friendfinder Network, Inc.,*
    540 F. Supp. 2d 288 (D.N.H. 2008) ............................................................... 14

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,*
    521 F.3d 1157 (9th Cir. 2008) ...................................................................... 13

*FTC v. Accusearch, Inc.,*
    2007 WL 4356786 (D. Wyo. Sep. 28, 2007) ................................................. 12

*Gabiola v. Sarid,*
    No. 16-cv-02076, 2017 WL 4264000 (N.D. Ill. Sep. 26, 2017) ..................... 2

*Gonzalez v. Google LLC,*
    2 F.4th 871 (9th Cir. 2021) .......................................................................... 13

*Health Sys. Agcy., Etc. v. Va. State Bd.,*
    424 F. Supp. 267  (E.D. Va. 1976) ................................................................ 12

*Kellman v. Spokeo,*
    No. 21-cv-08976, --- F. Supp. 3d ----, 2022 WL 1157500 (N.D. Cal. April 19, 2022). 2, 3, 4, 6,
    12, 14

*Knapke v. PeopleConnect,*
    553 F. Supp. 3d 865 (W.D. Wash. 2021),
    *rev'd and remanded on other grounds*, No. 21-35690 (9th Cir. Jun. 29, 2022)..... 2, 5, 6, 11, 12

*Kolebuck-Utz v. Whitepages Inc.,*
    No. 21-cv-53, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021) ......................... 2, 12

*Krause v. RocketReach, LLC,*
    561 F. Supp. 3d 778 (N.D. Ill. 2021) ...................................................... 2, 5, 7, 12

*Lukis v. Whitepages, Inc.,*
    542 F. Supp. 3d 831 (N.D. Ill. 2020) .................................. 2, 3, 5, 8, 9, 11, 12, 13

*Martinez v. ZoomInfo,*
    No. 21-cv-5725, 2022 WL 1078630 (W.D. Wash. April 11, 2022) ............................ 2, 3, 4, 11

*Nieman v. Versuslaw, Inc.,*
    No. 12-cv-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012),
    *aff'd*, 512 Fed. App'x 635, 638 (7th Cir. 2013) ................................................. 11, 14

*Sessa v. Ancestry.com,*
    561 F. Supp. 3d 1008 (D. Nev. 2021) .............................................. 2, 3, 4, 5, 11, 12

*Siegel v. ZoomInfo Technologies, Inc.*,
    No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021) .................................... 2, 5, 8, 12

*Stayart v. Yahoo! Inc*.,
    651 F. Supp. 2d 873 (E.D. Wis. 2009),
    *aff'd*, 623 F.3d 436 (7th Cir. 2010) ................................................................... 13, 14

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) ...................................................................... 2

*Thompson v. Getty Images (US), Inc.*,
    No. 13-cv-1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013) ................................. 7, 8

*Toney v. L'Oreal USA, Inc*.,
    406 F.3d 905 (7th Cir. 2005) ........................................................................ 8

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ........................................................................... 3, 4

*Vinson v. Vermilion Cty., Ill*.,
    776 F.3d 924 (7th Cir. 2015) ........................................................................ 2

*Vrdolyak v. Avvo, Inc.*,
    206 F. Supp. 3d 1384 (N.D. Ill. 2016) ........................................................... 6

*Zglobicki v. Travel Channel, LLC*,
    No. 11-cv-6346, 2012 WL 725570 (N.D. Ill. Feb. 2, 2012) .................................... 11

**Statutes**

Illinois Right to Publicity Act, 765 ILCS 1075/30 .......................... 1, 4, 5, 6, 8, 10, 11, 12, 14, 15

## I. PRELIMINARY STATEMENT

Seamless Contacts, Inc. ("Seamless") is in the business of selling personal information without permission to marketers. Seamless obtained names, contact information, job titles, places of work, cities of residence, and other personal information for millions of individuals without their permission. Dkt. No. 1 ("Compl."), ¶¶2-4. Seamless organized individuals' personal information into profiles representing each individual's identity and persona. *Id*., ¶34-25. Seamless distributed these profiles publicly on the Internet to advertise and promote subscriptions to Seamless services. *Id*., ¶¶35-40. Marketers who searched for an individual on Seamless's landing page received Seamless's profiles for that individual in response. *Id*., ¶35. Marketers who exceeded the proscribed number of free searches, or who clicked the "Upgrade" button on an individual's profile, received a promotional message prompting the purchase of a subscription. *Id*., ¶¶37-39. Seamless advertised that, among other services, subscribers would receive the ability to search, view, and download Plaintiff's profiles and those of millions of Class members, and the ability to set up "Real-Time Alerts" that notify the subscriber when Plaintiff or another specific Class member "change[s] or leave[s] [their] job." *Id*., ¶39. Among other customers, Seamless advertised its subscription services to salespeople, who use its directory and related services to target individuals with unsolicited promotions. *See id*.

Consequently, Seamless appropriated intellectual property that belongs to Plaintiff and the Class: their identities. The Illinois Right to Publicity Act ("IRPA") prohibits "us[ing] an individual's identity for a commercial purpose . . . without . . . written consent." 765 ILCS 1075/30. The IRPA recognizes an individual's "right to control and to choose whether and how to use [her] identity for commercial purposes." 765 ILCS 1075/10.

1

Every argument Seamless advances in its motion to dismiss has been rejected by many District and Circuit courts across the country, including in five decisions in this District.[1] Two of these decisions evaluated right of publicity claims against ZoomInfo, a competitor of Seamless that, like Seamless, advertises a subscription database to business-to-business ("B2B") marketers by displaying searchable profiles containing individuals' names and contact information.[2] There is no reason for a different result here. Seamless' motion should be denied.

## II. LEGAL STANDARDS

On a Rule 12(b)(6) motion, courts "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A claim survives if it is "plausible on its face." *Vinson v. Vermilion Cty., Ill.*, 776 F.3d 924, 928 (7th Cir. 2015).

---

[1] *See, e.g.*, *Bonilla v. Ancestry.com*, 574 F. Supp. 3d 582 (N.D. Ill. 2021); *Siegel v. ZoomInfo Technologies, Inc.*, No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021); *Krause v. RocketReach, LLC*, 561 F. Supp. 3d 778 (N.D. Ill. 2021); *Lukis v. Whitepages, Inc.*, 542 F. Supp. 3d 831, 843-44 (N.D. Ill. 2020); *Gabiola v. Sarid*, No. 16-cv-02076, 2017 WL 4264000 (N.D. Ill. Sep. 26, 2017); *Camacho v. The Control Group Media Co.*, No. 21-cv-1954, 2022 WL 3093306 (S.D. Cal. July 18, 2022); *Martinez v. ZoomInfo*, No. 21-cv-5725, 2022 WL 1078630 (W.D. Wash. April 11, 2022); *Kellman v. Spokeo*, No. 21-cv-08976, --- F. Supp. 3d ----, 2022 WL 1157500 (N.D. Cal. April 19, 2022); *Boshears v. PeopleConnect*, No. 21-cv-01222-MJP, 2022 WL 888300 (W.D. Wash. Mar. 25, 2022); *Callahan v. PeopleConnect*, No. 20-cv-09203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021), *aff'd in part*, No. 21-16040 (9th Cir. Mar. 18, 2022); *Callahan v. Ancestry*, No. 20-cv-8437-LB, 2021 WL783524 (N.D. Cal. Mar. 1, 2021); *Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008 (D. Nev. 2021); *Knapke v. PeopleConnect*, 553 F. Supp. 3d 865, 878-80 (W.D. Wash. 2021), *rev'd and remanded on other grounds*, No. 21-35690 (9th Cir. Jun. 29, 2022); *Kolebuck-Utz v. Whitepages Inc.*, No. 21-cv-53, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021).

[2] *Martinez v. ZoomInfo*, No. 21-cv-5725, 2022 WL 1078630 (W.D. Wash. April 11, 2022); *Siegel v. ZoomInfo Technologies, Inc.* No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021).

## III.  ARGUMENT

### A.    Plaintiff Alleged Injury Sufficient to Establish Article III Standing

In an underdeveloped one-paragraph argument, Seamless argues Plaintiff "does not allege injury in fact." Dkt. No. 15, at *5-6. At least six District Courts, including two in this District, have rejected Seamless's argument, ruling that plaintiffs have Article III standing to assert right of publicity and misappropriation of name or likeness claims against websites that use personal information gathered from publicly available sources to advertise subscriptions. *See Martinez v. ZoomInfo*, No. 21-cv-5725, 2022 WL 1078630, at *2-6 (W.D. Wash. April 11, 2022) (Pechman, J.) (plaintiff had standing to pursue parallel California statutory and common law claims against a direct competitor of Seamless that uses profiles of names, contact information, job titles, and places of work to advertise subscriptions without consent); *Callahan v. PeopleConnect*, No. 20-cv-09203, 2021 WL 5050079, at *14-18 (N.D. Cal. Nov. 1, 2021) (Chen, J.); *Kellman v. Spokeo*, No. 21-cv-08976, --- F. Supp. 3d ----, 2022 WL 1157500, at *4-6 (N.D. Cal. April 19, 2022) (Orrick, J.); *Lukis v. Whitepages Inc.*, No. 19-cv-4871, 2021 WL 3022319, at *3-4 (N.D. Ill. July 16, 2021) (Feinerman, J.); *Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008, 1020-1023 (D. Nev. 2021) (Navarro, J.); *Bonilla v. Ancestry.com*, 574 F. Supp. 3d 582, 590-591 (N.D. Ill. 2021) (Kendall, J.).

As these cases demonstrate, Plaintiff has standing because she alleges harms that traditionally gave rise to a common law claim for misappropriation of name and likeness. Under *TransUnion LLC v. Ramirez*, courts evaluating whether a statutory violation gives rise to Article III standing must "ask[] whether plaintiffs have identified a . . . common-law analogue for their asserted injury." 141 S. Ct. 2190, 2204 (2021). If a common-law analogue exists, and the harm alleged "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit" at common law, then Article III standing exists. *Id.*, at 2209 (quoting *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)). Here, Plaintiff alleges claims under Illinois' right of publicity

statute, which "codifies the common law tort of right of publicity." *Bonilla*, 574 F. Supp. 3d at 591(citations omitted). Because Plaintiff alleges harms that traditionally gave rise to a common law claim, Plaintiff has Article III standing to pursue both his statutory and common law claims. *See, e.g.*, *id.* Specifically, Plaintiff alleges four such harms: economic injury from Seamless's exploitation and profiting from her identity; infringement of her intellectual property; denial of her right to control the commercial use of her name and identity; and mental injury. *See* Compl., ¶¶22, 44-45. All these harms have been recognized by the above-cited courts as giving rise to Article III standing, including by courts evaluating Illinois claims.

Seamless cites only one decision in which a court facing similar facts found the plaintiffs lacked standing. Dkt. No. 15, at *6 (citing *Callahan v. Ancestry.com Inc*., No. 20-cv-08437, 2021 WL 2433893, at *5 (N.D. Cal. June 15, 2021)). The courts in *Kellman*, *Martinez*, *Sessa*, *PeopleConnect*, and *Bonilla* explicitly considered and rejected the reasoning in *Callahan v. Ancestry* as inconsistent with controlling precedent, including the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190. This Court should follow Judges Orrick, Pechman, Navarro, Chen, and Kendall in rejecting the reasoning of *Callahan v. Ancestry*.

## B. Plaintiff Alleges Seamless Uses Her Identity for a "Commercial Purpose."

The IRPA defines "commercial purpose" as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product . . . or services; [or] (ii) for purposes of advertising or promoting products . . . or services." Seamless violated the IRPA by using Plaintiff's identity to sell its subscription services to B2B marketers who wish to track Plaintiff's activities and contact her with unsolicited promotions.

The Complaint shows two methods by which Seamless directly links Plaintiff's identity to a solicitation (*i.e.*, an "offering for sale," "advertis[ement]," and "promoti[on]") for a subscription. First, B2B marketers who are considering purchasing a Seamless subscription may search for and

view Plaintiff's profile as part of a free trial that includes a limited number of free "Credits." Compl., ¶¶35-38. When the marketer has expended all her free "Credits" by performing searches and other actions on the site, she must purchase a subscription at a cost between $99 and $147 per month to continue searching and viewing Plaintiff's profile and the profiles of millions of other Class members. *Id*. Second, on the page of search results displaying Plaintiff's identity, the website prompts marketers to "Upgrade." *Id*., ¶35. B2B marketers who purchase an "Upgrade" receive a variety of services, including the ability to set up "Real-Time Alerts" that will notify the marketer when Plaintiff "change[s] or leave[s] [her] job." *Id*., ¶38.

Many courts, including two in this District, have held that highly similar website flows were "advertising or selling" and using identities "for a commercial purpose" under the IRPA and parallel state right of publicity statutes. For example, in *Sessa* and *Siegel*, those courts held that plaintiffs stated statutory right of publicity claims when they plead that websites provided public access to profiles of the plaintiffs' personal information as part of a "free trial" that expired and required payment after a certain number of searches. *Sessa*, 561 F. Supp. 3d at 1030 ("free-trial subscribers are expected to convert to paid users if their searches generate sufficient value to the trial subscriber to motivate them to pay for a subscription"); *Siegel*, 2021 WL 4306148, at *3 ("after the free trial expires . . . ZoomInfo sell[s] paid access"); *see also Lukis*¸ 454 F. Supp. 3d at 751 (reaching similar conclusion for website flow using "free preview" reports). Seamless's free "Credits" are just such a "free trial." Similarly, in *PeopleConnect*, *Knapke*, and *Krause*, those courts held that plaintiffs stated right of publicity claims when websites displayed profiles of the plaintiffs' personal information accompanied by buttons prompting the user to purchase a subscription. *Krause*, 561 F. Supp. 3d at 784 (website advertised using "preview webpage" displaying "summary information about plaintiff" and a "button labeled, 'View Plans Now,'"

5

which linked to page soliciting payment); *PeopleConnect*, 2021 WL 5050079, at *1; *Knapke*, 553 F. Supp. 3d at 876-877. That is what Seamless does with its "Upgrade" buttons. Compl., ¶35. As these cases confirm, Seamless's use of Plaintiff's identity as part of a free trial, and as part of pages soliciting "Upgrades" to paid subscriptions plans, is use "on or in connection with the offering for sale" and/or "advertising or promoting," and therefore gives rise to an IRPA claim.

Seamless acknowledges the large "number of recent right-of-publicity cases in which courts have allowed IRPA and similar claims against website providers to proceed." Dkt. No. 15, at *8. Attempting to distinguish these rulings, Seamless posits several supposed reasons why its advertising practices are supposedly different. None hold water.

**First**, Seamless relies on *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384 (N.D. Ill. 2016) and *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952 (9th Cir. 2012), for the proposition that Seamless's public display of profiles about individuals as part of the free trial it offers to B2B marketers does not constitute an advertisement for its subscription services. Dkt. No. 15, at *10-11. Both cases are easily distinguished. In *Dex*, the Seattle city government sought to forbid the publication of the directory itself (a phonebook). 696 F.3d at 959. The presence of advertisements for unrelated local businesses did not render the phonebooks "commercial speech" because there was "no clear link" between the noncommercial phone listings and the businesses being advertised. *Id*. Here, Plaintiff does not seek to prevent publication of Seamless's directory; she seeks only to prevent Seamless from using her identity to advertise subscriptions. Furthermore, there is a "clear link" between each profile and the subscription Seamless is selling. Seamless's profiles expressly tie the purchase of a subscription to the ability to view Plaintiff's information and set up "Real-Time Alerts" to track her job changes. Compl., ¶¶35, 39; *see also Kellman*, --- F. Supp. 3d ----, 2022 WL 1157500, at *14 (distinguishing *Dex* on similar grounds). Similarly, in *Vrdolyak*, the

defendant website displayed "profile pages of attorneys" along with advertisements for other lawyers. 206 F. Supp. 3d at 1386. As in *Dex*, there was no "clear link" between the attorney's profile and the service being advertised. Indeed, the advertisements were for competing attorneys. *Id*. Unlike Seamless, the website in *Vrdolyak* "[did] not charge consumers for using or viewing the information provided on the profiles," and did not use attorney profiles to advertise subscriptions. *See Bonilla*, 574 F. Supp. 3d at 595 (distinguishing *Vrdolyak* because the website in that case did not use profiles "to sell subscription services to potential customers"); *Krause*, 561 F. Supp. 3d at 784 (same).

**Second**, Seamless relies on *Thompson v. Getty Images (US), Inc.*, No. 13-cv-1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013), arguing that, because access to the Plaintiff's profile is "the exact thing [Seamless] seeks to sell," free trial access to the profile cannot constitute an "advertisement." Dkt. No. 15, at *12. This argument fails because the Complaint demonstrates that Plaintiff's profile is <u>not</u> the product Seamless is selling. Instead, Seamless uses Plaintiff's profile to sell access to a much broader subscription service. B2B marketers who purchase a Seamless subscription receive much more than Plaintiff's profile, including: (1) the ability to search, view, and download profiles of millions of individuals; (2) the ability to set up "Real-Time Alerts" that will notify the subscriber if Plaintiff or any individual the marketer selects "change[s] or leave[s] their job"; and (3) data enrichment tools through which Seamless will provide additional personal information about the marketer's existing list of sales prospects. Compl., ¶39. Plaintiff's profile <u>cannot</u> be what Seamless is selling, because as Seamless admits, her profile is available to any trial user "without paying anything." Dkt. No. 15, at *11. The subscription service is the product, and Plaintiff's profile is the advertisement.

Addressing highly similar facts, multiple courts in this District have held that the reasoning of *Thompson* does not apply where, as here, a website uses records about the plaintiff "to sell a separate subscription service that goes beyond just his one . . . record." *Bonilla*, 574 F. Supp. 3d at 595. As Judge Feinerman explained in *Lukis v. Whitepages, Inc.*:

> [T]he defendants there used the free previews to advertise only background reports regarding the person identified in the preview. . . . Here, by contrast, Whitepages used Lukis's identity to advertise not a background report regarding Lukis, but **a monthly subscription service** giving the purchaser access to background reports on anybody in Whitepages's database. Thus, **Lukis's identity was not part and parcel of the entire product or service being advertised**, meaning that Whitepages's use of her identity had a commercial purpose.

454 F. Supp. 3d at 760 (emphasis added); *see also Callahan v. PeopleConnect*, 2021 WL 5050079, at *17-18. Here, as in *Lukis* and *Bonilla*, Seamless uses Plaintiff's identity to advertise a subscription service that "goes beyond just [her] one" profile. *See Bonilla*, 574 F. Supp. 3d at 595; Compl, ¶¶32, 39-41. Indeed, a subscription to Seamless delivers not just access to millions of profiles, but also services including "Real-Time Alerts" for monitoring individuals' job changes. Therefore, *Thompson* does not apply. Indeed, *Thompson* acknowledges that Illinois' right of publicity act "prohibits the use of an individual's image to promote or entice the purchase of some **other product than the photograph itself**." 2013 WL 3321612 at *2 (emphasis added).

**Third**, Seamless attempts to distinguish *Bonilla*, *Siegel*, and *Lukis* by positing that the IRPA is violated only when a website "dangle[s] information" about the specific plaintiff in front of the user and promises that a subscription will reveal more information about that specific plaintiff. Dkt. No. 15, at *12-13. This fabricated contraction of the scope of the IRPA finds no support in the statutory text and case law, which do not so limit the definition of "advertisement" or "commercial use." Indeed, many IRPA claims involve products that bear no relationship to the plaintiff whose likeness was misappropriated, much less promising "information" about her. *See, e.g.*, *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905 (7th Cir. 2005) (plaintiff's likeness used to promote

beauty care products, with no promise that buyers would learn more about the plaintiff by buying the product). Even were "dangl[ing]" the prospect of additional information about Plaintiff required, the Complaint shows Seamless advertises that subscribers can set up intrusive "Real-Time Alerts" that will notify the marketer when Plaintiff changes or leaves her job – information that is not present in the free trial profile used for advertisement. Compl., ¶¶39, 35.

**Fourth**, Seamless argues its use is exempt from liability under § 35(b)(1). Dkt. No. 15, at *14. This exemption applies to the use of an identity "in an attempt to portray, describe, or impersonate that individual in . . . *a single and original* . . . book, article, . . . or other . . . visual . . . work") (emphasis added). The exemption protects only original, artistic works. *See Collier v. Murphy*, No. 02-cv-2121, 2003 WL 1606637, at *2 (N.D. Ill. Mar. 26, 2003) (exemption covers "artistic and creative expression"); *Best v. Malec*, No. 09-cv-7749, 2010 WL 2364412, at *3 (N.D. Ill. June 11, 2010) (exemption is limited to "work[s] of art" and did not apply to "actual video" showing the plaintiff's arrest). Because Seamless's profile containing Plaintiff's contact and other information is neither "original" nor "artistic," the exception does not apply. *See Lukis*, 2020 WL 6287369, at *5 (background reports containing personal information gathered from public sources were not exempt because "original . . . connot[es] . . . something more than a mechanical or routine compilation of basic, preexisting facts").

Even were Plaintiff's profile an "original" "work of art," the exemption still would not apply because Plaintiff's claims are not directed at the profile, but rather at Seamless's use of the profile in a free trial designed to promote subscriptions. The exemption applies only if the work in question "does not constitute . . . a commercial advertisement for a product." 765 ILCS 1075/35(b)(1). Here, Seamless uses Plaintiff's profile in commercial advertisements, so the exemption cannot apply. *See Bonilla*, 574 F. Supp. 3d at 594 (rejecting exemption because it is

9

"the use of [plaintiff's] record in advertisements for Ancestry's subscription service that give[s] rise to this claim, not only the reproduction and hosting.").

## C. Seamless's Advertisements Promoting its Service to B2B Marketers at Private Companies Does Not Fall Within the "News" or "Public Affairs" Exemption.

Seamless argues its use of Plaintiff's profile to advertise subscriptions is exempt under IRPA § 35(b)(2), which exempts "use . . . for non-commercial purposes, including any news [or] public affairs."[3] This exemption does not apply because Seamless's service exists for the commercial purpose of targeting individuals with sales pitches, not for news or public affairs.

Seamless does not distribute an "online directory" to the public at large. *Cf.* Dkt. No. 15, at *14. Rather, Seamless sells its subscription service to professional marketers and salespeople at private companies, who use Seamless's service to contact individuals with unsolicited promotions. Compl., ¶6. Seamless advertises that its subscription service allows salespeople and marketers to "[c]onnect directly with your ideal customers." *Id.* Subscribers can use Seamless to "[f]ind all your prospect's contact information – including emails, direct dials, and more." *Id.* Seamless represents itself as an "unlimited lead-generating machine!" that allows marketers to "Know Everything About Your Prospects." *Id.* Seamless does not argue, nor could it, that the marketers who subscribe to Seamless use its job-change alerts and contact information to learn about matters of public interest. Marketers use these services to sell things to the people in the Seamless database. It is

---

[3] Seamless also appears to assert the First Amendment bars Plaintiff's claims, but does not address any of the relevant standards. The motion does not articulate what standard of review Seamless believes applies; whether Seamless intends to assert a facial challenge to the IRPA, or an "as applied" challenge to Plaintiff's specific claim; whether Seamless's public display of Plaintiffs profile as part of a free trial offering to private B2B marketers is "commercial speech" under *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983); or whether the IRPA is appropriately tailored to protect individuals' intellectual property and privacy rights without overbroadly burdening Seamless's commercial speech. Because Seamless's purported First Amendment argument is undeveloped, Plaintiff does not address it here. Plaintiff respectfully requests the opportunity to respond should Seamless articulate a First Amendment argument, while reserving the right to argue waiver.

difficult to imagine a use more directed to private commercial interests. Accordingly, the "news" or "public affairs" exception does not apply. *See Martinez v. ZoomInfo*, 2022 WL 1078630, at *6 (similar exception to California statute did not apply because the "profile using Martinez's persona invites visitors to subscribe to ZoomInfo's services . . . without touching on issues of general public interest . . . [the] use of Martinez's persona at issue in this case is purely commercial.").

Because Seamless's subscription service is expressly intended for private commercial use by professional marketers and salespeople, the argument against application of the § 35(b)(2) exemption is even stronger than in *Bonilla*, *Lukis*, *PeopleConnect*, *Sessa*, and *Knapke*, all of which rejected application of the IRPA's § 35(b)(2) exception or similar exceptions under other states' laws. *Bonilla*, 574 F. Supp. 3d at 594-595; *Lukis*, 454 F. Supp. 3d at 752; *PeopleConnect*, 2021 WL 5050079, at *18; *Sessa*, 561 F. Supp. 3d at 1029-1031; *Knapke*, 553 F. Supp. 3d at 878. Seamless does not cite these cases or offer any reason for a different result here. Because Seamless's subscription service does not qualify for protection under § 35(b)(2), neither does its display of Plaintiff's profile as an advertisement for that service qualify under § 35(b)(4).

The cases Seamless cites do not counsel a different conclusion. In *Best v. Berard*, 776 F. Supp. 2d 752 (N.D. Ill. 2011) and *Zglobicki v. Travel Channel, LLC*, No. 11-cv-6346, 2012 WL 725570, at *2 (N.D. Ill. Feb. 2, 2012), courts found that television shows about female police officers and hot-dog restaurants concerned "public affairs." Unlike a television show, Seamless does not distribute its subscription product to the public, nor does the general public have an interest in Plaintiff's contact information and job changes. In *Nieman v. Versuslaw, Inc*., No. 12-cv-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 Fed. App'x 635, 638 (7th Cir. 2013), there was no indication the website offered free access to Plaintiff's identity as a means of advertising subscriptions. *See id*. Furthermore, the court noted that plaintiff's name was "used only

to find documents related to his [legal] case." *Id*., at *4. Here, those who search for Plaintiff's name on Seamless are doing so to contact her with unsolicited promotions, not to research a matter of public interest in which she happened to be involved. *Dex* did not address the IRPA, and is further distinguishable for the reasons in Part B above. Finally, in *Health Sys. Agcy., Etc. v. Va. State Bd*., 424 F. Supp. 267, 273-74 (E.D. Va. 1976), the court found that directory information about local physicians was "advertising," but ruled that a Virginia law forbidding all physician advertising was "unnecessarily broad" given the law's purposes. The decision has no relevance.[4]

### D.    CDA Immunity Does Not Apply.

Seamless argues it is entitled to immunity under the Communications Decency Act ("CDA"), 18 U.S.C. § 230. At least 14 courts, including three in this District, have found that CDA immunity does not apply to right of publicity claims against websites with nearly identical advertising practices to those at issue here.[5] Seamless does not acknowledge the 14 decisions against it or offer any reason for a different result here.

CDA immunity applies to websites that are a "mere passive conduit" for information posted by others. *Huon v. Denton*, 841 F.3d 733, 742 (7th Cir. 2016). Where, as here, liability stems from content the website itself gathered, compiled, created, or contributed to, the CDA does not apply. *Stayart v. Yahoo! Inc*., 651 F. Supp. 2d 873, 886 (E.D. Wis. 2009), *aff'd*, 623 F.3d 436 (7th Cir.

---

[4] Seamless also cites *Commodity Trend Ser. v. Commodity F. T. Comm*, 149 F.3d 679 (7th Cir. 1998), but that case does not involve right of publicity claims.

[5] *Bonilla*, 574 F. Supp. 3d at 592; *Krause*, 2021 WL 4282700, at *4; *Siegel*, 2021 WL 4306148, at *4; *Callahan v. PeopleConnect*, 2021 WL 5050079, at *5; *Sessa*, 561 F. Supp. 3d at 1027-28; *Knapke*, 553 F. Supp. 3d at 874-75; *Lukis*, 454 F. Supp. 3d at 763; *Kolebuck-Utz*, 2021 WL 1575219, at *3; *Kellman*, --- F. Supp. 3d ----, 2022 WL 1157500, at *13; *Boshears*, 2022 WL 888300, at *11-12; *FTC v. Accusearch, Inc*., 2007 WL 4356786, at *3-6 (D. Wyo. Sep. 28, 2007) (FTC action for unfair business practices), *aff'd*, 570 F.3d 1187 (10th Cir. 2009); *Camacho*, 2022 WL 3093306, at *13-18; *Brown v. Intelius, Inc*., No. 4:12-cv-852, 2012 WL 5878230, at *4 (E.D. Mo. Nov. 21, 2012); *Brooks v. Thomson Reuters Corp*., No. 21-cv-01418, 2021 WL 3621837, at *13 (N.D. Cal. Aug. 16, 2021).

2010) ("[A]s to content that [a website] creates itself, or is 'responsible, in whole or in part' for creating or developing, the website is also a content provider" and there is no CDA protection) (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157 (9th Cir. 2008)). A website need not be solely responsible for the content to be a "content provider." It suffices that Seamless is "responsible . . . in part." *Stayart*, 651 F. Supp. 2d at 886; 47 U.S.C.A. § 230(f)(3).

Here, Plaintiff "does not know how Seamless obtained" the information in her profile. Compl., ¶41. Plaintiff alleges on information and belief that Seamless actively copied her name and personal information from online sources, "including her social media accounts and her employer's website." Compl., ¶41. On these facts, CDA immunity does not apply. In *Lukis*, the court rejected CDA immunity because "Whitepages did not act as a mere passive transmitter or publisher of information that was 'provided by another information content provider.'" 454 F. Supp. 3d at 763 (quoting § 230(f)(3)). Instead, it "actively compiled and collated . . . information regarding [the plaintiff]" to create the profiles it used to advertise subscriptions. *Id.*

Even had the information in Plaintiff's profile been posted to the Seamless website by a third party rather than actively selected and gathered by Seamless, immunity still would not apply. Plaintiff's claims do not "require the court to treat [Seamless] as the publisher or speaker" of Plaintiff's name and contact information, *see Gonzalez v. Google LLC*, 2 F.4th 871, 890–97 (9th Cir. 2021), because Plaintiff's claims do not arise from the distribution of her profile. Rather, her claims arise from Seamless' <u>use</u> of her profile <u>to promote subscriptions</u>. The choice to do so was entirely Seamless's, and Seamless is solely responsible for the design and functioning of the free trial advertising program that gives rise to Plaintiff's claim. *See, e.g.*, *Boshears*, 2022 WL 888300, at *11–12 ("The sole issue in this case is whether [the defendant's] decision to create

advertisements using [the plaintiff's] persona to sell subscription services violates the [Indiana Right of Publicity Act] and the common law. That content is generated expressly by [the defendant]"); *Camacho*, 2022 WL 3093306, at *16; *Kellman*, --- F. Supp. 3d ----, 2022 WL 1157500, at *13. In short, because Plaintiff alleges Seamless does not passively host content created by others, but instead actively designed and created the advertisements at issue, CDA immunity does not apply.

The CDA contains an exception for "any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2). There is a jurisdictional split regarding whether the exception applies to state right of publicity law or is strictly limited to rights recognized by federal law. *See, e.g.*, *Stayart*, 651 F. Supp. 2d at 887. The Third Circuit recently ruled that because state right of publicity laws protect intellectual property rights, the CDA does not apply. *Hepp v. Facebook*, 14 F.4th 204, 210-14 (3d Cir. 2021)*; see also Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 703 (S.D.N.Y. 2009) (accord). Although no court in the Seventh Circuit has ruled dispositively, two courts have said the exception probably applies to state right of publicity claims. *See Nieman v. Versuslaw, Inc.*, 12-3104, 2012 WL 3201931, at *8 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 Fed. Appx. 635 (7th Cir. 2013) (IRPA claims would "likely be considered intellectual property claims and would therefore not be barred"); *Stayart*, 651 F. Supp. 2d at 887 ("A 'right to publicity' . . . is generally considered an intellectual property claim . . . which implicates the exception").

This Court should follow the path described in *Nieman* and *Stayart*. Because Plaintiff's claims sound in intellectual property rights protected by Illinois state law, the CDA does not apply. This is consistent with the approach followed by the Third Circuit and by district courts in the First and Second Circuits. It is also consistent with the text and intent of the CDA. *See Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 302 (D.N.H. 2008) ("§ 230(e)(2) applies simply

to any law pertaining to intellectual property, not just federal law") (internal quotation omitted); *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 704 (S.D.N.Y. 2009) ("Congress intended the word 'any' to mean any state or federal law pertaining to intellectual property") (internal quotation omitted).

**E.     Plaintiff's Unjust Enrichment Claim is Properly Plead**

Plaintiff agrees that her unjust enrichment claim "stand[s] or fall[s] with the related" IRPA claim. *See Bonilla*, 574 F. Supp. 3d at 597-598 (quoting *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011)). As shown above, Plaintiff properly plead her IRPA claim, and therefore "[her] claim for unjust enrichment also survives." *Id.*

## IV. CONCLUSION

The Court should adhere to precedent and deny Seamless's motion to dismiss.


Dated: August 17, 2022                    Respectfully submitted,

                                          By:   */s/ Raina C. Borrelli*
                                                Raina C. Borrelli
                                                Samuel J. Strauss
                                                TURKE & STRAUSS LLP
                                                613 Williamson Street, Suite 201
                                                Madison, WI 53703
                                                Telephone: (608) 237-1775
                                                Facsimile: (608) 509-4423
                                                raina@turkestrauss.com
                                                sam@turkestrauss.com

                                                Benjamin R. Osborn (*pro hac vice* forthcoming)
                                                LAW OFFICE OF BENJAMIN R. OSBORN
                                                102 Bergen St.
                                                Brooklyn, NY 11201
                                                Phone: (347) 645-0464
                                                Email: ben@benosbornlaw.com

                                                Michael F. Ram (*pro hac vice* forthcoming)
                                                mram@forthepeople.com
                                                Marie N. Appel (*pro hac vice* forthcoming)
                                                mappel@forthepeople.com

MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Telephone: (415) 358-6293

*Attorneys for Plaintiff and the Proposed Class*

**<u>CERTIFICATE OF SERVICE</u>**

I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 17th day of August, 2022.

TURKE & STRAUSS LLP

By: <u>*/s/ Raina C. Borrelli*</u>
Raina C. Borrelli
Email: raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423

17