UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATE HOFFOWER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SEAMLESS CONTACTS, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 1:22-cv-02079<br><br>Hon. Matthew F. Kennelly |

## JOINT STATUS REPORT

Pursuant to the Court's August 25, 2023, Minute Order (Dkt. 87), Plaintiff Kate Hoffower and Defendant Seamless Contacts, Inc., submit this Joint Status Report regarding (1) the progress of the remaining discovery to resolve plaintiff's motion to compel interrogatory 21 and request for production 26 via the meet and confer and query process addressed previously by the Court (Dkt. 94), and (2) regarding any settlement discussions. Seamless is also submitting issues to the Court relating to the recent "withdrawal" of counsel Benjamin Osborn from this lawsuit (Dkt. 95, 96), that are referenced in Section (I)(1)(b) of this report, and which will be the subject of a forthcoming motion.

**I. Discovery**

    **1. Query Discovery**

        **a. Plaintiff's Statement**

The parties met and conferred on September 1, September 6, and September 11, regarding the queries to be run, the temporal scope of the queries, and the sources available from which the queries will be run. There are two sets of data being investigated by Seamless at this time. First,

Plaintiff wants to know all the people who live in Illinois or are associated with a business in Illinois appearing in a My Contacts list belonging to a Seamless customer who was a free customer before becoming a paid customer. Plaintiff clarified she wants the following information for each contact: email, name, contact location, business name and location. The parties agreed on a time period (April 2021 to present) and the sources to be searched (Salesforce data and Backend data). Second, Plaintiff wants to know how many searches were run with Illinois as a filter on the Seamless platform from April 2021 to present. Seamless represented it would not object to running this query at a later time, even after fact discovery closes, given its focus on the first query and pulling that data.

Despite this initial progress and agreements being reached on the scope, sources, and process for this discovery, Plaintiff's counsel have requested an update every few days (on September 11, September 19, September 26, September 29, October 2, October 4), only to be ignored or told that an update would come in a few days (and then it did not). The first update Plaintiff received on this discovery since September 11, was this afternoon, October 5. That response reiterated what Seamless says below in its position statement, and provided no details or specifics. Plaintiff has requested to see the queries themselves and the initial data that Seamless pulled on September 19, but Plaintiff has not seen any of that. Most concerning, Seamless is only representing that it will have "preliminary" results in the "next few weeks" – but discovery closes in three weeks, on October 27, 2023, and this Court has made it clear that no additional extensions will be provided. Seamless's timeline leaves little to no room for the parties to meet and confer on what Seamless produces, how it produces the results, and whether any modifications to the queries are needed. Plaintiff again requests transparency in this process by Seamless disclosing the queries,

the specific sources each query is being run on, and any initial data being returned within the next 5 business days.

### b. Defendant's Statement

Seamless agrees that it is in the process of crafting queries, running across multiple systems, to attempt to return search results for the time period of April 2021 to present, of people appearing in a MyContact list with a contact location of Illinois, based on searches performed by Seamless customers who purposefully converted from free customer status to paid customer status during this time period. The term "purposefully" refers to the fact that all customers initially register as "free customers," but many of those customers always intended to be paid customers. To date, Seamless has developed four queries, which will be used to pull and compile the requested data from three distinct data sources. Seamless has tested the queries (individually or in concert) in excess of 40 times, and has made multiple modifications to them, as query creation is largely a matter of trial and error. Seamless has also reviewed initial query results and performed data validation (which it continues to do) in order to further refine the queries. The process has been intensely time consuming and complex, as Seamless previously cautioned it would be in the Parties' meet and confer sessions. The queries are not yet complete. Seamless anticipates finalizing the query creation process, and generating preliminary search results, within the next few weeks. At this point, Seamless anticipates meeting the October 27 discovery deadline. Plaintiffs have never requested to see the actual queries or attempts to run queries that were later modified. Once the actual queries are completed, Seamless' counsel will meet with Plaintiff's counsel to explain how they were used to generate search results. Seamless is making every effort to produce the agreed upon categories of information.

### 2. Modification of Protective Order Regarding Plaintiff's Counsel's Use of Seamless.ai (Dkt. 86)

#### a. Plaintiff's Statement regarding the Protective Order

Given that Mr. Osborn has withdrawn from this case (Dkts. 95, 96), Plaintiff's counsel is no longer able to use Mr. Osborn's credentials to access the Seamless platform, as contemplated in the Protective Order (Dkt. 86). Plaintiff's counsel has designated a counsel of record (Brittany Resch) to use a new set of credentials provided by Seamless. Plaintiff requested the new set of credentials on October 4, provided Seamless with Ms. Resch's information (including address and IP address), and provided a modified protective order reflecting these changes. Today, shortly before filing this letter, Seamless represented it would not agree to modify the terms of the protective order. Below, Seamless offers to capture and prepare any screenshots and videos based on written requests submitted by Plaintiffs' counsel. For many reasons, most importantly being work-product protections, this offer is unworkable. Another equally important reason, the ability of the parties (through their counsel) to work cooperatively has degraded to the point of being unproductive and ineffective. Plaintiff's counsel has serious concerns that they would not receive the requested information in a timely manner or in a usable format. Plaintiff's counsel is prepared to discuss these additional reasons at the status conference next week.

#### b. Plaintiff's Statement Regarding Mr. Osborn

Seamless is conflating two unrelated issues. It was Seamless's idea, when the parties first started negotiating the protective order in July 2023, to use Mr. Osborn's credentials, instead of providing a new set of credentials. To be clear, Mr. Osborn has not used his credentials to access or use the Platform at any point since February 7, 2022. Plaintiff's counsel have offered to meet and confer with Seamless many times to clarify and explain its position consistent with the below,

4

but Seamless has taken the position that it is "not obligated to" meet and confer with Plaintiff's counsel.

Since February 7, 2022, Mr. Osborn has not initiated a call with Seamless or communicated in writing (including by email) with Seamless. Seamless's concerns seem to be stemming from the two unsolicited telemarketing sales calls that Mr. Osborn received on May 25, 2022, and June 21, 2023. These were unsolicited perfunctory marketing calls from low level Seamless sales representatives asking Mr. Osborn to schedule a demonstration of the Seamless product. Though a demonstration was scheduled for a few days later during both calls, Mr. Osborn did not attend, and no such demonstration occurred. Plaintiff's counsel at Turke & Strauss and Morgan & Morgan were not aware of these telemarketing calls to Mr. Osborn until after they occurred and were not aware of any of the marketing emails Mr. Osborn received from Seamless. Every email Mr. Osborn has received from Seamless was produced to Seamless's counsel on September 20, 2023. Plaintiff's counsel have not used, and will not use, any information from the May 25, 2022, or June 21, 2023, calls, or from the emails Mr. Osborn received from Seamless to support their claims in this litigation. And Plaintiff's counsel denies that any of these documents are responsive to discovery served on Plaintiff Hoffower.

At all times, Plaintiff's counsel have been truthful in its letters to Seamless on this issue. Importantly, Plaintiff's counsel requested a telephonic meet and confer with Seamless's counsel at least three times, and each request was refused. Throughout his communications with Seamless—including the May 25, 2022, and June 21, 2023, unsolicited calls from Seamless's sales team—Mr. Osborn truthfully stated his name, contact information (including email address), affiliations, and purpose. Prior to the litigation, Mr. Osborn signed up as a free customer of seamless.ai, identified himself as "Benjamin Osborn," provided his email address,

ben@benosbornlaw.com, and truthfully said he was affiliated with the Law Office of Benjamin R. Osborn and Mackinaw Enterprises LLC. Mr. Osborn truthfully identified himself as the sole proprietor of a law firm practicing consumer class action law. He also truthfully told the sales representative that he intended to use the website to investigate claims on behalf of clients, including clients in Illinois. This is reflected in Seamless's sales call notes which were provided to Plaintiff's counsel. Indeed, the emails Mr. Osborn received from Seamless (and which were produced to Seamless) confirm that Seamless knew Mr. Osborn worked for a law firm and used Mr. Osborn's true email address and sent multiple emails to [ben@benosbornlaw.com](mailto:ben@benosbornlaw.com). Finally, as for Mr. Osborn's other business, Mackinaw Enterprises LLC is an entity affiliated with Mr. Osborn. It can be searched and viewed on the New York Department of State Division of Corporations website. Plaintiff's counsel knows nothing else regarding this entity and is unable to respond to Seamless's questions regarding it.

As for the *pro hac vice* issue, this Court has already granted Mr. Osborn's withdrawal motion based on the pertinent facts. However, if the Court is concerned, Plaintiff's counsel can file Mr. Osborn's *pro hac vice* application and appearance and then refile his motion to withdraw.

### a. Defendant's Statement

Seamless believes that the Protective Order (Dkt. 86), which is related to Mr. Osborn's current and past use of his credentials to access the Seamless Platform, should be revoked and declared null and void by the Court. In Seamless' opinion, the withdrawal motion inaccurately portrays the nature and substance of Mr. Osborn's *ex parte* communications with Seamless employees that led to his withdrawal. (*See* Dkt. 95). The withdrawal motion also failed to advise the Court that Mr. Osborn never sought to be admitted *pro hac vice* and did not file an appearance, despite appearing

on the pleadings in this matter, causing the Court to enter an order allowing him to withdraw an appearance he never filed. (Dkt. 96).

Following Plaintiff Hoffower's September 8, 2023 deposition, some testimony and exhibit discrepancies caused Seamless to search for any records memorializing Mr. Osborn's interactions with Seamless. Seamless' records indicate that at the time he registered as a Seamless customer, Mr. Osborn represented to Seamless that he was using the Platform for another business he appears to own called Mackinaw Enterprises. Upon information and belief, this is not a law firm. His actual use of the Seamless Platform shows he used it to search for Plaintiffs Spindler and Hoffower, apparently at the request of lead counsel, Turke & Strauss. Mr. Osborn and Turke & Strauss then filed two lawsuits: *Spindler v. Seamless Contacts, Inc.*, Case No. 4:22-cv-00787-KAW(ND Calif. Feb. 7, 2022) and this lawsuit, which was filed in April 2022.

Because Mr. Osborn portrayed himself as a Seamless business-to-business customer, Seamless engaged in ongoing customer communications with him. After this lawsuit was filed, during customer calls between Seamless and Mr. Osborn in May 2022 and June 2023, Mr. Osborn engaged in conversation with Seamless employees, during which Seamless believes he continued to misrepresent his actual affiliations, purpose, and use of the Seamless Platform. He also discussed topics relevant to this lawsuit, such as searches on the Platform related to Illinois and California where the lawsuits against Seamless were pending, and certain data discussed in discovery.

During these calls, Mr. Osborn failed to advise Seamless employees that he was actually a plaintiffs' attorney, that he was using the Platform to find plaintiffs, not businesses, and that he was currently representing clients in two lawsuits against Seamless. Instead, he continued to take customer calls from Seamless and to receive emails from Seamless as if he were a legitimate customer – communications he never disclosed and clearly never intended to disclose to Seamless'

counsel. In fact, none of Plaintiffs' counsel advised Seamless' counsel of these communications, the last of which occurred as recently as June 2023. Instead, Mr. Osborn was the designated Plaintiff's counsel under the Protective Order, who was about to be given further access to the Seamless Platform had Seamless not inadvertently discovered the above. Put simply, Seamless never would have agreed to enter into the Protective Order (Dkt. 85) allowing Plaintiffs' counsel further access to the Seamless Platform and would never have agreed not to assert particular Terms of Use, had it known of Mr. Osborn's conduct and communications.

This is not a matter of simply transferring credentials to an attorney at Turke & Strauss, under the same non-assertion of arbitration Terms of Use, pursuant to a slightly revised Protective Order, as Plaintiff's request above. For several weeks, Seamless has been requesting a full and complete explanation in writing from lead counsel at Turke & Strauss so that Seamless and its counsel could assess the implication of these events. From Seamless' perspective, the explanations it has received to date have been evasive, have failed to respond to specific questions or to provide requested information, and have wrongly asserted that some of the requested information is work product. Both in their communications with Seamless and in their withdraw motion, Plaintiffs' counsel have attempted to minimize their actions, inactions, omissions and appear to disclaim any responsibility for these events. *See* Dkt. 95.

Putting aside the fact that this is not a discovery issue and there is no obligation to meet and confer, Seamless had requested a discussion following complete and full disclosures regarding Mr. Osborn's interactions with Seamless, which were not made. And, although Plaintiffs offered to meet and confer with Seamless' counsel on September 28, on September 29 they filed the withdrawal motion asserting their version of the events leading to Mr. Osborn's withdrawal. Dkt. 95. As a result, Seamless is in the process of gathering additional evidence and sworn declarations

from its employees and intends to file a motion seeking the Court's assistance in addressing these issues in the coming week.

Based on the above, given that the original Protective Order limited the use of the Seamless log in credentials to "capturing screenshots (including videos) of the website," Seamless proposes that it will capture any such screenshot and videos and provide them to Plaintiffs based on written requests submitted by Plaintiffs' counsel to Seamless. Since these are videos and screenshots of Platform functionality, it is unclear how they would be "work product" as asserted above, or how Seamless could (or would) manipulate videos and screenshots, as implied above. It bears noting that Plaintiffs already have a video of the Platform "flow" taken during a Seamless deposition, and that Seamless would be willing to produce similar videos here.

## II. Settlement Discussions

### a. Plaintiff's Statement

Plaintiff remains open to discussing early resolution of this litigation at this juncture, given the parties are each about to spend significant time and money briefing class certification and conducting expert discovery. The topic has been briefly discussed a handful of times in the past, but Seamless has not expressed interest and the discussions ended.

### b. Defendant's Statement

Seamless is not prepared to discuss settlement at this juncture.

| | |
|---|---|
| Dated: October 5, 2023 | Dated: October 5, 2023 |
| */s/ Brittany Resch (with permission)* | */s/ Melissa A. Siebert* |
| Brittany Resch | Melissa A. Siebert |
| Samuel J. Strauss | Austin Gene Dieter |
| Raina C. Borrelli | Cozen O'Connor |
| TURKE STRAUSS LLP | 123 N. Wacker Drive, 18th Floor |
| 613 Williamson Street, Suite 100 | Chicago, IL 60606 |
| Madison, WI 53703 | Telephone: 312-382-3100 |
| Telephone: (608) 237-1775 | Email: msiebert@cozen.com |

brittanyr@turkestrauss.com
sam@turkestrauss.com
raina@turkestrauss.com

Michael F. Ram
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
mram@forthepeople.com

Shelby Serig (*pro hac vice*)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
501 Riverside Ave., Suite 1200
Jacksonville, FL 32002
Telephone: (904) 330-3819
sserig@forthepeople.com

*Attorneys for Plaintiff and the Proposed Class*

Aneca Lasley (admitted *pro hac vice*)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, Ohio 43215
Telephone: (614) 462-2700
Email: Aneca.Lasley@icemiller.com

Isaac Colunga
ICE MILLER LLP
200 West Madison, Suite 3500
Chicago, Illinois 60606
Telephone: (312) 726-7157
Email: Isaac.Colunga@icemiller.com

*Attorneys for Defendant Seamless Contacts, Inc.*

## **CERTIFICATE OF SERVICE**

I, Melissa A. Siebert, an attorney, hereby certify that on **October 5, 2023**, I caused a true and correct copy of the foregoing **JOINT STATUS REPORT** to be filed via the Court's ECF filing system and served by electronic notice upon all parties of record.

                                         */s/ Melissa A. Siebert*