**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KATE HOFFOWER, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Case No. 1:22-cv-02079 |
| v. | Hon. Matthew F. Kennelly |
| SEAMLESS CONTACTS, INC., a Delaware Corporation, | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ........................................................................................ 1

II.  PROCEDURAL BACKGROUND AND PROPOSED CLASS ............................................. 5

III. DESCRIPTION OF THE SEAMLESS REAL TIME BUSINESS DIRECTORY ................. 5

IV. LEGAL STANDARD ..................................................................................................... 8

V.  ARGUMENT ................................................................................................................. 9

    A.  The Requirements of Rule 23(a) are Satisfied. ....................................................... 9

      1.  The proposed Class is so numerous that joinder is impracticable. ................................. 9

      2.  There are questions of law and fact common to the proposed Class. ........................... 10

        a.  Seamless's liability turns on common questions of law and fact. ............................. 10

        b.  Entitlement to damages is a common issue of law and fact. ...................................... 12

        c.  Entitlement to injunctive relief presents common issues of law and fact. ................. 15

      3.  Plaintiff's claims are typical of those of the proposed Class. .......................................... 15

      4.  Plaintiff and her counsel are adequate representatives. ................................................... 18

    B.  The Predominance Requirement of Rule 23(b)(3) is Satisfied. ....................................... 19

    C.  The Superiority Requirement of Rule 23(b)(3) is Satisfied. ............................................ 21

    D.  The Class is Clearly Defined Based on Objective Criteria ............................................... 23

    E.  The Proposed Class Also Satisfies the Requirements of Rule 23(b)(2). .......................... 24

    F.  In the Alternative, the Proposed Class Satisfies the Requirements of Rule 23(c)(4). ...... 24

VI. CONCLUSION ................................................................................................................. 25

**TABLE OF AUTHORITIES**

**Cases**

*Ahad v. Bd. of Trs. of S. Ill. Univ.*,
  Case No. 15-cv-3308, 2018 U.S. Dist. LEXIS 155243 (C.D. Ill. Sept. 12, 2018) .................. 24

*Bakov v. Consol. World Travel, Inc.*,
  Case No. 15-C-2980, 2019 U.S. Dist. LEXIS 46510 (N.D. Ill. March 21, 2019)............. 15, 21

*Barragan v. Evanger's Dog & Cat Food Co.*,
  259 F.R.D. 330 (N.D. Ill. 2009)................................................................................. 9

*Beaton v. SpeedyPC Software*,
  907 F.3d 1018 (7th Cir. 2018), *cert. denied* 2019 U.S. LEXIS 2450 (U.S. April 1, 2019) 16, 21

*Bell v. PNC Bank N.A.*,
  800 F.3d 360 (7th Cir. 2015) ................................................................................. 10

*Bonilla v. Ancestry.com Operations, Inc.*,
  574 F. Supp. 3d 582 (N.D. Ill. 2021) .................................................................. 14, 17

*Callahan v. PeopleConnect*,
  No. 20-cv-09203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ............................... 3

*Camacho v. Control Group Media Co.*,
  No. 21-cv-1954, 2022 WL 3093306 (S.D. Cal. July 18, 2022)................................. 3

*Cavin v. Home Loan Ctr.*,
  236 F.R.D. 387 (N.D. Ill. 2006)............................................................................. 18

*Chi. Teachers Union, Local No. 1 v. Bd. Of Educ. Of Chi.*,
  797 F.3d 426 (7th Cir. 2015) ............................................................................ 8, 24

*Cleary v. Philip Morris Inc.*,
  656 F.3d 511 (7th Cir. 2011) ................................................................................. 14

*Eisen v. Carlisle Jacquelin*,
  417 U.S. 156 (1974).............................................................................................. 22

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011)............................................................................................. 19

*Fischer v. InstantCheckmate LLC*,
  19 C 4892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022)........................ 4, 11, 13, 15, 16, 17, 20

*Flynn v. FCA US LLC*,
  327 F.R.D. 206 (S.D. Ill. 2018) ............................................................................ 22

*Fraley v. Facebook, Inc.*,
   966 F. Supp. 2d 939 (E.D. Cal. 2013) ................................................................ 4

*Gabiola v. Sarid*,
   No. 16-cv-02076, 2017 WL 4264000 (N.D. Ill. Sep. 26, 2017) .............................. 3

*Gaspar v. Linvatec Corp.*,
   167 F.R.D. 51 (N.D. Ill. 1996) ........................................................................... 16

*Gaul v. Truth Now, LLC*,
   No. 21-CV-1314-JES-JEH, 2022 WL 3647257 (C.D. Ill. Aug. 24, 2022) ................ 11

*Heritage Operations Grp., LLC v. Norwood*,
   322 F.R.D. 321 (N.D. Ill. 2017) ......................................................................... 24

*Hernandez v. Wells Fargo Bank, N.A.*,
   No. 18-cv-07354, 2020 U.S. Dist. LEXIS 15844 (N.D. Cal. Jan. 29, 2020) ........... 22

*Howard v. Cook Cnty. Sheriff's Office*,
   989 F.3d 587 (7th Cir. 2021) ............................................................................. 18

*Huebner v. Radaris, LLC*,
   14-cv-04735-VC, 2016 WL 8114189 (N.D. Cal. Apr. 12, 2016) .............................. 4

*In re Allstate Corp. Securities Litig.*,
   966 F.3d 595 (7th Cir. 2020) ............................................................................. 19

*In re Clearview AI, Inc. Consumer Privacy Litig.*,
   585 F.Supp.3d 1111 (N.D. Ill. Feb. 14, 2022) ...................................................... 3

*In re NCAA Student-Athlete Name & Likeness Licensing Litigation*,
   No. 09-cv-1967 CW, 2013 U.S. Dist. LEXIS 160739 (N.D. Cal. Nov. 8, 2013) ....... 4

*Joseph v. General Motors Corp.*,
   109 F.R.D. 635 (D. Colo. 1986) ......................................................................... 21

*Keller v. Electronic Arts, Inc.*,
   No. 4:09-cv-1967 CW, 2015 U.S. Dist. LEXIS 113474 (N.D. Cal. Aug. 18, 2015) .. 4

*Kellman v. Spokeo, Inc.*,
   599 F. Supp. 3d 877 (N.D. Cal. 2022) .................................................................. 3

*Knapke v. PeopleConnect*,
   553 F. Supp. 3d 865 (W.D. Wash. 2021) ............................................................... 3

*Lacy v. Cook Cty.*,
   897 F.3d 847 (7th Cir. 2018) ............................................................................. 16

*Lukis v. Whitepages, Inc.*,
542 F. Supp. 3d 831 (N.D. Ill. 2020) ........................................................ 3

*Mackey v. PeopleConnect, Inc.*,
No. 22 C 342, 2023 WL 2561621 (N.D. Ill. Mar. 17, 2023) .................... 11

*Martinez v. ZoomInfo Techs.*,
82 F. 4th 785 (9th Cir. 2023) ............................................................. 3, 20

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) ............................................................. 8, 19

*Moehrl v. Nat'l Ass'n of Realtors*,
No. 19-cv-01610, 2023 U.S. Dist. LEXIS 53299 (N.D. Ill. Mar. 29, 2023) ........................ 15

*Mullen v. GLV, Inc.*,
330 F.R.D. 155 (N.D. Ill. 2019) .......................................................... 8, 9

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ....................................................... 8, 22, 23

*Mulvania v. Sheriff of Rock Island Cty.*,
850 F.3d 849 (7th Cir. 2017) ................................................................. 9

*Nolen v. PeopleConnect, Inc.*,
No. 20-CV-09203-EMC, 2023 WL 4303645 (N.D. Cal. June 30, 2023).......................... 11, 18

*Perkins v. LinkedIn, Inc.*,
No. 13-cv-04303-LHK, 2016 U.S. Dist. LEXIS 18649 (N.D. Feb. 16, 2016) .......................... 4

*Quinn v. Specialized Loan Servicing, LLC*,
331 F.R.D. 126 (N.D. Ill. 2019)...................................................... 10, 16

*Red Barn Motors, Inc. v. Nextgear Capital, Inc.*,
915 F.3d 1098 (7th Cir. 2019) ............................................................... 8

*Ross v. Gossett*,
33 F.4th 433 (7th Cir. 2022) ............................................................... 19

*Sessa v. Ancestry.com*,
561 F. Supp. 3d 1008 (D. Nev. 2021).................................................. 3, 20

*Siegel v. Zoominfo Techs., LLC*,
No. 21 C 2032, 2021 WL 4306148 (N.D. Ill. Sept. 22, 2021)...................... 11, 16

*Spindler v. Seamless Contacts, Inc.*,
No. 22-cv-787, 2022 WL 16985678 (N.D. Cal. Oct. 24, 2022) ................................ 3

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) ............................................................................. 10, 21

*Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982)................................................................................................... 8

*Trannel v. Prairie Ridge Media, Inc.*,
  987 N.E.2d 923 (Ill. App. 2013) ............................................................................ 11

*Vinci v. American Can Co.*,
  459 N.E.2d 507 (Ohio 1984) .................................................................................... 4

*Williams v. Chartwell Fin. Servs., Ltd.*,
  204 F.3d 748 (7th Cir. 2000) .................................................................................. 22

**Statutes**

Illinois Right of Publicity Act, 765 ILCS 1075/1, *et seq.* ........ 1, 2, 5, 10, 11, 12, 13, 14, 16, 21, 24

**Other Authorities**

William B. Rubenstein, Alba Conte & Herbert B. Newberg, Newberg on Class Actions (5th ed. 2011) ....................................................................................................................... 10

**Rules**

Federal Rules of Civil Procedure, Rule 23 ........... 2, 1, 4, 5, 8, 9, 10, 13, 15, 18, 19, 21, 23, 24, 25

## I. PRELIMINARY STATEMENT

"The knowledge that someone is using my information without my consent in a way that I have no control over and previously had no knowledge of is distressing, is infuriating, and I do not believe that it should be allowed especially since [Defendant Seamless Contacts, Inc. ("Seamless")] did this with the intention of making money off of my name, my experience." Ex.[1] 1. Plaintiff brings the above-captioned action to prevent similarly situated individuals from experiencing the same unfair and unlawful practices.

Seamless owns and operates the website www.seamless.ai and the Seamless real time business directory[2], which is accessible to customers who have free trial access or who have purchased a Seamless subscription. Seamless promotes paid subscriptions to its real time directory that uses sales intelligence software to search for individuals' names, locations, and personal information without their consent. The members of the proposed Class are individuals from Illinois who are in Seamless's real time business directory, who have never been a customer of Seamless, and who have never consented to Seamless's use of their names, identities, and personal information. Illinois law recognizes the intellectual property and privacy rights of individuals to control the commercial use of their names and identities. Seamless's non-consensual, commercial use of Illinois residents' names and personal information violates these important and long-standing legal rights.

Plaintiff moves for certification under Rules 23(b)(3) and 23(b)(2) of her claims under Illinois' statutory right of publicity, 765 ILCS 1075/1 et seq. (Illinois Right of Publicity Act, "IRPA") and Illinois' unjust enrichment law. This is a classic case for class treatment because

---

[1] All Exhibits are attached to the Declaration of Raina C. Borrelli filed with this motion.
[2] *See* "What is a Business Directory," available at
https://seamless.ai/customers/blog/products/what-is-a-business-directory (last accessed November 10, 2023).

liability, damages and Seamless's defenses rise and fall on a Class-wide basis. Plaintiff's and Class Members' claims arise from Seamless's unauthorized use of their names, identities, and personal information in Seamless's real time directory for the purpose of advertising to free trial customers and to solicit these same customers to purchase paid subscriptions to Seamless's service. Seamless's directory is comprised of data from real-time searches run across the internet, and from other information Seamless has acquired in order to gather and populate business contact profiles for millions of individuals in Illinois. Unlike Google where the search results are free and immediately available, Seamless's free trial provides a "teaser" list of search results with only certain information available (name, location, title) and then requires use of limited, free credits to purchase additional contact details (phone number, email address) about people returned in the results. ████████████████████████████████████████████████

████████████████████████████████████████████████

██████ " Ex. 27 (Response to Interrogatory 2), all the while constantly soliciting free trial users to upgrade to a paid subscription that would allow these users to continuously search for Illinois residents' business contact information. Because Seamless's advertisements operate in the same way for every free customer, Seamless's "use . . . for commercial purposes" of Class Members' names and identities is subject to Class-wide proof. *See* 765 ILCS 1075/30. Similarly, because the Class Members, by definition, have no relationship with Seamless, Seamless's failure to obtain their "previous written consent" is subject to Class-wide proof as well. *See id.*

Damages are also subject to Class-wide proof. The IRPA recognizes that "each individual's right of publicity" is "[t]he right to control and to choose whether and how to use [that] individual's identity for commercial purposes." 765 ILCS 1075/10. Where a business uses an individual's identity for commercial purposes without their prior written consent, as Seamless

does, that individual may recover the "greater" of (1) "both" "actual damages" suffered by the plaintiff and the defendant's "profits derived from the unauthorized use;" or (2) "$1,000." In this Court's words, the Class Members have suffered the injury the IRPA and its common-law predecessor were designed to redress because Seamless used "[Plaintiff's] identity (like those of other class members) [] to advertise Seamless's subscription service." *Hoffower v. Seamless Contacts, Inc.*, No. 22 C 2079, 2022 U.S. Dist. LEXIS 211979, at \*4 (N.D. Ill. Nov. 23, 2022).[3] Because each Class Member is entitled to the same statutory minimum damages, even if there are variations in the "profits" Seamless "derived" from its use of each Class Members' identity, these variations do not affect the minimum damage amount each Class Member is due. Similarly, for Plaintiff's unjust enrichment claim, Class damages can be determined based on Seamless's illegally earned profits from Class Members' personal information. *See* Naaman Decl., ¶¶11-13.

Finally, the proposed Class is easy to ascertain and notify. Every Illinois-based business contact profile available in Seamless's real time directory contains the Class Members' name, address, phone number, and email address. The business contact profiles thus serve both to

---

[3] The Ninth Circuit Court of Appeals and at least eleven district courts have agreed with this Court's ruling that Plaintiff's allegations establish Constitutional injury-in-fact and statutory injury under state right of publicity statutes. *See, e.g., Martinez v. ZoomInfo Techs.*, 82 F. 4th 785, 789 (9th Cir. 2023) (the plaintiff "has plausibly pleaded that she suffered sufficient injury to establish standing"); *Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008, 1020-23 (D. Nev. 2021); *Callahan v. PeopleConnect,* No. 20-cv-09203, 2021 WL 5050079, at \*14-15 & \*18 (N.D. Cal. Nov. 1, 2021) (analyzing statutory standing under Cal. Civ. Code § 3344 and California's UCL); *Knapke v. PeopleConnect*, 553 F. Supp. 3d 865, 878 (W.D. Wash. 2021); *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 887-91 (N.D. Cal. 2022); *Gabiola v. Sarid*, No. 16-cv-02076, 2017 WL 4264000, at \*6 (N.D. Ill. Sep. 26, 2017); *Spindler v. Seamless Contacts, Inc.*, No. 22-cv-787, 2022 WL 16985678, at \*3-4 (N.D. Cal. Oct. 24, 2022); *Lukis v. Whitepages, Inc.*, 542 F. Supp. 3d 831, 804-05 (N.D. Ill. 2020); *Camacho v. Control Group Media Co.*, No. 21-cv-1954, 2022 WL 3093306, at \*27-28 (S.D. Cal. July 18, 2022); *Hoffower v. Seamless Contacts, Inc.*, No. 22-cv-2019, Dkt. No. 37, at \*1-2 (N.D. Ill. Nov. 22, 2022); *In re Clearview AI, Inc. Consumer Privacy Litig.*, 585 F.Supp.3d 1111, 1126-30 (N.D. Ill. Feb. 14, 2022); *Martinez v. ZoomInfo Techs. Inc.*, No. 21-cv-5725, 2022 WL 1078630, at \*2-4 (W.D. Wash. Apr. 11, 2022).

identify the Class Members and facilitate notice to the Class. And, Illinois residency can be established through the claims process.

At least two courts have granted class certification in highly similar cases involving statutory right of publicity claims. In *Fischer v. InstantCheckmate LLC*, Judge Feinerman certified a Rule 23(b)(3) class of Illinois residents whose names and personal information appeared in a searchable database published by InstantCheckmate. 19 C 4892, 2022 WL 971479, at *3, 15 (N.D. Ill. Mar. 31, 2022). Like Seamless, InstantCheckmate.com used search results containing individuals' names and identities to advertise subscriptions. *See id*., at *8. The *Fischer* court considered and rejected many of the arguments Seamless may raise here. Similarly, in *Huebner v. Radaris, LLC*, the court certified under Rules 23(b)(3) and 23(b)(2) a class of individuals asserting California claims against a similar people-search site. 14-cv-04735-VC, 2016 WL 8114189, at *1-2 (N.D. Cal. Apr. 12, 2016). Furthermore, at least two courts have certified, for settlement purposes, classes of individuals whose names and personas were used to promote social media websites in violation of state right of publicity statutes. *See Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939 (E.D. Cal. 2013) (granting final approval); *Perkins v. LinkedIn, Inc.*, No. 13-cv-04303-LHK, 2016 U.S. Dist. LEXIS 18649 (N.D. Feb. 16, 2016) (same).[4] There is no reason for a different result here. Plaintiff's motion should be granted.

---

[4] Courts have also certified classes of individuals pursuing right of publicity claims in other contexts. In *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, No. 09-cv-1967 CW, 2013 U.S. Dist. LEXIS 160739, (N.D. Cal. Nov. 8, 2013), the court certified a class of "current and former student athletes" who alleged "that the NCAA misappropriated their names, images, and likenesses in violation of their statutory and common law rights of publicity." *Id.* at *10-11. *See also Keller v. Electronic Arts, Inc*., No. 4:09-cv-1967 CW, 2015 U.S. Dist. LEXIS 113474 (N.D. Cal. Aug. 18, 2015) (confirming certification of similar class for settlement purposes); *Vinci v. American Can Co.*, 459 N.E.2d 507 (Ohio 1984) (affirming certification of class of individuals pursuing Ohio misappropriation of name or likeness claims).

## II. PROCEDURAL BACKGROUND AND PROPOSED CLASS

On April 21, 2022, Plaintiff Kate Hoffower filed a class action complaint asserting claims under the IRPA and for unjust enrichment. Dkt. No. 1. On November 22, 2022, this Court denied Seamless's Rule 12(b)(1) motion to dismiss for lack of standing under Article III and its Rule 12(b)(6) motion. Dkt. 37.

Discovery is now closed, Dkt. 94, and Plaintiff respectfully moves for an Order certifying the following Class pursuant to Rules 23(a), 23(b)(2), and 23(b)(3), or alternatively, certifying the Class with respect to certain issues pursuant to Rule 23(c)(4):

> All Illinois residents who are in Seamless's real time business directory, and have a business contact address of Illinois, and who are not customers of Seamless.

## III. DESCRIPTION OF THE SEAMLESS REAL TIME BUSINESS DIRECTORY



Seamless is used by "█████████████████████████████████████████████ ███████████████████████████." Ex. 2 ("Demming Tr.") at 14:1-11. Seamless owns and operates a public-facing website at www.seamless.ai. Ex. 3; Demming Tr. at 49:5-7, 59:9-11. From the website, a free or paying customer may access the Seamless real time directory via the login screen. Ex. 4; Demming Tr. at 49:8-10, 59:9-11. ████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ █████████████████." Demming Tr. at 28, 32:6-9 ("██████████████████████ ████████████████████████████████████████████," "); Ex. 5 ("Floyd Tr.") at 22:14-17. Since 2017, ██████████████████████████████████████████ ████████████████████████████ Demming Tr. at 142:4-144:5.

Seamless has ████████████████████████████████████████████████ ████████████████████████████████████████████████████. *Id*. at 13. Seamless has

four tiers of subscriptions—Free, Basic, Pro, and Enterprise—that range from approximately

████████████. Ex. 6; Demming Tr. at 20-21; Ex. 8 ("Hopkins Tr.") at 29-33. Seamless

generates revenue "███████████████████████████████." Demming Tr. at 70:23-25. "███

████████████████████████████████████████████████████" *Id.*

at 21:9-11. ███████████████████████████████████████████. *Id.*

at 18-21. ███████████████████████████████ Ex. 6 ("███████

███████████████████████████████████.").

    As of today, ██████████████████████████████████

██. Ex. 7; Hopkins Tr. at 30-31. ███████████████████████████

██. Hopkins Tr. at 30-31; Floyd Tr. at 81. ███████████████████████

███████████████████████████████████████████████████

████████████████████ Ex. 9; Ex. 10; Hopkins Tr. at 37, 40, 41-42, 49, 72; Floyd Tr.

at 145, 147; Demming Tr. at 189. ████████████████████████████████

████ Hopkins Tr. at 34, 60-62; Demming Tr. at 18-19, 113, 115. ████████████████

████████████████████████ Demming Tr. at 20; Ex. 6 ("████████████

██████████████████████.").

    ███████████████████████████████████████████

███████████████████ Demming Tr. at 21:19-23:11, 194:3-13; Complaint ¶35. ███

███████████████████████████████████████████████████

Floyd Tr. at 33:10-12, 43:8-12. ███████████████████████████████

███████████████ Ex. 7; Ex. 11. ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████ Ex. 12;



Ex. 13.

Ex. 14; Ex. 15.

Ex. 16; Ex. 17. As seen in Exhibit 16,

Ex. 18 (video of search for Plaintiff Hoffower).

*See* Ex. 18;

Ex. 19; Ex. 20; Complaint ¶34; Demming Tr. at 132:3-12.

Ex. 21; Ex. 22. As seen in Exhibit 21,

*See also* Ex. 23.

Ex. 24; Ex. 25; Hopkins Tr. at 40:10-41:6.

Seamless's subscription plans: Free, Basic, Pro, and Enterprise. Ex. 6 ("

).

██████████████████████████████████████████████████

███████████████████ Ex. 26.

## IV. LEGAL STANDARD

A class action is designed to avoid repeated litigation of the same issue and to facilitate prosecution of claims that any one individual might not otherwise bring on her own. *Chi. Teachers Union, Local No. 1 v. Bd. Of Educ. Of Chi.*, 797 F.3d 426, 433 (7th Cir. 2015). At the class certification stage, the court does not adjudicate the case but selects the method best suited for the fair and efficient adjudication of the controversy. *Mullen v. GLV, Inc.*, 330 F.R.D. 155, 161 (N.D. Ill. 2019). While the Court's analysis may entail some overlap with the merits, merits questions may only be considered to the extent that they are relevant to determining whether the Rule 23 prerequisites are satisfied. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 823-824 (7th Cir. 2012). Courts are to favor certification and have discretion to alter, expand, subdivide or abandon the certification as the case develops. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982).

A plaintiff seeking class certification must satisfy Rule 23(a) for numerosity, commonality, typicality and adequacy of representation. Fed. R. Civ. P. 23(a); *Red Barn Motors, Inc. v. Nextgear Capital, Inc.*, 915 F.3d 1098, 1099 (7th Cir. 2019). Implicit under Rule 23 is that the definition of the class must be clearly defined and its parameters based on objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). Plaintiff here seeks certification of the Class under Rule 23(b)(2) and (b)(3). Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Under Rule 23(b)(3), a plaintiff must also show that questions of law or fact common to the class members predominate over individualized issues and that a class action is the superior

method of adjudicating the case. Fed. R. Civ. P. 23(b)(3). "The party seeking class certification bears the burden of showing by a preponderance of the evidence that certification is proper." *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020).

## V. ARGUMENT

### A. The Requirements of Rule 23(a) are Satisfied.

#### 1. The proposed Class is so numerous that joinder is impracticable.

Rule 23(a)(1) requires that class membership be so numerous that joinder of all members is impractical. Fed. R. Civ. P. 23(a)(1); *Mullen*, 330 F.R.D. at 161. Although the numerosity requirement does not rest on any magic number, joinder is usually deemed impracticable when the class number is forty or more. *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017). When determining numerosity, the exact number of class members does not need to be established. *Barragan v. Evanger's Dog & Cat Food Co.,* 259 F.R.D. 330, 333 (N.D. Ill. 2009).

The proposed Class easily satisfies the numerosity requirement. Relying on Seamless's verified interrogatory responses, the proposed Class comprised of all Illinois residents who are non-customers and who have a business contact address in Illinois available in Seamless's real time directory is estimated to contain 2,337,144 members as of October 27, 2022.[5] Ex. 27 (First Supp. Responses to Interrogatory Nos. 11, 12); Floyd Tr. at 121-126.

___

[5] This Court ordered Seamless to produce the results of certain queries in response to Plaintiff's Interrogatory No. 21 and Request for Production No. 26, in an attempt to determine whose contact information had been saved in a My Contacts list by a free customer. Dkt. 94. After weeks of working through this discovery, and despite producing the results of the query it constructed and conducted pursuant to the Court's order, Seamless represented that its records of who would be in this class of persons who were saved to My Contacts lists (as opposed to accessible in the real time directory ) are "inaccurate, and unusable in determining the size of the purported class in this matter and . . . ██████████████" Borrelli Decl., Ex. 28 (Third Supp. Response to Interrogatory No. 21). Indeed, Seamless determined ████████████████████████████████ *Id*. Therefore, Plaintiff seeks certification of the number of

## 2. There are questions of law and fact common to the proposed Class.

Rule 23(a)(2) requires questions of law or fact common to the class. The commonality standard is easily met. William B. Rubenstein, Alba Conte & Herbert B. Newberg, Newberg on Class Actions ("Newberg") § 3:18 at 228 (5th ed. 2011). Commonality requires the class share only a single common question of law or fact capable of class-wide resolution. *Quinn v. Specialized Loan Servicing, LLC*, 331 F.R.D. 126, 131 (N.D. Ill. 2019). A plaintiff can meet the requirement by showing a common contention that is capable of class-wide resolution such that determination of its truth or falsity will resolve an issue central to the validity of each claim. *Bell v. PNC Bank N.A.*, 800 F.3d 360, 374 (7th Cir. 2015). Where the same conduct by the same defendant gives rise to the same kind of claims from the class members, there is a common question. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). Rule 23 does not require that every question be common. *Id*. Here, the proposed Class satisfies commonality. Indeed, as demonstrated below, every meaningful issue in this case can be resolved on a common basis.

### a. Seamless's liability turns on common questions of law and fact.

Seamless's liability hinges on: (1) its use for a commercial purpose of people's names and personal information in free trials to advertise subscriptions; (2) the identifiability of Class Members in Seamless's real time directory ; and (3) Seamless's failure to obtain previous written consent. *See* 765 ILCS 1075/1 *et seq*. All three elements are subject to common proof.

**First**, that Seamless's free trials use Class members' names, identities, and personal information for a commercial purpose can be shown by common proof. Under the IRPA, "[a] person may not use an individual's identity for commercial purposes." 765 ILCS 1075/30.

---

persons who are available in the Seamless real time directory and have a business contact address in Illinois (and are not customers).

10

"Commercial purpose" is defined as *either* "the public use *or* <u>holding out of an individual's identity</u>." 765 ILCS 1075/5 (emphasis added). "The term 'public use' in the IRPA means that some substantial number of people saw *or were exposed to* a person's identity." *See Fischer*, 2022 WL 971479, at *10 (N.D. Ill. Mar. 31, 2022) (emphasis added). Citing *Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923 (Ill. App. 2013), the *Fischer* court acknowledged that "holding out" means something other than "public use." *Fischer*, 2022 WL 971479, at *10. Indeed, the *Fischer* court explicitly found that "holding out" does not require that the individual's identity was seen by others. *Fischer*, 2022 WL 971479, at *10. Rather, "holding out . . . mean[s] the representation . . . of an individual's identity on or in conjunction with certain activities," and thus turns on the defendant's conduct, not the public's perception. *Id.* (quoting *Trannel*, 987 N.E at 930). For example, in *Trannel,* the court concluded that an advertiser held out the plaintiff's identity by "deliberately placing" her photograph on a commercial product. 987 N.E at 930. In *Fisher*, the court relied on that finding to support its conclusion that how many members of the public saw a putative class member's profile was immaterial to whether the defendant violated the IRPA by holding out that person's identity in connection with the offering for sale of its services.[6] *Fischer*, 2022 WL 971479, at *10.

Here, as in *Fischer*, common facts will show that Seamless is holding out Plaintiff's and Class Members' identities in its real time directory in connection with promotion of its subscription services. *Id.* In fact, this can be shown simply by how the real time directory and sales software

---

[6] Since *Fischer*, several other courts have similarly found "holding out" under the IRPA to mean "the representation of an individual's identity on or in connection with certain activities." *See Gaul v. Truth Now, LLC,* No. 21-CV-1314-JES-JEH, 2022 WL 3647257, at *5–6 (C.D. Ill. Aug. 24, 2022*); Siegel v. Zoominfo Techs., LLC*, No. 21 C 2032, 2021 WL 4306148, at *3 (N.D. Ill. Sept. 22, 2021); *Mackey v. PeopleConnect, Inc.*, No. 22 C 342, 2023 WL 2561621, at *9 (N.D. Ill. Mar. 17, 2023); *Nolen v. PeopleConnect, Inc.*, No. 20-CV-09203-EMC, 2023 WL 4303645, at *5 (N.D. Cal. June 30, 2023).

operates, in which it displays limited contact profiles in response to a search. *See* Ex. 16; Ex. 18; Ex. 22; Ex. 26; Compl. ¶¶34-35.

**Second**, that Seamless's advertisements implicate the "identity" of each Class Member may be shown by common proof that Seamless incorporates "attribute[s] of an individual" that "serve[] to identify that individual to an ordinary, reasonable viewer" in its promotion of its paid subscriptions. *See* 765 ILCS 1075/5. Here, search results and business contact profiles of each Class member are designed to appear the same way to every user, ███████████████████ █████████████████████████████████████████████████████████████. *See* Ex. 16; Ex. 18; Demming Tr. at 132:3-12.

**Third**, that Seamless failed to obtain Class Members' "previous written consent" will be established by common proof. Indeed, Seamless admitted that it "███████████████████ ███████████████████████████████████████████." Ex. 27 (Response to Interrogatory 6); Demming Tr. at 152:24-153:24. Furthermore, ████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████. Demming Tr. at 63-64.

#### b. Entitlement to damages is a common issue of law and fact.

Damages may also be established by common proof. The IRPA recognizes that "each individual's right of publicity" is "[t]he right to control and to choose whether and how to use [that] individual's identity for commercial purposes." 765 ILCS 1075/10. A defendant "who violates" the IRPA by using an individual's identity for commercial purposes without permission is "liable" to that individual for statutory minimum damages in the amount of "$1,000." 765 ILCS 1075/40. Accordingly, each Class Members' entitlement to statutory minimum damages under the IRPA may be established by the same common proof discussed above, that is, proof that Seamless

12

used their names and identities for a commercial purpose without previous written consent. *See Fischer*, 2022 WL 971479 (certifying Rule 23(b)(3) damages class seeking $1,000 in minimum statutory damages for each class member after the defendant published profiles about the class members to promote website subscriptions).

Although not required to support their claim for statutory minimum damages under the IRPA, Plaintiff will also show by common proof both that Plaintiff's and the Class's personal information has an economic value to Seamless and that Seamless earned a benefit from its use of their names and identities:

1. Seamless ascribes a specific value to each business contact profile, sometimes referred to as sales leads or leads. Ex. 37 (



   ); Ex. 30 ("                                                                      .

2. The value Seamless places on its sales software, algorithm, and "directory at large," which is fully accessible to both free customers and paid customers. *See* Ex. 27 (Response to Interrogatory 2) ("



   ); *Id.* (Response to Interrogatory 5) ("

   ); *Id.* (Response to Interrogatory 3) ("

   ); Ex. 29 (

   ") Ex. 31("

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████ ).

3. The revenue Seamless generates from paid subscriptions, which is ███████████
   ███████. *See* Demming Tr. at 70:21-25, 71:5-72:4 (Seamless earned approximately █████
   █████████ in revenue in 2022); Hopkins Tr. at 12:1-8; Ex. 27 (Response to
   Interrogatory 4) ("Seamless is a business entity and, like presumably all business
   entities, endeavors to earn revenue. One of the ways that Seamless earns revenue is
   through user subscriptions. Accordingly, like countless other companies employing a
   "freemium" model, Seamless invites trial users who have previewed its product and
   found the ability to view and search the Seamless directory to be useful to subscribe by
   upgrading.").

4. Seamless offers four subscription tiers: **Free**, which costs nothing for 50 free credits a
   month; **Basic**, which costs approximately █████████████████████; and **Pro** and
   **Enterprise**, which cost anywhere from █████████████████████. Ex. 6;
   Demming Tr. at 20-21; Hopkins Tr. at 29-33.

5. Seamless ██████████████████████████████████████████████
   ████████████████████████████. Ex. 33 (
   ███████████████████; Ex. 35
   ████████████████████████████████████████
   ████████████████████████). Floyd Tr. at 90-103.

These common facts show that Seamless places an economic value on Plaintiff's and the

Class's personal information and that it earned a benefit from its use of each Class Members'

identity in its real time directory.

This common proof further shows that Seamless failed to pay each Class member the

royalties to which they are entitled. Thus, Seamless "unjustly retained a benefit to the plaintiff's

detriment," as required for Plaintiff's unjust enrichment claim by retaining the revenue associated

with its use of Class Members' profiles to promote subscriptions to its website. *See Bonilla v.*

*Ancestry.com Operations, Inc.,* 574 F. Supp. 3d 582, 597 (N.D. Ill. 2021) (quoting *Cleary v. Philip*

*Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011)). These facts also provide an alternative basis for

damages under the IRPA, because each Class Member suffered "actual damages" in the amount

of royalties they should have received, and Seamless derived "profits" from its use of Class Members' identities. *See* 765 ILCS 1075/40.

### c. Entitlement to injunctive relief presents common issues of law and fact.

Plaintiff seeks injunctive relief on behalf of the Class preventing Seamless from illegally using names and identities for commercial purposes without consent. Compl. ¶70(d). Whether Class members are entitled to such relief, and what modifications Seamless must make to bring its advertising practices in compliance with the law, are issues common to every member of the Class. *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2023 U.S. Dist. LEXIS 53299, at *78 (N.D. Ill. Mar. 29, 2023) (classwide injunctive relief is appropriate where plaintiffs "request a single injunction that provides an equal benefit to every member of the class.").

\*\*\*

Thus, while only one common question of law or fact is required, as shown above, there are many shared questions of law and fact. The courts in *Fischer* and *Huebner* found commonality in cases presenting the same common issues. *See Fischer*, 2022 WL 971479, at *4 (commonality satisfied in right of publicity case against website that, like Seamless, uses profiles of personal information to advertise subscriptions); *Huebner*, 2016 WL 8114189, at *1 (granting class certification under Rule 23 (b)(3) because the defendant people-search website "seems to have acted uniformly in all respects relevant to the plaintiffs' [California right of publicity] claims"). The Court should reach the same conclusion here.

### 3. Plaintiff's claims are typical of those of the proposed Class.

Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). The typicality requirement is liberally construed. *Bakov v. Consol. World Travel, Inc.*, Case No. 15-C-2980, 2019 U.S. Dist. LEXIS 46510, at *50 (N.D. Ill. March 21, 2019). A representative's claim is typical when their claim

15

arises from the same event, practice, or course of conduct that gives rise to the class members' claims and are based on the same legal theory. *Lacy v. Cook Cty.*, 897 F.3d 847, 866 (7th Cir. 2018); *see also Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018), *cert. denied* 2019 U.S. LEXIS 2450 (U.S. April 1, 2019). Even factual differences will not defeat typicality so long as the legal theory upon which plaintiff seeks redress is the same as those they seek to represent. *Quinn*, 331 F.R.D at 132. Typical does not mean identical. *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996).

Here, typicality is satisfied because the Plaintiff's and the Class's claims arise from the same course of conduct (whether they appear in Seamless's real time directory during a free trial), are based on the same legal theories (nonconsensual misappropriation of name and identity) and seek the same relief (statutory minimum damages and actual damages). *See* section V.A.2., *supra*.

Seamless may argue, as InstantCheckmate did in *Fischer*, that Plaintiff's claims are subject to various issues and "unique" defenses that render their claims atypical. *See Fischer*, 2022 WL 971479, at *4-7. None of its potential arguments holds water, however, given the facts of this case.

**Viewing by a Member of the Public**: Seamless may argue that Plaintiff's claims are atypical because it is possible some Class Members' personal information has not yet been viewed by a member of the public during a free trial or by a free customer in a search result or a business contact profile. This argument fails because the IRPA "does not impose a viewership requirement." *Id.*, at *11. As multiple courts have held, whether an advertisement was viewed by a member of the public is not relevant to a right of publicity claim; instead, the claim turns on the defendant's commercial use, not whether a third party witnessed the use.[7] *See Siegel v. ZoomInfo Techs*,

---

[7] Seamless may also try to argue that Plaintiff's claims are untimely. "Whether the IRPA statute of limitations is one year or five years is an open question, but [t]he weight of authority from this

No. 21-cv-2032, 2021 WL 4306148, at *3 (N.D. Ill. Sep. 22, 2021) (rejecting argument that "actual view[ing]" must be alleged to state an IRPA claim). Plaintiff's and Class Members' claims arise from Seamless's algorithm's ability to search for and return their personal information for its free trial customers to advertise subscriptions. Class Members are not required to show whether, or how often, their personal information has appeared in search results or in business contact profiles displayed to members of the public.[8] *See Fischer*, at *10 ("how many (if any) InstantCheckmate users saw a putative class member's search result . . . is immaterial to whether InstantCheckmate

---

District supports the application of a one-year statute of limitations." *Fischer v. Instant Checkmate LLC*, 2022 U.S. Dist. LEXIS 59143, *19 (internal quotations and citations omitted); *Bonilla v. Ancestry.com Operations, Inc., et al*, 628 F. Supp. 3d 812 (N.D. Ill. Sept. 16, 2022). Relatedly, what action triggers the running of the statute of limitations under the facts presented here is an open question. The *Bonilla* court found that the single-publication rule (when the allegedly infringing publication was first published) applied in a case involving the publication of yearbooks and yearbook photographs. 628 F. Supp. 3d at 817-18. However, because this case does not involve photographs or books, and instead involves a real-time directory populated by a search engine, the limitations trigger in *Bonilla* cannot apply here. Plaintiff Hoffower brought her claim within one year of when she first learned her identity was in Seamless's real time directory. Nevertheless, these legal questions will rise and fall on a Class-wide basis.

[8] Indeed, Seamless says it has no way of knowing this information. Floyd Tr. at 110:10-12 ("███████████████████████████████████████████████████████████████"). ███████████████████████████████████████████████████████ *id*. at 110:6-9 (███████████████████████████████████████████████████████), (2) ███████████████████████████████████████████, *id*. at 110:15-22 ("██████████████████████████████████████████████████████████████████████████████████"), and (3) ██████████████████████████████████████████████████████████ *see* Ex. 28; Ex. 32. ██████████████████████████████████████████████████████████████████████ Floyd Tr. at 106:3-115:11. ██████████████████████████████████████ *See id*. at 110:10-12. ██████████████████████████████████████████████████████████ *Id*. at 111:22-112:5; Ex. 36 (Amended Answer to Interrogatory 21).

violated the IRPA"). As Judge Chen of the Northern District of California wrote when rejecting a similar argument by a company that uses yearbook photographs to advertise subscriptions:

> [E]ven if an advertisement connected to Plaintiff's image were never generated by users, the fact that the advertisement could be generated at any point by any person is the gravamen of Plaintiff's complaint. This is what is reflected in [the right of publicity's] lack of visual display and third-party viewership requirements.

*Nolen v. PeopleConnect Inc.*, 20-cv-09203-EMC, 2023 WL 4303645, *6 (N.D. Cal. June 30, 2023).

***

Plaintiff seeks the same relief for all Class members: statutory damages of $1,000 for each time their name and personal information appears in the Seamless database, and an injunction prohibiting use in any form of advertisement without written consent.

### 4. Plaintiff and her counsel are adequate representatives.

Rule 23(a)(4) requires that the parties and their counsel will "fairly and adequately protect the interests of the class." This inquiry "screens for conflicts of interest among class members." *Howard v. Cook Cnty. Sheriff's Office*, 989 F.3d 587, 609 (7th Cir. 2021). "[T]he mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses does not prevent class certification." *Id.* at 610 (quotation omitted). The inquiry also asks whether Plaintiff has counsel who are "experienced, competent, qualified and able to conduct the litigation vigorously." *Cavin v. Home Loan Ctr.*, 236 F.R.D. 387, 393 (N.D. Ill. 2006). Here, both parts of the inquiry resolve in favor of certification.

There is no conflict between Plaintiff and Class Members. Plaintiff seeks the same monetary compensation for herself that she does for Class Members, *i.e.*, $1,000 in statutory damages. An injunction prohibiting Seamless from using Class Members' names and identities to advertise subscriptions would similarly benefit all Class Members. The claims of all Class Members arise under the same Illinois laws. Because the "proof will be common for all plaintiffs,"

18

as Plaintiff proves her claims, she will prove those of the absent Class Members. *See In re Allstate Corp. Securities Litig.*, 966 F.3d 595, 604 (7th Cir. 2020).

Plaintiff and her counsel have and will continue to prosecute this action competently and vigorously. Plaintiff submits with this motion a declaration demonstrating her ability and interest in representing the Class and prosecuting this action. The law firms seeking to represent the Class include qualified lawyers experienced in the successful prosecution of consumer class actions. To support the determinations required under Rules 23(a)(4) and 23(g), the firms each submit with this motion declarations and firm resumes setting forth their relevant experience and expertise. Counsel have devoted ample resources to this matter, including litigating substantial motion practice and conducting discovery. These firms stand ready, willing, and able to devote the resources necessary to litigate this case vigorously and see it through to the best possible resolution.

**B. The Predominance Requirement of Rule 23(b)(3) is Satisfied.**

Rule 23(b)(3) requires that common questions of law or fact predominate over individual ones. "[T]he predominance requirement is met when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Ross v. Gossett*, 33 F.4th 433, 439 (7th Cir. 2022) (quotation omitted). Courts "routinely have found that common questions predominate where the case claims the existence of a widespread or uniform practice." *Id.* The issue is not "whether the plaintiffs would prevail" on the common issues, but rather whether common questions represent a significant aspect of the case. *Id.* "Individual questions need not be absent. [] The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Messner*, 669 F.3d at 815.

As shown above in the discussion of commonality, *see* section V.A.2., *supra*, liability, damages, and the defeat of defenses will be proved for every Class Member using the same evidence. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (the

19

predominance inquiry "begins, of course, with the elements of the underlying cause of action.") (quotation omitted). Indeed, while common issues need only "predominate," every significant issue in this case is common to the members of the Class. Like the defendant in *Fischer 1*, Seamless may argue that various individualized issues preclude a finding of predominance. *See Fischer*, 2022 WL 971479. None of these potential arguments would hold water.

      **Consent**: Seamless may argue that determining whether Seamless obtained "previous written consent" from each Class Member requires individualized proof. *See* ILCS 765 ILCS 1075/30. However, Seamless admitted that it "███████████████████████████████████ ██████████████████████████████." Ex. 27 (Response to Interrogatory 6); Demming Tr. at 152:24-153:24; *see also* Demming Tr. at 63-64.

      **Privacy:** Seamless may argue that the degree to which individual Class Members voluntarily share their own personal information with the public—for example by posting information on the internet and social networking sites like LinkedIn—presents an individualized issue. Seamless may argue that Class members who have voluntarily shared certain personal information have "less" of a claim than those who have not. This argument fails on the law and the facts. *First*, as to the law, this is not an invasion of privacy lawsuit. Plaintiff's and Class Members' claims arise not from the disclosure of otherwise "private" information, but rather from Seamless's *commercial use* of their information to advertise subscriptions without consent. *See Sessa v. Ancestry.com Operations, Inc.*, 561 F. Supp. 3d 1008, 1022 n.3 (D. Nev. 2021) ("[R]ight of publicity claims do not depend on publication of private photos, but rather the use of one's likeness for commercial purposes"); *see also Martinez v. ZoomInfo*, No. 21-cv-5725, 2022 WL 1078630, at *5 (W.D. Wash. Apr. 11, 2022). That some Class members may voluntarily share certain personal information on certain sites does not affect their right to prevent Seamless from

20

using their names and identities to advertise its product. The IRPA makes no such distinction. *Second*, as to the facts, Seamless's "██████████████████████████████

██████████████████████████████████████████████████████████████."

Demming Tr. at 32:6-9; Ex. 34. These data points include not only what is on the ██████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ Ex. 27 (Response to

Interrogatory 2); Floyd Tr. at 24:6-18, 28 (████████████████████████████████

██████"), 29, 144:16-147:13.



### C. The Superiority Requirement of Rule 23(b)(3) is Satisfied.

Rule 23(b)(3) provides four non-exhaustive factors relevant to superiority: (A) the class members' interests in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties in managing a class action. *Suchanek*, 764 F.3d 750, 759.

If predominance is satisfied under Rule 23(b)(3), then the court can generally rule that superiority is satisfied. *Beaton*, 907 F.3d 1018, 1030. In analyzing superiority, courts look to such factors as whether judicial economies will result from treatment of the case as a class action and whether minimization of overall expense and uniformity will be furthered. *See e.g.*, *Joseph v. General Motors Corp.*, 109 F.R.D. 635, 642 (D. Colo. 1986). Manageability is almost never a bar to class certification. *Bakov*, 2019 U.S. Dist. LEXIS 46510, at *63.

Class treatment of Plaintiff's and Class Members' claims is superior to other methods of management of those claims. Resolving predominant, common issues of Defendant's liability and Plaintiff's and Class Members' damages in the present case will result in substantial savings of judicial resources and minimize the overall expense of the litigation. Class treatment will eliminate

repetition and expense in trying the same claims against the same Defendant for the same conduct resulting in the nonconsensual commercial use of Plaintiff's and Class Members' names and identities in Seamless's free-trial advertisement for subscriptions to its real time directory. Individual claims would require the same experts and lay witnesses to present the same testimony and documentary evidence time after time. Requiring each Class Member to bring a separate action would be a waste of time and money. *Flynn v. FCA US LLC*, 327 F.R.D. 206, 226 (S.D. Ill. 2018).

With respect to the first factor, the Class Members' claims are so relatively small at $1,000 statutory minimum damages that it would cost more to litigate an individual case than they could hope to recover. *See Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 761 (7th Cir. 2000) (class certification may be particularly appropriate "where the small amounts of money involved . . . inhibit individualized litigation.").

The second and third factors also weigh in favor of certification. This case has been pending for nearly two years. Plaintiff's counsel are not aware of any other action asserting Illinois right of publicity claims against Seamless. This Court has become familiar with the factual and legal issues by handling the motion to dismiss and various discovery disputes. *See Hernandez v. Wells Fargo Bank, N.A.*, No. 18-cv-07354, 2020 U.S. Dist. LEXIS 15844, at *15 (N.D. Cal. Jan. 29, 2020) (third factor weighed in favor of certification because "this Court has overseen this case for well over a year and is familiar with the underlying issues").

The fourth "management" factor focuses on the "practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle Jacquelin*, 417 U.S. 156, 163 (1974). Here, Plaintiff does not foresee any serious manageability problem, and certainly none that would render thousands of individual actions a better alternative. *See Mullins*, 795 F.3d at 664 (the "superiority requirement . . . is comparative: the court must assess efficiency with an eye

toward other available methods" for resolving the dispute). Plaintiff submits with this motion the Declaration of Brandon Schwartz, an experienced claims administrator, attesting to the feasibility of Class notice. *See* Schwarz Decl. Here, individual notice is practicable because the Class is limited to people in Illinois who are in Seamless's real time directory with an Illinois business contact address and for whom an email address is available. In his Declaration, Mr. Schwartz describes a notice plan that he estimates would reach at least 85% of Class Members via direct email notice alone, with a supplemental digital banner notice program to add an additional 21 million impressions. *Id*. ¶15. In addition to direct mail, the plan incorporates a digital media plan, a toll-free hotline, and an informational website. *Id*. ¶¶12-17; *see Mullins*, 795 F.3d at 665 (class notice may be accomplished "through third parties, paid advertising, and/or posting in places frequented by class members."). For these reasons, the superiority requirement is satisfied.

### D. The Class is Clearly Defined Based on Objective Criteria

This Circuit recognizes an implicit "ascertainability" requirement within Rule 23. *Mullins*, 795 F.3d at 659. This requirement is satisfied if the class is "defined clearly and based on objective criteria." *Id.* The Plaintiff need not prove at the certification stage "that there is a reliable and administratively feasible way to identify all who fall within the class definition." *See id.* at 657, 659 (ascertainability focuses on "the adequacy of the class definition itself," not on "whether, given an adequate class definition, it would be difficult to identify particular members of the class.").

The implicit ascertainability requirement is satisfied here. The proposed Class is defined by clear and objective criteria—whether Seamless's algorithm is able to return their names and personal information in a search on the date this class is certified—none of which is dependent on the Class Members' subjective state of mind. Indeed, Seamless successfully conducted this exact

inquiry nearly one year ago. *See* Ex. 27 (First Supp. Responses to Interrogatory Nos. 11, 12); section V.A.1., *supra*. Plaintiff has shown administrative feasibility.

**E. The Proposed Class Also Satisfies the Requirements of Rule 23(b)(2).**

Rule 23(b)(2) allows class certification where a defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *Heritage Operations Grp., LLC v. Norwood*, 322 F.R.D. 321, 324 (N.D. Ill. 2017). Certification of a Rule 23(b)(2) class is appropriate when the plaintiff is seeking to require the defendant to do or not do something that would benefit the whole class. *Chi. Teachers Union*, 797 F.3d at 441.

Here, Plaintiff seeks an injunction prohibiting Seamless from using names and other personal information to promote paid subscriptions without safeguards to ensure "identities" are not used illegally without prior written consent, a practice that Seamless engages in with respect to every Class Member. Because Plaintiff seeks uniform injunctive relief from practices generally applicable to the Class, the Class should be certified under Rule 23(b)(2).

**F. In the Alternative, the Proposed Class Satisfies the Requirements of Rule 23(c)(4).**

Under Rule 23(c)(4), the Court may certify certain issues. *Ahad v. Bd. of Trs. of S. Ill. Univ.*, Case No. 15-cv-3308, 2018 U.S. Dist. LEXIS 155243, at \*23 (C.D. Ill. Sept. 12, 2018). Here, for the reasons discussed above, certification of certain issues is appropriate because they are shared in common between the Class Members, and because the accuracy of resolution would not be improved by individual trials. Such issues include: (1) whether Seamless used Class Members' names and personal information to advertise subscriptions using the free trial; (2) whether Seamless's use of names and personal information to advertise subscriptions without previous written consent is a commercial use in violation of the IRPA; (3) whether Seamless's regular practices and policies include obtaining written consent from Class Members prior to using

their names and personal information, as required by the IRPA; (4) whether Seamless ascribes economic value to and derives an economic benefit from its commercial use of Class Members' names and personal information; (5) whether the IRPA entitles each Class Member to $1,000; and (6) whether Class Members are entitled to injunctive relief to ensure Seamless does not use Class Members' identities and personal information without their consent to promote paid subscriptions to its website.

Accordingly, if the Court finds that the Plaintiff has not met the requirements of Rule 23(b)(2) and/or Rule 23(b)(3), it should certify the above issues for class treatment.

## VI. CONCLUSION

For the reasons above, Plaintiff respectfully requests the Court GRANT her motion to certify the Class pursuant to Rules 23(b)(3) and 23(b)(2) or, alternatively, under Rule 23(c)(4).

Dated: November 13, 2023                  Respectfully Submitted,

                                          By:  */s/ Brittany Resch*
                                               Brittany Resch
                                               Raina C. Borrelli
                                               Samuel J. Strauss
                                               TURKE & STRAUSS LLP
                                               613 Williamson St., Suite 201
                                               Madison, WI 53703
                                               Telephone: (608) 237-1775
                                               Facsimile: (608) 509-4423
                                               brittanyr@turkestrauss.com
                                               raina@turkestrauss.com
                                               sam@turkestrauss.com

                                               Michael F. Ram (*pro hac vice*)
                                               MORGAN & MORGAN
                                               COMPLEX LITIGATION GROUP
                                               711 Van Ness Avenue, Suite 500
                                               San Francisco, CA 94102
                                               Telephone: (415) 358-6913
                                               Facsimile: (415) 358-6923
                                               mram@forthepeople.com

Shelby Serig (*pro hac vice*)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
501 Riverside Ave., Suite 1200
Jacksonville, FL 32002
Telephone: (904) 330-3819
sserig@forthepeople.com

*Attorneys for Plaintiff and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Brittany Resch, hereby certify that on November 13, 2023, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to counsel of record via the ECF system.

DATED this 13th day of November, 2023.

TURKE & STRAUSS LLP

By: */s/ Brittany Resch*
        Brittany Resch
        brittanyr@turkestrauss.com
        TURKE & STRAUSS LLP
        613 Williamson St., Suite 201
        Madison, WI 53703
        Telephone: (608) 237-1775
        Facsimile: (608) 509-4423