**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KATE HOFFOWER, individually and on behalf of similarly situated individuals,<br><br>      Plaintiff,<br><br>    v.<br><br>SEAMLESS CONTACTS, INC., a Delaware corporation,<br><br>      Defendant. | Case No. 1:22-cv-02079<br><br>Hon. Matthew F. Kennelly |

## <u>DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>

Melissa A. Siebert
Corey T. Hickman
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
(312) 474-7900
msiebert@cozen.com
chickman@cozen.com

Aneca E. Lasley (*pro hac vice*)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, Ohio 43215
(614) 462-1085
aneca.lasley@icemiller.com

*Attorneys for Defendant*

**Table of Contents**

**Page**

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ......................................................................................... 2

   A.   The Seamless Platform ...................................................................................... 2

   B.   Plaintiff's Attorney is the Only Person to Have Searched for Her on the Platform ........... 4

APPLICABLE STANDARD ........................................................................................... 4

ARGUMENT .................................................................................................................. 5

   I.   Plaintiff Cannot Meet Rule 23(a)'s Requirements ......................................... 5

      a.   Plaintiff Lacks Article III Standing ........................................................ 5

      b.   Plaintiff is Not an Adequate or Typical Class Representative ................... 8

      c.   Plaintiff Cannot Demonstrate Commonality or Numerosity ................... 10

      d.   Numerosity Also Cannot be Established Because Plaintiff's Expert Opinions on Class Size are Flawed and Inadmissible ........................................................ 11

   II.   Certification of Any Putative Class Should be Denied Because Plaintiff Cannot Establish Predominance or Cohesion as Required by FRCP 23(b)(3) ................................... 14

      a.   The Commercial Purpose Element Requires Individualized Inquiries ................... 14

      b.   Issues of Consent Necessitate Individualized Inquiry ............................... 18

      c.   IRPA's Identity Element is an Individualized Question ........................... 20

   III.   Certification Should Be Denied Because the Class is Unmanageable, Not Otherwise Superior, and Not Ascertainable, as Required by FRCP 23(b)(3) ................................... 22

   IV.   Certification Under FRCP 23(b)(2) Fails Because Injunctive Relief is Not Appropriate ................................................................................................................ 24

   V.   Certification Should Be Denied Under FRCP 23(c)(4) ............................... 24

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aiello*,
    231 B.R. 693 (Bankr. N.D. Ill. 1999) ................................................................11

*Alpha Tech Pet Inc. v. LaGasse, LLC*,
    2017 WL 5069946 (N.D. Ill. Nov. 3, 2017) .......................................................22

*Benson v. Newell Brands, Inc.*,
    2021 WL 5321510 (N.D. Ill. Nov. 16, 2021) ....................................................24

*Block v. Major League Baseball*,
    65 Cal. App. 4th 538 (1998) .......................................................................18, 20

*Bowman v. Int'l Bus. Machines Corp.*,
    2013 WL 12291430 (S.D. Ind. Aug. 19, 2013) .................................................23

*CE Design Ltd. v. King Architectural Metals, Inc.*,
    637 F.3d 721 (7th Cir. 2011) ...........................................................................9

*Cohen v. Herbal Concepts, Inc.*,
    63 N.Y. 2d 379 (1984) ...................................................................................20

*Dancel v. Groupon, Inc.*,
    2020 WL 4926538 (N.D. Ill. Aug. 21, 2020) ...................................................19

*Dancel v. Groupon, Inc.*,
    949 F.3d 999 (7th Cir. 2019) .............................................................14, 20, 22

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) .......................................................................................11

*Dobrowolski v. Intelius, Inc.*,
    2017 WL 3720170 (N.D. Ill. Aug. 29, 2017) ..............................................20, 21

*Dolmage v. Combined Ins. Co. of Am.*,
    2017 WL 1754772 (N.D. Ill. May 3, 2017) ........................................................5

*eBay v. MercExchange, LLC*,
    547 U.S. 388 (2006) .......................................................................................24

*Ewing v. MED-1 Sols., LLC*,
    24 F.4th 1146 (7th Cir. 2022) ..........................................................................7

*Fischer v. InstantCheckmate LLC*,
   2022 WL 971479 (N.D. Ill. Mar. 31, 2022)............................................................15, 17, 23

*Friend v. FGF Brands (USA) Inc.*,
   18 CV 7644, 2019 WL 2482728 (N.D. Ill. June 12, 2019) ......................................................5

*Fry v. Ancestry.com Operations Inc.*,
   3:22-CV-140 JD, 2023 WL 2631387 (N.D. Ind. Mar. 24, 2023) .........................................7, 8

*Howland v. First Am. Title Ins. Co.*,
   672 F.3d 525 (7th Cir. 2012) ................................................................................................5

*Hussein v. Coinabul, LLC*,
   14 C 5735, 2014 WL 7261240 (N.D. Ill. Dec. 19, 2014) ......................................................11

*Jerome Davis, et al., v. The City of Chicago*,
   19 CV 3691, 2024 WL 579976 (N.D. Ill. Feb. 13, 2024)........................................................5

*Lipton v. Chattem, Inc.*,
   289 F.R.D. 456 (N.D. Ill. 2013)...........................................................................................14

*Lukis v. Whitepages Inc.*,
   454 F. Supp. 3d 746 (N.D. Ill. 2020) .....................................................................................7

*Lukis v. Whitepages Inc.*,
   549 F. Supp. 3d 798 (N.D. Ill. 2021) .....................................................................................6

*Manpower, Inc. v. Ins. Co. of Penn.*,
   732 F.3d 796 (7th Cir. 2013) ..............................................................................................11

*McFadden v. Bd. of Educ. for Ill. Sch. Dist. U-46*,
   2006 WL 681054 (N.D. Ill. Mar. 13, 2006)........................................................................5, 8, 9

*MetLife Invs. USA Ins. Co. v. Pratt*,
   442 F. App'x 589 (2d Cir. 2011) .........................................................................................16

*Meyers v. Nicolet Rest. of De Pere, LLC*,
   843 F.3d 724 (7th Cir. 2016) ................................................................................................6

*Mullen v. GLV, Inc.*,
   488 F. Supp. 3d 695 (N.D. Ill. 2020) ...................................................................................24

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) ..............................................................................................22

*Newcombe v. Adolf Coors Co.*,
   157 F.3d 686 (9th Cir. 1998) ..............................................................................................20

*Nolen v. PeopleConnect Inc.*,
2023 WL 4303645 (N.D. Cal. June 30, 2023) ........................................................17

*Priddy v. Health Care Serv. Corp.*,
870 F.3d 657 (7th Cir. 2017) .................................................................................4

*Ridgeway v. Spokeo, Inc.*,
223CV01660MEMFAS, 2023 WL 6795277 (C.D. Cal. Oct. 11, 2023) ............................8, 16

*Rowell v. Voortman Cookies, Ltd.*,
2005 WL 1026715 (N.D. Ill. Apr. 27, 2005) ..........................................................10

*Smith v. City of Chicago*,
2019 WL 2287988 (N.D. Ill. May 29, 2019) ..........................................................25

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .............................................................................................6

*Suchanek v. Sturm Foods, Inc.*,
311 F.R.D. 239 (S.D. Ill. 2015) ...........................................................................24

*Tomeo v. CitiGroup, Inc.*,
2018 WL 4627386 (N.D. Ill. Sept. 27, 2018) .........................................................20

*Toney v. Quality Res., Inc.*
323 F.R.D. 567 (N.D. Ill. 2018) ...........................................................................20

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .....................................................................................6, 7, 8

*Verde v. Confi-Chek, Inc.*,
21 C 50092, 2021 WL 4264674 (N.D. Ill. Sept. 20, 2021) ....................................6, 7, 8

*Vrdolyak v. Avvo, Inc.*,
206 F. Supp. 3d 1384 (N.D. Ill. 2016) ...............................................................14, 18

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........................................................................................5, 10

*In re Yasmin & Yaz (Drospirenone) Mktg.*,
275 F.R.D. 270 (S.D. Ill. 2011) ...........................................................................25

## Statutes

765 ILCS 1075 .............................................................................................. *passim*

## Other Authorities

Restatement (Third) of Unfair Competition § 46, cmt. d (1995) ..................................21

## INTRODUCTION

Plaintiff, Kate Hoffower ("Hoffower"), seeks to certify a class of 2.3 million individuals, and recover more than $2.3 billion in damages, solely based on a ***theoretical possibility*** that unidentified persons ***could have*** used Defendant, Seamless Contacts, Inc.'s ("Seamless") real-time search engine to view publicly available information about putative class members. Plaintiff argues that merely because these 2.3 million individuals allegedly ██████████████████████████ ██████████████████████████, class certification is appropriate. Plaintiff is wrong.

The Seamless platform is a real-time search engine that allows business professionals to search for publicly-available information about other businesses and professional individuals. Seamless' platform operates entirely in real time – ██████████████████████████ ██████████████████████████████████████████ ██████████████████████. Plaintiff brings class claims against Seamless under the Illinois Right of Publicity Act ("IRPA") and for unjust enrichment, simply because Plaintiff and the 2.3 million putative class members were ██████████████████████████. (Mot. at 23) (emphasis added). But Article III standing is not satisfied based on such speculative and theoretical allegations, nor can such allegations support an IRPA claim, which requires that one's information actually be publicly used or held out for commercial gain. 765 ILCS 1075/5.

Further, there is no commonality in how these putative class members' information was purportedly used or held out, or if their information was used or held out at all. Plaintiff has no evidence that anyone (beyond her own former attorney) actually used Seamless' platform to search for or view her or any other class member's information. In fact, Plaintiff concedes that it is impossible to identify which class members' information was actually searched and viewed on the Seamless platform. (Mot. at 17 n. 8). Instead, in an attempt to justify the massive class of the theoretically-searched, Plaintiff falsely characterizes Seamless as operating a "directory" of

1

contact information, arguing that in compiling such "directory," Seamless "held out" the class

members' information for commercial gain. But Seamless is not a directory, it is a search engine,

████████████████████████████████████████████████████████████████

████████████████████████████. There can be no IRPA claim and no injury unless an

individual's information was actually searched for and viewed. Until such time, that person's

information ***does not even exist on the platform***.

Plaintiff has long been aware of these obvious barriers to defining a class. Plaintiff sought

discovery from Seamless to address the question of ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████ Seamless attempted to estimate this number, yet Plaintiff now

disregards her own inquiry and arbitrarily requests certification of a 2.3 million member class

████████████████████████████████████████████. Plaintiff's inability to

define an appropriate class does not empower her to certify a grossly overbroad class of *every*

business professional in Illinois. Plaintiff's only support for this number comes from the expert

testimony of Dr. Michael Naaman, which Seamless moves to exclude as inadmissible because of

his flawed, unreliable reasoning and methodology. Class certification should be denied.

## **FACTUAL BACKGROUND**

**A.    The Seamless Platform**

Seamless is a platform that allows business professionals to use a real-time search engine

to seek information about other businesses and business professionals. (Demming Dep., Ex. A,

6:12-25, 12:8-18, 13:19-14:2, 15:7-17; Floyd Dep., Ex. B, 19:6-12). ████████████

████████████████████████████████████████████████████████████████

████████████████████████ (Demming Dep., Ex. A, 15:7-21, 28:3-8, 28:20-24.) ████

██████████████████████████████████████████████████████████

████████████████████ (*Id.* at 33:10-12).

████████████████████████████████████████████████████

███████████████████████████████████████████████████ (Demming

Dep., Ex. A, 40:8-17, 63:18-25, 72:16-18, 84:20-22, 95:13-17, 103:1-20; Naaman Dep., Ex. C,

11:5-15).████████████████████████████

███████████████████████████ (Demming Dep., Ex. A, 40:5-17, 63:24-25; *id.* at

95:15-17 █████████████████████████████████████

█████████████████████████ (*Id.* at 40:16-17; Seamless' Second

Supplemental Answers to Interrogatories, Ex. D, ¶ 11).

A search displays a list of businesses and/or professionals, and if the customer wishes to
see information beyond their name, they must click the "find" button, which automatically adds
that business or individual to the customer's "My Contacts" and allows the customer to view
information such as name, title, business phone and email address. (Demming Dep., Ex. A, 21:19-
23:19, 24:10-26:12, 34:6-17; Floyd Dep., Ex. B, 42:23-43:12, 119:15-16). ████████████

██████████████████████████████████████████████████████████

██████████████████████████ (Seamless' Second Supplemental Answers to Interrogatories,

Ex. D, ¶ 13). ███████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████ (*Id.*).

Every free customer is provided with 50 credits per month which can be used to conduct
searches and "find" information regarding businesses and individuals returned in searches.
(Demming Dep., Ex. A, 18:15-19:8, 20:4-11, 113:11-25). Customers have the option to purchase

a subscription for a monthly fee that provides a larger number of monthly or daily credits. (*Id.* at 20:12-16). ███████████████████████████████ (*Id.* at 17:17-18:1).

**B.      Plaintiff's Attorney is the Only Person to Have Searched for Her on the Platform**

In her responses to requests to admit and interrogatories, as well as her deposition, Plaintiff admitted that she is not aware of any person who has searched for or viewed her information on the Seamless platform other than her attorney. (Hoffower's Answers to Requests to Admit, Ex. E, ¶¶ 10-11; Hoffower's Supplemental Answers to Interrogatories, Ex. F, ¶ 10; Hoffower Dep., Ex. G, 167:5-12, 181:13-15, 196:5-11, 206:21-23). Seamless, through its Chief Architect Offer, conducted an investigation using the platform to determine whether any customer had ever accessed Plaintiff's identifying information on the Seamless platform. (Floyd Dep., Ex. B, 12:17-18, 106:3-21). ███████████████████████████████████████

███████████████████████████████████████████████ (*Id.* at 109:18-110:22, 111:22-112:23, 113:16-19, 116:2-117:9). The ███████ show that the only customer to ever search for and/or "find" Plaintiff's alleged identifying information was her (now former) attorney, Ben Osborn, just before this lawsuit was filed. (*Id.* at 106:3-21). Plaintiff has no evidence of any other person having searched for or accessed her information on the platform.

Plaintiff brings class claims against Seamless under IRPA, and for unjust enrichment, alleging that Seamless used Plaintiff's and the putative class's identities "for commercial purposes" without their "consent." (Compl. ¶ 59). Plaintiff seeks to represent a class of 2.3 million people, consisting of those who were "able" to be searched on "Seamless' algorithm." (Mot. at 23).  Plaintiff seeks nearly $3 billion in damages.

## APPLICABLE STANDARD

Plaintiff must satisfy Fed. R. Civ. P. 23's requirements by a preponderance of the evidence. *Priddy v. Health Care Serv. Corp.,* 870 F.3d 657, 660 (7th Cir. 2017). Plaintiff must establish that

each of Rule 23(a)'s requirements and at least one subsection of Rule 23(b) are satisfied. *Howland v. First Am. Title Ins. Co.,* 672 F.3d 525, 528 (7th Cir. 2012). The court "may not simply assume the truth of the matters as asserted by the Plaintiff." *Dolmage v. Combined Ins. Co. of Am.,* 2017 WL 1754772, at *3 (N.D. Ill. May 3, 2017). Instead, it must be "satisfied, after a rigorous analysis" that these requirements are met. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350-51 (2011).

## ARGUMENT

### I. Plaintiff Cannot Meet Rule 23(a)'s Requirements

#### a. Plaintiff Lacks Article III Standing

Plaintiff bears the burden of showing that her claims are "typical of the class" and that she will "adequately represent" their interests. *McFadden v. Bd. of Educ. for Ill. Sch. Dist. U-46*, 2006 WL 681054, at *5 (N.D. Ill. Mar. 13, 2006). Plaintiff must have standing to fulfill these criteria. *Id.* at *5 (denying class certification for lack of typicality and adequacy where the plaintiff could not demonstrate standing, reasoning that "named representatives of a putative class must show that they personally have been injured."); *Friend v. FGF Brands (USA) Inc*., 18 CV 7644, 2019 WL 2482728, at *3 (N.D. Ill. June 12, 2019) (standing questions "must be decided at class certification.").

In ruling on Defendant's motion to dismiss, the Court found that Plaintiff had sufficiently *alleged* standing because her claim asserted "the sort of harm that traditionally gives rise to a claim under the common law for violation of the right of publicity, specifically misappropriation of her name and likeness." (Dkt. 37, pp. 2-3). However, "as the litigation progresses, the way in which the plaintiff demonstrates standing changes," meaning that a plaintiff must establish standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Jerome Davis*, *et al., v. The City of Chicago*, 19 CV 3691, 2024 WL 579976, at *2 (N.D. Ill. Feb. 13, 2024). Even where a statutory claim has a common law analog, to maintain standing a Plaintiff must establish

an actual injury in fact. Now that discovery is complete and it is beyond dispute that Plaintiff's information was never viewed by anybody other than her attorney, it is clear that Plaintiff has suffered no injury and lacks standing.

To establish standing, a plaintiff "must have suffered an injury in fact" that is "concrete and particularized," not "hypothetical." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016). Where a plaintiff alleges a statutory violation, there must be "more than a bare procedural violation;" to satisfy Article III, a plaintiff "must allege a concrete injury that resulted from the violation." *Id.* (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016)).

While at the pleading stage the court must accept the plaintiff's allegations as true in ruling on a facial challenge to standing, *Lukis v. Whitepages Inc*., 549 F. Supp. 3d 798, 804 (N.D. Ill. 2021), to maintain standing a plaintiff must show an injury in fact. *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). This remains true even where the statutory claim has a common law analog. *Id. TransUnion* is on point. There, the plaintiffs brought a class action under the Fair Credit Reporting Act, alleging that the defendants maintained inaccurate credit reports. The Court held that the class members whose credit reports were disseminated to third parties suffered an injury in fact, but the remaining class members lacked standing because "the mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *Id.* The Court reasoned that there was no "historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury." *Id.*

Courts in this Circuit have applied *TransUnion* to IRPA claims and required that a plaintiff establish an actual disclosure of information to maintain standing. In *Verde v. Confi-Chek, Inc.*, 21 C 50092, 2021 WL 4264674, at *1 (N.D. Ill. Sept. 20, 2021), the plaintiff brought a class action alleging that the defendant violated IRPA through its people search website where a "person may

enter any person's first and last name in a search bar on the homepage and generate a listing of search results of people with that name." *Id.* The results then provide a free preview report that lists some information about the person, and offers an opportunity to purchase a subscription. *Id.* The plaintiff alleged that she discovered her information was available on the website by searching for herself, but did not allege "any third party ever searched her name or viewed her 'free preview' on defendant's website," and did "not allege defendant ever provided any information about her to any third party." *Id.* at *4. Citing *TransUnion*, the Court found that the plaintiff lacked standing because she failed to establish that "any third party has entered her name and viewed her information on defendant's website." *Id.* at *5. Distinguishing *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746 (N.D. Ill. 2020), the Court held that *TransUnion* "**require[s] an allegation of disclosure to a third party to allege a concrete injury caused by a violation of the IRPA**." *Id.* (emphasis added); *see also Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1153 (7th Cir. 2022) (reasoning that, in Fair Debt Collection Practices Act claim, "we focus on the question of publication because an unpublished statement, even if false and defamatory, is not injurious.").

Other courts are in accord. *Fry v. Ancestry.com Operations Inc.*, 3:22-CV-140 JD, 2023 WL 2631387, at *5 (N.D. Ind. Mar. 24, 2023), is instructive. In *Fry*, the plaintiff asserted a class action under the Indiana right of publicity statute. Similar to this case, the court denied the defendant's motion to dismiss for lack of standing, but citing *TransUnion*, "cautioned" the plaintiff that to ultimately have standing, "the offending conduct–the misappropriation of his likeness for commercial gain—has to have actually happened at least one time." *Id.* The court expressly held that "[i]t will not suffice if the advertising occurred only to Mr. Fry's attorneys for the purpose of litigation, as that defies all logic . . . It is silly to complain at length that one is devastated by the

unauthorized use of his yearbook photo to sell a product where he orchestrated the use and the injury may not have occurred but for his initiative." *Id.*

Similarly, in *Ridgeway v. Spokeo, Inc.*, 223CV01660MEMFAS, 2023 WL 6795277, at *6 (C.D. Cal. Oct. 11, 2023), the plaintiff brought a class claim alleging that Spokeo, through its people search website, violated Alabama's right of publicity statute by using his information in a "teaser report" "for purposes of advertising" its monthly subscription. *Id.* at *3. Citing *TransUnion*, the court held that the plaintiff lacked standing because he failed to establish "that anyone actually searched for or viewed his teaser report." *Id.* at *3, 6 ("[The court] does not find—as it must – that the mere availability or accessibility of [the plaintiff's] teaser report is a harm closely related to any right protected by common law.").

Discovery has made clear that Plaintiff lacks Article III standing. It is undisputed that Plaintiff's information has never been viewed on the Seamless platform by any person other than her own (now former) attorney, Ben Osborn. Seamless' internal analysis confirms this. Plaintiff *admits* she is not aware and has no evidence of anybody else having viewed her information. (*Supra* p. 4). Standing under IRPA requires a disclosure of Plaintiff's identifying information. *See Verde*, 2021 WL 4264674 at *1. Plaintiff cannot "manufacture standing by inflicting harm on [herself]," as it "defies all logic" to permit a plaintiff to assert claims based on "advertising occur[ing] only to [her] attorneys for the purpose of litigation." *Fry*, 2023 WL 2631387 at *5. Plaintiff has suffered no injury in fact, and thus lacks Article III standing.

### b. Plaintiff is Not an Adequate or Typical Class Representative

In orchestrating the very injury of which she now complains, Plaintiff's claims are far from typical of those of the class. *McFadden*, 2006 WL 681054, at *3 ("Typicality is satisfied if a named plaintiff's claims arise from the same event, practice, or course of conduct that gives rise to the claims of the other class members."). Even setting aside the disingenuous nature of her invented "injury,"

Plaintiff cannot dispute that her information has never been searched for or viewed on the Seamless platform, let alone by a free customer who converted to a paid customer. Both of these are definitional requirements under IRPA, and Plaintiff's claims are therefore atypical of any legitimate claims. This alone precludes certification. *McFadden*, 2006 WL 681054, at *5 (denying certification where representative's "claims and interests are, at the most, typical of portions of the class claims only.").

Further, Plaintiff's claims are not typical because there are serious questions as to her credibility. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011) (vacating class certification because "[a] named plaintiff who has serious credibility problems . . . may not be an adequate class representative."). ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██ ██████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████

Plaintiff's credibility is also highly suspect in light of her admission that the same information of hers that she is claiming appeared on the Seamless platform has also been posted on numerous other websites with Plaintiff's consent or even by Plaintiff herself, for the purpose of expanding her therapy business. (Hoffower Dep., Ex. G, 95:11-22, 130:22-131:7, 131:22-132:1,

9

135:7-136:1, 139:4-18; Hoffower's Answers to Requests to Admit, Ex. E, ¶¶ 1-9). How can it be that Plaintiff is "devastated," "humiliated," "distressed," depressed and "worried about [her] career" because her business information was allegedly available on the Seamless platform to other *business professionals*, when Plaintiff herself has purposely and repeatedly posted the very same information to expand her own business? (Hoffower Dep., Ex. G, 51:17-52-9, 67:22-68:12, 182:24-183:15, 234:8-235:3, 250:20-251:19). Plaintiff lacks credibility, rendering her inadequate and atypical.

Lastly, Plaintiff's counsel are also not adequate representatives in light of the events leading up to Plaintiff's now former counsel, Ben Osborn, withdrawing from this case, as outlined in the October 5, 2023, joint status report (Dkt. 97. pp. 7-8).

### c. Plaintiff Cannot Demonstrate Commonality or Numerosity

Numerosity under FRCP 23(a)(1) cannot be established because, as discussed throughout this brief, Plaintiff cannot identify anyone whose information was accessed on the Seamless platform at all, let alone by a free customer who later converted to a paid customer, nor can Plaintiff identify a single individual who was shown an advertisement for commercial gain. (Mot. at 9-10 n. 5) (failing to dispute that Seamless' attempt to calculate this number was "inaccurate, and unusable."). Additionally, commonality "requires the plaintiff to demonstrate that class members 'have suffered the same injury.'" *Wal-Mart*, 564 U.S. at 349-50. Here, Plaintiff cannot establish that any class member suffered *any* injury. And, Plaintiff claims to have suffered unique emotional distress damages.[1] Thus, numerosity fails as well because "the only class [Plaintiff] could represent would be one sustaining emotional distress similar to the injury she is alleging," but "there are no

---

[1] Emotional distress damages inherently require individualized evidence, thus precluding certification. *Rowell v. Voortman Cookies, Ltd.*, 2005 WL 1026715, at *2 (N.D. Ill. Apr. 27, 2005) (denying certification for emotional distress claims since such claims would "require the highly individualized inquiry of whether the Defendants' conduct caused severe emotional distress in numerous individuals.") (citation omitted).

allegations in the complaint that any other class members sustained such an injury." *In re Aiello*, 231 B.R. 693, 711 (Bankr. N.D. Ill. 1999).

### d. Numerosity Also Cannot be Established Because Plaintiff's Expert Opinions on Class Size are Flawed and Inadmissible

"Courts rely on 'common sense' to determine whether an estimate of class size is reasonable" for purposes of establishing numerosity, and "estimates 'may not be based on pure speculation.'" *Hussein v. Coinabul, LLC*, 14 C 5735, 2014 WL 7261240, at *4 (N.D. Ill. Dec. 19, 2014). Plaintiff relies on a purported expert, Dr. Michael Naaman ("Naaman"), to establish class size, but his opinions rely on wholly flawed reasoning and methodology.

An expert's reasoning or methodology must be scientifically reliable to be admissible. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). "In determining reliability, a 'critical inquiry is whether there is a connection between the data employed and the opinion offered; it is the opinion connected to existing data only by the ipse dixit of the expert, that is properly excluded under Rule 702.'" *Manpower, Inc. v. Ins. Co. of Penn.*, 732 F.3d 796, 806 (7th Cir. 2013).

Naaman based his methodology and class size conclusions on data that Plaintiff's counsel spoon-fed him, unaware that there was updated discovery Plaintiff compelled Seamless to provide. Naaman had no knowledge of the fact that Plaintiff's counsel and Seamless' counsel agreed that Seamless would conduct a query for the purpose of Plaintiff calculating class size that resulted in an estimate of less than 9,000 contacts. (Naaman Dep., Ex. C, 75:25–76:7). Not only did Naaman fail to consider the result of this query, but he also ignored the qualifiers and disclaimers regarding the accuracy of the 2.3 million figure he did adopt.

As set forth in Seamless' interrogatory answers, the 2.3 million figure ███████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████. (Seamless' Second Supplemental Answers to Interrogatories, Ex. D, ¶ 11). However, this number does not represent Illinois residents and overstates any potential class for a number of reasons:



(*Id.*). Naaman ignored all of these limitations and qualifications.

Naaman's "main gut check" involved relying on national Bureau of Labor Statistics data representing that 43% of all people employed in the U.S. were professionals, and he imputed (without any justification for doing so) that same percentage to Illinois. Resorting to basic arithmetic, Naaman took the population of Illinois (6.2 million) and multiplied that number by 43% to get 2.7 million professionals in Illinois. (Naaman Declaration, Ex. H). With no understanding of Seamless' platform, and having never even used the platform, he concluded this "gut check" rendered the class size Plaintiff's counsel provided him reliable. (Naaman Dep., Ex. C, 62:19–63:20). However, Plaintiff's defined class is comprised of current and former ***Illinois residents*** (Compl. ¶ 46), whereas Naaman relied on numbers that reflect, at best, people who ***work for a company headquartered in Illinois***. (Naaman Dep., Ex. C, 54:14–55:3; 61:1–19). In fact, Naaman could not even articulate whether the BLS data reflected people with employment in Illinois, or people residing in Illinois and having some form of employment. (*Id.* at 60:3–7).

Moreover, Plaintiff's theory of her case is that Seamless used her and others' business contact information to convince Seamless' free customers to upgrade to a paid subscription. (Compl. ¶ 10). To this end, she defines the class as "[a]ll current and former Illinois residents who are not subscribers of Seamless and whose names and personal information Seamless incorporated into profiles used to promote paid subscriptions." (*Id.* at ¶ 46). This is **not** the same as the class described by Naaman. (Naaman Declaration, Ex. H, ¶ 5) (defining the class as "all current and former Illinois residents who are not subscribers of Seamless and whose names and personal information are accessible on the Seamless real time directory."). The importance of this distinction cannot be overstated. As set forth above, ████████████████████████

████████████████████████████████████████

████████████████████████

████████████████████ (Demming Dep., Ex. A, 140:11–141:4). Plaintiff knows this, which is why she **moved to compel** Seamless to respond to an interrogatory asking ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

In response, Seamless created a query using code and produced a spreadsheet estimating less than ████████████,[2] a far smaller number than the 2.3 million on which Naaman blindly relied. Tellingly, Plaintiff's counsel never even shared this interrogatory response with Naaman; thus, the updated query result Plaintiff moved to compel for purposes of calculating class size was not even considered by Naaman in reaching his conclusions. (Naaman Dep., Ex. C, 74:21–75:11).

---

[2] As described in Seamless' interrogatory answer and admitted in Plaintiff's Motion, this estimate is also not accurate and significantly inflated from any real class size for a number of reasons. (Mot. at 9-10 n. 5).

In short, the relevant inquiry for determining class size is not whether a person could possibly show up in a search on Seamless' platform, as that is not what constitutes a "commercial purpose" as defined by IRPA, i.e., "[using] or [holding] out [] an individual's identity" for commercial gain. 765 ILCS 1075/5. Seamless cannot be deemed to have "used" or "held out" Plaintiff's or the class's identities unless their information actually exists on the platform vis-à-vis a customer searching for and viewing it. Naaman has no opinions regarding *this* universe of people. Naaman admits that the class size is critical to his IRPA damages calculation (Naaman Declaration, Ex. H, ¶ 6), but he instead provides an analysis of the class size that is entirely untethered to the class definition and, as a result, is wildly inflated and inaccurate. His testimony is inadmissible, should be excluded, and further precludes a finding of numerosity.

**II.** **Certification of Any Putative Class Should be Denied Because Plaintiff Cannot Establish Predominance or Cohesion as Required by FRCP 23(b)(3)**

Rule 23(b)(3)'s predominance inquiry is "demanding" and requires that common issues of law and fact predominate over individualized issues. *Lipton v. Chattem, Inc.,* 289 F.R.D. 456, 462 (N.D. Ill. 2013). Where liability determinations are individual and fact-intensive such that evidence "varies from member to member," certification under Rule 23(b)(3) must be denied. *Dancel v. Groupon, Inc.,* 949 F.3d 999, 1004-05 (7th Cir. 2019). The analysis begins with the substantive elements of the underlying claim. *Lipton*, 289 F.R.D. at 462. To state a claim under IRPA, a "plaintiff must allege: (1) the use of his identity; (2) for commercial purposes; and (3) without his consent." *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1386 (N.D. Ill. 2016).

**a.** **The Commercial Purpose Element Requires Individualized Inquiries**

IRPA only applies where the use of an individual's identity is for "commercial purposes." *Id.* A "commercial purpose" is defined as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or

14

services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS 1075/5. Even if Plaintiff arguably could state a claim, it is impossible to tell categorically, via common proof, whether the proposed class's identifying information was publicly used or held out, and it is similarly impossible to categorically tell whether such use or holding out, if any, was in connection with the sale of a product or for advertising.

The "public use" criterion requires a finding that "some substantial number of people saw or were exposed to" the 2.3 million individuals' identities. (Mot. at 11) (citing *Fischer v. InstantCheckmate LLC*, 2022 WL 971479, at *10 (N.D. Ill. Mar. 31, 2022)). Plaintiff affirmatively concedes that the putative class cannot categorically meet this criterion. (Mot. at 17 n. 8) ("Seamless does not know whether Plaintiff Hoffower, or any other class member and their information, has been returned in a search result . . . Seamless also does not know whether Plaintiff Hoffower's, or any person's, business contact profile has been viewed.").

Instead, Plaintiff alleges that "holding out" does not require third-party viewership, and only focuses on whether Seamless made a "representation" which included the "individual's identity." (Mot. 11). But even accepting this definition, Plaintiff's arguments still fail, as she cannot categorically show that Seamless undertook any conduct ***at all*** in connection with the putative class members. ██████████████████████████████████████████████████
████████████████████████████████████ (Demming Dep., Ex. A, 15:4-21, 28:3-8, 33:10-12). ████████████████████████████████████████████
████████████████████████████████████████████████
███████ (Demming Dep., Ex. A, 40:8-17, 63:18-25, 72:16-18, 84:20-22, 95:13-17, 103:1-20; Naaman Dep., Ex. C, 11:5-15). ████████████████████████████

15

██████████████████████████████████████████████████████████

████ Until such time, Seamless has never used, held out, or taken any act relating to any individual's information.

Thus, *at best*, the only arguably appropriate class would be the individuals whose information was actually, provably, viewed on the Seamless platform by a free customer who then because of that view converted to a paid customer. However, as Plaintiff concedes, it is impossible to categorically prove whether the putative class's information was "viewed" or "returned in a search result" on Seamless' platform. (Mot. at 17 n. 8).[3] Without categorical proof that Seamless actually disclosed the class's information, Plaintiff cannot categorically show any "use or holding out" and her class claims must fail. *Ridgeway*, 2023 WL 6795277 at *6 (dismissing claim where plaintiff failed to establish "that anyone actually searched for or viewed" plaintiff's information."); *MetLife Invs. USA Ins. Co. v. Pratt*, 442 F. App'x 589, 591 (2d Cir. 2011) (affirming dismissal of IRPA claim because identity was not "accessible to or shared by all members of the community" or "exposed to general view.") (citation omitted).

Plaintiff attempts to conjure up a disclosure or "representation" out of thin air by characterizing Seamless as a "business directory," (Mot. at 1-2), but this is outright false. Again,

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

(Seamless' Second Supplemental Answers to Interrogatories, Ex. D, ¶ 13). ████████████████

██████████████████████████████████████████████████████████

---

[3] ██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████ (Floyd
Dep., Ex. B, 110:6-22; *id.* at 114:15-115:11).

████████████████████████████████ (*Id.*; Demming Dep.,

Ex. A, 40:5-17, 63:24-25, *id.* at 95:15-17 (████████████████

████████████████████████████, and Plaintiff simply cannot

categorically prove any kind of "holding out" of information, rendering the case law she cites

entirely inapposite. (*Cf.* Mot. at 18) (citing *Nolen v. PeopleConnect Inc.*, 2023 WL 4303645, at *6

(N.D. Cal. June 30, 2023) (holding that defendant made "representation[s]" of individuals'

identities since it physically "collects yearbooks, scans the yearbooks, and extracts information

from the yearbooks…to be put into a database."); *Fischer*, 2022 WL 971479, at *2-3 (holding that

defendant made "representation[s]" of individuals' identities when it maintained a "Directory"

containing "profiles" of those individuals).

Plaintiff has long understood that a class cannot be certified based on wholly speculative

conduct. Indeed, this is precisely why Plaintiff filed a motion to compel demanding that Seamless

calculate ██████████████████████████████████. (Dkt. 63, p.

5). █████████████████████████████████████████

████████████, Plaintiff and her purported expert entirely ignore it, instead seeking to certify a

staggering class of 2.3 million individuals. However, as discussed above, it is impossible to

categorically establish whether any class members' information was used or held out under IRPA

– instead, individualized evidence would be required to assess which class members were actually

searched for, viewed and added to My Contacts by a free customer, versus who was only

theoretically capable of being searched. (Floyd Dep., Ex. B, 110:6-22) (████████████

████████████████████████████████████████████

████████████████████████████); (*id.* at 114:15-115:11)

(████████████████████████████████████████████

███████████████████████████████████

████ ).

Plaintiff simply cannot certify a class of *any* size under these facts. Plaintiff acknowledges that it is not possible to calculate the number of individuals in the class whose information was accessed by a free customer. Undeterred, Plaintiff instead asserts that the class size *is every business professional purportedly residing in Illinois* – 2.3 million people. Plaintiff's position lacks any basis. Because the class can only be assessed with individualized evidence, class certification must be denied. *Block v. Major League Baseball*, 65 Cal. App. 4th 538, 543 (1998) (denying class certification for publicity rights claim since plaintiffs sought damages for a "large" class of approximately 800 men and brought claims for "an extremely broad range of conduct," namely, different uses of their identities on different media. Since each claim had to be individually examined, "[t]he task of evaluating those claims would have been daunting at best.").

**b. Issues of Consent Necessitate Individualized Inquiry**

To prevail under IRPA, a plaintiff must prove that they did not consent to the use of their identity for a commercial purpose. *Vrdolyak*, 206 F. Supp. 3d at 1386. This statutory element requires an inherently individualized inquiry precluding class certification.

Plaintiff's own circumstances prove this point. Plaintiff provided affirmative consent to multiple third parties to collect, share and publicly display her contact information, including the Illinois Department of Financial and Professional Regulation (Hoffower Dep., Ex. G, 57:10-14, 59:15-60:19), her former employer, Oak Brook Counseling & Wellness (*id.* at 72:9-24, 100:4-9, 103:2-7), and websites such as Psychology Today (*id.* at 87:9-21), Grow Therapy (*id.* at 119:19-21) and Therapy Den (*id.* at 133:6-18). She also "consented to Grow Therapy having the discretion to post [her] profile on other websites, as they see fit," and thereby consented to them posting her profile on other websites like Zocdoc (*id.* at 136:9-23) and medicarelist.com (*id.* at 148:14-24). In

many instances, Plaintiff does not know the "scope of the consent" she provided, such as the consent she provided to the Illinois Department of Financial and Professional Regulation (*id.* at 60:20-61:6), Oak Brook Counseling & Wellness (*id.* at 100:14-17, 100:24-101:8, 109:5-9), Psychology Today (*id.* at 91:12-20, 92:13, 93:9-24, 99:13-17), and Grow Therapy (*id.* at 124:17-22, 137:2-6), nor does she know if she consented for LinkedIn to share or publicly display her information. (*Id.* at 128:10-23, 131:17-21). Accordingly, Plaintiff does not know whether any of these third-party entities "provided [her] information to Seamless." (*Id.* at 155:18-22). Plaintiff also admits she gave these consents to expand her business, *i.e.*, the same reason a business professional would use Seamless. (*Id.* at 95:11-22, 130:22-131:7, 131:22-132:1, 135:7-136:1).

Plaintiff misconstrues the issue by focusing on whether Seamless itself directly obtained consent from the putative class members to display their information. ███████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████ (Demming Dep., Ex. A, 40:5-17, 63:24-25, 95:15-17). There is no dispute here that ████████████████████████████████████████████████████████, such as the entities to whom Plaintiff provided her affirmative consent. (Compl. ¶ 41-42) ("Seamless extracted Ms. Hoffower's name and personal information from online sources including her social media accounts and her employer's website."). In providing such consent, Plaintiff, or any other putative class member, may have consented to share their identifying information with third parties like Seamless, which would be fatal to their IRPA claims. *Dancel v. Groupon, Inc.*, 2020 WL 4926538, at *3 (N.D. Ill. Aug. 21, 2020) (finding IRPA claim regarding Groupon's use of plaintiff's Instagram photo may be barred by her consent to Instagram's terms of use). As third-party consent is the key inquiry here, this is simply not the type of case where consent can be established via

class-wide proof. *Cf. Toney v. Quality Res., Inc.* 323 F.R.D. 567, 587 (N.D. Ill. 2018) ("[I]f the defendant obtained the class members' consent for calls in a uniform manner, consent can be resolved on a class-wide basis.").

Lack of consent is a required element under IRPA, 765 ILCS 1075/30, and because consent is "inextricably intertwined with [the] primary issue of liability," the requisite individual proof negates Plaintiff's ability to establish predominance. *Tomeo v. CitiGroup, Inc.*, 2018 WL 4627386, at *11 (N.D. Ill. Sept. 27, 2018); *see also Block*, 65 Cal. App. 4th at 544 (denying certification for publicity rights class since the affirmative defense of "consent" was "clearly" not "common for all members of the class" – "it will be necessary to conduct a factual inquiry into the nature and extent" of each individual's consent).

### c. IRPA's Identity Element is an Individualized Question

An IRPA claim requires that a defendant's representations must "serve[] to identify [plaintiff] to an ordinary, reasonable viewer." 765 ILCS 1075/5. Courts have universally held that whether a plaintiff is *identified* by the defendant's use generally is a question of fact. *Dobrowolski v. Intelius, Inc.*, 2017 WL 3720170, at *7 (N.D. Ill. Aug. 29, 2017); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998) (same); *Cohen v. Herbal Concepts, Inc.*, 63 N.Y. 2d 379, 384-85 (1984) (same). The Seventh Circuit held in *Dancel* that IRPA's "identity" element required individualized proof precluding class certification. 949 F.3d at 1009-10. As the Court made clear, whether a person's "photograph," "name," or other attribute "serves to identify *that* individual to an ordinary, reasonable viewer" – such that it qualifies as the person's "identity" under IRPA – is a question that "must be answered with individual proof beyond the category into which the attribute falls." *Id.* at 1009 (citation omitted). Quite simply, IRPA's identity inquiry "depends on both the specific individual and the specific appropriated attribute in question and ***cannot be solved categorically***." *Id.* at 1009–10 (emphasis added).

Again, Plaintiff's own circumstances prove this point. Plaintiff herself testified that in the sole Seamless search performed by her attorney that displayed her alleged information, Seamless displayed an incorrect e-mail address (Hoffower Dep., Ex. G, 182:5-8, 185:15-20, 237:17-21), an incorrect website address (*id.* at 182:5-8, 187:6-11, 237:17-21), and an incorrect name, Kate instead of Katherine, which is not how Plaintiff is "known" professionally, nor is it the name on Plaintiff's professional license. (*Id.* at 58:9-18). In light of all this inaccurate information, Plaintiff herself testified that the search was "clearly [] used for someone to pretend that they are me." (*Id.* at 182:5-8, 237:17-21). To fully examine whether this Seamless search in fact "identified" Plaintiff, one would need to investigate whether the website, e-mail address, and name could correspond to some other Kate Hoffower other than Plaintiff – indeed, Plaintiff herself conceded there could be some other "Kate Hoffower in the world" to whom the information applied. (*Id.* at 186:21-187:5, 187:12-15). Of course, these types of investigations are not amenable to class-wide proof and would necessitate 2.3 million mini-trials to ascertain whether a particular individual was actually identified for purposes of IRPA. *See Dobrowolski*, 2017 WL 3720170, at *6 (IRPA claim requires that name "must be understood by the audience as referring to the plaintiff."); Restatement (Third) of Unfair Competition § 46, cmt. d (1995) (same).

Plaintiff's identification issues are not unique –



. (Seamless' Second Supplemental Answers to Interrogatories, Ex. D, ¶ 11).

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████

It is not enough that "some" Seamless search results may "qualify as identities" under IRPA. *Dancel,* 949 F.3d at 1010. Indeed, even if "a great many of them" qualify, this would not be enough. *Id.* The key here is that under IRPA, the court "would need to have evidence of which" search result or contact page was in question, "and which person it was linking before it could" assess whether the "identity" element was met. *Id.* This requires an "individualized evidentiary burden" which precludes a finding of predominance. *Dancel,* 949 F.3d at 1009–10; *Alpha Tech Pet Inc. v. LaGasse, LLC,* 2017 WL 5069946, at \*5 (N.D. Ill. Nov. 3, 2017) (no predominance if case required individualized manual checks of thousands of records to determine liability).

## III. Certification Should Be Denied Because the Class is Unmanageable, Not Otherwise Superior, and Not Ascertainable, as Required by FRCP 23(b)(3)

Plaintiff must establish that a class action is superior to other available methods of adjudication – this requires an analysis of the "likely difficulties in managing a class action." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 672 (7th Cir. 2015). Additionally, the class must be ascertainable, thus requiring that the class "be defined clearly and that membership be defined by objective criteria" and not be "too vague or subjective." *Id.* at 657.

Yet, Plaintiff seeks to represent 2.3 million people based on "████████████████████ ██████████████████████████████████████" a mere theoretical possibility which is far too vague. (Mot. at 23) (emphasis added). Plaintiff tries to excuse such hopelessly overbroad class criteria by conceding that she sought ██████████████████████████ ██████████████████████████████████████████████ ██████████████████████. (Mot. at 9 n. 5). Plaintiff then inexplicably falls back on a class size of

22

2.3 million that includes every single business professional who *may* live in, work in, or have some connection to Illinois. The impossibility of identifying an appropriate and accurate class list does not empower Plaintiff to arbitrarily add 2.3 million individuals to the class – rather, such impossibility reveals that this putative class action is simple unmanageable.

This Court has already denied certification of an IRPA class for this very reason. In *Fischer* (on which Plaintiff heavily relies), the proposed class included those whose search results were "actually selected by a user of the Website." 2022 WL 971479 at *12. Yet as the Court held, "it is impossible to discern who is in" that class, since the defendant "does not store the information that was displayed in the selected search result." *Id.* at *12. Here too, as Plaintiff acknowledges, there is "no way" to categorically identify whose information was ███████████████████████████████ ███████████████████████████████████████████████████. (Mot. at 9 n. 5). As it is impossible to ascertain the class members with categorical proof, certification must be denied. *Bowman v. Int'l Bus. Machines Corp.*, 2013 WL 12291430, at *6 (S.D. Ind. Aug. 19, 2013) (denying certification because class could not be identified "on a systematic, objective basis," and rejecting the plaintiff's argument that the defendant's lack of record-keeping unfairly impeded manageability).

The total lack of records concerning Plaintiff's massive proposed class of 2.3 million people also renders notice to the class impossible. Plaintiff argues that "individual notice is practicable because the Class is limited" to those "in Seamless's real time directory." (Mot. at 23).



███████ (Floyd Dep., Ex. B, 122:3-123:14) (███████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████ ). While Seamless was able to approximate a number, ████████████████

████████████████████████████████████████████████████████ .

Lastly, Plaintiff's unjust enrichment claim is also unmanageable as a class action because this claim rises and falls with her IRPA claim. *Mullen v. GLV, Inc*., 488 F. Supp. 3d 695, 713 (N.D. Ill. 2020) ("Unjust enrichment is not a separate cause of action," and is "tied to the fate" of the other claims asserted); *Benson v. Newell Brands, Inc.,* 2021 WL 5321510, at *3 n.4 (N.D. Ill. Nov. 16, 2021) (denying class certification for unjust enrichment claim "due to plaintiffs' failure to develop any argument as to class treatment of their unjust enrichment claims" "or to offer any proposal for how such a class would be managed."); *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 253 (S.D. Ill. 2015) ("Simply put, to the extent that Plaintiffs are seeking certification of an unjust enrichment claim, it is denied because the parties did not sufficiently address class treatment of that claim.").

## IV.   Certification Under FRCP 23(b)(2) Fails Because Injunctive Relief is Not Appropriate

Injunctive relief requires a plaintiff to demonstrate, *inter alia*, that they have "suffered an irreparable injury." *eBay v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). But here, as discussed *supra*, Plaintiff has no injury at all, as her information has never been viewed on the Seamless platform except by her own attorney. Plaintiff has not identified any person who suffered an injury. Without injury, let alone "irreparable" injury, Plaintiff and the putative class cannot obtain injunctive relief.

## V.   Certification Should Be Denied Under FRCP 23(c)(4)

In the alternative, Plaintiff seeks certification of "certain issues" under FRCP 23(c)(4) in the event that "the Court finds that the Plaintiff has not met the requirements of Rule 23(b)(2)

and/or Rule 23(b)(3)." (Mot. at 24-25). But, "Rule 23(b)(3)'s requirements of predominance and manageability are applicable to 'issue' certification under Rule 23(c)(4)" as well – thus, if there is no predominance or manageability (which there is not, as discussed *supra*), Plaintiff's 23(c)(4) arguments must fail. *In re Yasmin & Yaz (Drospirenone) Mktg.,* 275 F.R.D. 270, 277 (S.D. Ill. 2011). Further, where "putative common questions are enmeshed with the same individual issues" concerning "certification of the putative class as a whole," certification under 23(c)(4) must be denied. *Id.* at 277. "[E]fficiency is the key consideration" here, and 23(c)(4) classes should not be certified where there is a "need for individualized findings in a large class." *Smith v. City of Chicago*, 2019 WL 2287988, at *10 (N.D. Ill. May 29, 2019) (citations omitted).

Here, there is no efficiency to be gained from certifying only certain issues in a massive class of 2.3 million people, and any purportedly common issues would undoubtedly be enmeshed with the countless individualized issues described above. Any common questions are not the "essence of the dispute" as needed to warrant certification under 23(c)(4). *Smith*, 2019 WL 2287988, at *10. Accordingly, Rule 23(c)(4) certification should also be denied.

## **CONCLUSION**

For the foregoing reasons, Defendant, Seamless Contacts, Inc., respectfully requests that this Court enter an Order denying class certification, striking the expert opinions of Dr. Michael Naaman, and granting Seamless such other and further relief that the Court deems just and equitable.

Dated: February 28, 2024

Respectfully Submitted,

SEAMLESS CONTACTS INC

By: */s/Melissa A. Siebert*
Melissa A. Siebert
Corey T. Hickman
COZEN O'CONNOR
123 N. Wacker Dr., Suite 1800

Chicago, IL 60606
312-474-4491
msiebert@cozen.com
chickman@cozen.com

Aneca Lasley (*pro hac vice*)
Aneca.Lasley@icemiller.com
Ice Miller LLP
250 West Street, Suite 700
Columbus, OH 43215
614-462-1085
*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2024, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk via the Court's CM/ECF system, which will notify all counsel of record.

<u>    /s/ Melissa A. Siebert                    </u>