UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATE HOFFOWER, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>SEAMLESS CONTACTS, INC., a Delaware Corporation,<br><br>      Defendant. | Case No. 1:22-cv-02079<br><br>Judge Matthew F. Kennelly |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

## INTRODUCTION

What matters at class certification is whether Plaintiff can show, through common evidence, how Seamless used Illinois-individuals' identities for a commercial purpose. Plaintiff has done just that, and yet Seamless misconstrues the facts and the law to the contrary. Under the Illinois Right of Publicity Act, 765 ILCS 1075/1 et seq. ("IRPA"), it does not matter whether an individual's identity is "publicly-available" elsewhere or has actually been "viewed," as Seamless contends; these points have no relevance here. Plaintiff has satisfied Rule 23(a) and (b), and the proposed Class should be certified.

## FACTS

Seamless makes key misrepresentations that merit correction. The parties agree that Mr. Osborn searched for Plaintiff by name, "Kate Hoffower," in the search bar. Dkt. 135 ("Opp.") at 4; Dkt. 104 ("Mot.") at n.8; Mot. Ex. 18. However, Seamless ignores that there is another—  ▬▬▬▬ (Dkt. 135-1 at 193:8-18))—way to search, via filters. Mot. Ex. 16. " ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ " Opp. at 4. Seamless conflates two separate ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ .[1] Dkt. 135-2 at 116:2-24. If a search is performed using filters, such as by state, *see* Mot. Ex. 16, ▬▬▬▬ ▬▬▬ . Dkt. 135-1 at 32:12-33:6, 194:14-21; Dkt. 135-2 at 106:3-21, 109:18-110:12. But, Seamless does not ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[1] In Plaintiff's motion to compel, Dkt. 63, she sought data from both ▬▬▬▬ . The Court ordered Seamless to run queries to respond to Plaintiff's discovery requests. Dkts. 94, 99; Mot. at n.5. Plaintiff only pursued the ▬▬▬▬▬▬▬▬ after securing the agreement of Seamless's counsel that "it would not object to running that query at a later time, even if it was requested after query discovery closed." Resch Decl. ¶4. On February 29, 2024, Plaintiff requested this search be performed. *Id.* Seamless responded on March 25, 2024, refusing to perform this search. *Id.*

1

▇▇▇▇▇, even though it is undisputed that thousands of names would appear. Moreover, Seamless admits ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Dkt. 135-2 at 121:8-124:1 (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇); Mot. Ex. 27 (Sec. Supp. Resp. to Interrogatory 10). As displayed in Mot. Ex. 16, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

Next, Seamless laments that it is a real-time search and not a directory or a database (contrary to its verified interrogatory answers, *see* Mot. Ex. 27 at 6). No matter the noun, Seamless still uses the names and identities of Illinoisians for a commercial purpose without their consent when it populates its search results list and teases additional information through the "find" button (charging one credit) to get to a full Contact Profile. Mot. Exs. 16, 22, 24. Indeed, Seamless's representations tout its ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Mot. at 14 (quoting Mot. Ex. 31))—this is "holding out" under IRPA. Indeed, it is likely that Plaintiff's name has appeared many times in a results list because of the way Seamless's algorithm works. *See supra*, n.1. This is important because the law does not require that one's information actually be searched for or viewed. *See, e.g. Fischer v. InstantCheckmate LLC*, 2022 WL 971479, at *15 (N.D. Ill. Mar. 31, 2022) (the right of publicity "does not impose a viewership requirement").

Finally, there is a significant difference between what is offered to a free customer and a paid customer. Not only is a free customer obviously limited in the number of credits or Contact Profiles they can view and save, but free customers also do not have access to Data Enrichment or Cleanse (Mot. Ex. 13), Bulk Lists (*id.*), Autopilot (Mot. Ex. 26), Intent Access (*id.*), or Bullhorn access (*id.*), and they also have limited access to Writer Credits (*id.*) and Job Changes (Mot.

2

Ex. 15). It is simply not true that a free customer's subscription tier provides the same level of information and services as a paid customer's subscription.

# ARGUMENT

## I. Plaintiff Satisfies Rule 23(a)

### A. Plaintiff has Article III Standing

Plaintiff, like the rest of the Class, has standing because "[s]he is asserting the sort of harm that traditionally gives rise to a claim under the common law for violation of the right of publicity, specifically misappropriation of her name and likeness." Dkt. 37 at 2 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021)); *see also Lukis v. Whitepages, Inc.*, No. 19 C 4871, 2021 WL 3022319, at *3-4 (N.D. Ill. July 16, 2021); *Bonilla v. Ancestry.com*, 574 F. Supp. 3d 582, 590-91 (N.D. Ill. 2021). Because it is undisputed that Plaintiff's identity is held out by Seamless (*see infra*, §II.A.) and can appear in the platform, her identity has been misappropriated and Plaintiff has standing to bring her IRPA claim. *Lukis*, 549 F. Supp. 3d 798, 805 (N.D. Ill. 2021) ("It necessarily follows, under the analysis articulated in *Spokeo* and recently reiterated in *TransUnion*, that an IRPA violation inflicts a concrete injury-in-fact under Article III.")

To save itself, Seamless attempts to insert a viewership requirement into IRPA, and Article III, that simply does not exist. Seamless states "it is beyond dispute that Plaintiff's information was never viewed by anybody other than her attorney, it is clear that Plaintiff has suffered no injury and lacks standing" is not factually or legally true. Opp. at 6. The only evidence Seamless has in support of this legal argument, which is baseless as a matter of law in any event, is that the only time Plaintiff has been searched for (subject to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Mot. Ex. 28) by name is by Plaintiff's former attorney and that her profile has not been ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. But, importantly, ▬▬▬▬▬▬▬▬

3

██████████████████████████████████████████████████████████████

██████████████████████████████████████████, *see* Mot. Ex. 18████

████. *See, supra*, n1.

In other words, according to Seamless, liability under IRPA turns not on the defendant's choice to publicly hold out a plaintiff's identity in an advertisement, but rather on a third party's choice to view that advertisement. Seamless is wrong. Liability turns on <u>Seamless's commercial use by holding out Illinoisians' identities in connection with the sale of its subscription service</u>, not on a third party's choice to view someone's information. *See* Mot. at 16-18. The statutory text, case law, and logic all support this conclusion.

**Statutory text.** IRPA addresses the "public use" or "holding out" of an individual's identity, not whether it was viewed. *Trannel v. Prairie Ridge Media, Inc.,* 2013 IL App (2d) 120725, 987 N.E.2d 923, 929–30. *Trannel* held that IRPA "prohibits the holding out—meaning the representation—of an individual's identity on or in connection with certain activities. [] We conclude that, in deliberately placing plaintiff's and her daughter's identities on the cover [of the sales brochure], defendant was representing, or holding out, plaintiff's and her daughter's identities." *Id*. at 930. Here, Plaintiff's identity is in Seamless's real time directory. Mot. Exs. 18, 22. There is no dispute that Plaintiff's identity is being held out "on" or "in connection" with subscription sales to seamless.ai. Mot. Exs. 18, 22; *infra*, §II.A. This is sufficient for Article III.

**Case law.** *Trannel*'s reasoning has been repeatedly upheld. In *Fischer v. Instant Checkmate LLC*, No. 19 C 4892, 2022 WL 971479, at *10 (N.D. Ill. Mar. 31, 2022), the court agreed that "holding out" does not require an individual's identity to have been seen by others; holding out "turns on the defendant's conduct, not on what the public perceived." The court further found that viewership is "immaterial" to IRPA violations when a plaintiff's identity is held out in connection

4

with offers for sale. *Id*; *see also Mackey v. PeopleConnect, Inc.*, No. 22 C 342, 2023 WL 2561621, at *8 (N.D. Ill. Mar. 17, 2023) (IRPA focuses on defendant's conduct—not consequences of this conduct on third parties); *Siegel v. Zoominfo Techs., LLC*, No. 21-cv-2032, 2021 WL 4306148, at *3–4 (N.D. Ill. Sept. 22, 2021) (plaintiff sufficiently stated claim by alleging website used identity in free previews to advertise subscription sales); *Gaul v. Truth Now, LLC*, No. 21-CV-1314-JES-JEH, 2022 WL 3647257, at *6 (C.D. Ill. Aug. 24, 2022) ("holding out does not require that the individual's identity was seen by others").

Noting "no material distinction between 'use' under [California's right of publicity statute] and 'hold out' under the IRPA," the court in *Nolen v. Peopleconnect, Inc.*, No. 20-cv-09203-EMC, 2023 U.S. Dist. LEXIS 113630, at *14-16 (N.D. Cal. June 30, 2023), observed that IRPA "does not impose a viewership requirement. Rather, the pertinent liability issues are whether [defendant] held out a putative class member's identity to sell subscriptions, and whether such use served a commercial purpose. It follows that a putative class member may recover regardless of whether any user ultimately viewed the website's registration page after searching for that putative class member." *Id*. (citing *Fischer*, 2022 WL 971479, at *11). In language applicable here, the *Nolen* court observed that "Plaintiff's claims do not result solely from an attorney manufactured event. As alleged under [California's right of publicity statute] here, the commercial use of Plaintiff's publicly accessible image stems in part from the loss of control over her image. . . . Such an injury is sufficient to establish standing." *Id*. at *8. *Nolen* rejected the argument that advertisements generated from online search results do not "exist" until a search is performed. The Court wrote:

> PeopleConnect may be correct that, technically, a subscription ad would not be generated until, e.g., a Free Member did a search for a person's name in a yearbook. But that ignores the fact that PeopleConnect's system was set up to generate a subscription ad after a search; thus, in a broader sense there was a preexisting subscription ad; it simply was not visually displayed until later.

5

2023 U.S. Dist. LEXIS 234002, at *25 (N.D. Cal. Dec. 14, 2023) (conditionally granting certification of a class under California's right of publicity statute). This Court should reach the same conclusion.

Seamless relies on outlier and wrongly-decided cases. In *Verde v. Confi-Chek, Inc.*, No. 21 C 50092, 2021 U.S. Dist. LEXIS 178595, at *15 (N.D. Ill. Sept. 20, 2021), the court issued its Rule 12 decision shortly after *TransUnion* was decided, holding it "reads *TransUnion* to require an allegation of disclosure to a third party to allege a concrete injury caused by a violation of the IRPA; alleging only that the statute was violated is not enough to allege an injury in fact." *Verde* is wrong, relying on the "statutory analog to the tort of defamation," *id*. at *12, not the sort of harm that traditionally gives rise to a claim for misappropriation of name or likeness, as in *Lukis*, 549 F. Supp. 3d at 805. All courts to have analyzed this issue, including this Court (Dkt. 37), have relied on the analysis in *Lukis*, and not on *Verde*.[2] *See* Mot. at 3, 4, n.3, n.6.

**Logic.** Seamless's misreading of IRPA would make a defendant's liability turn not on its own actions, but rather on the actions of a third party, making a defendant's conduct both legal and illegal depending on whether a third party viewed the identity. That cannot be the law.

### B. Plaintiff is Adequate and Typical

Plaintiff's and the Class's claims arise from the same course of conduct—whether Plaintiff and Class Members appear in Seamless's real time directory during a free trial—satisfying typicality. Plaintiff does *not* concede that her information has never been searched for or viewed. Regardless, this is a merits question, inappropriate at this stage. *See Amgen Inc. v. Conn.*

---

[2] Seamless also relies on *Fry v. Ancestry.com Operations Inc.*, 2023 WL 2631387 (N.D. Ind. Mar. 24, 2023) (interpreting Indiana's right of publicity statute) and *Ridgeway v. Spokeo, Inc.,* 2023 WL 6795277 (C.D. Cal. Oct. 11, 2023) (interpreting Alabama's right of publicity statutes). These statutes are materially different, rendering *Fry* and *Ridgeway* inapplicable. This Court should follow precedent analyzing IRPA.

6

*Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013) (holding that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.").

Seamless takes shots at Plaintiff's credibility, another unfounded merits challenge, based on mischaracterizations of her testimony. Credibility challenges require "admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *CE Design Ltd. v. King Arch. Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011). This is not the case here. ▮▮▮▮▮ does not rise to the level of detriment and concern so as to make her inadequate to represent the Class. *See Arellano v. Etan Indus., Inc.*, No.-97 C-8512, 1998 WL 417599, at *3 (N.D. Ill. July 20, 1998); *Jenkins v. Hyundai Motor Fin. Co.*, No. C2-04720, 2008 U.S. Dist. LEXIS 23073, at *19 (S.D. Ohio Mar. 24, 2008).[3]

Finally, the withdrawal of one attorney does not affect the adequacy of Plaintiff's other counsel, who have significant class action experience and have devoted, and will continue to devote, substantial time and resources to this action. *See also* Dkts. 105, 108.

### C. Commonality and Numerosity are Satisfied

Plaintiff has shown that at least thousands, if not millions, of people in Illinois have had their identities "accessed on the Seamless platform." (Opp. at 10). *See* Mot. Ex. 16 (showing a search results list with ▮▮▮▮▮); Mot. Ex. 27 (Sec. Supp. Resp. to Interrogatory 10); Naaman Decl. (Dkt. 106 (redacted); Dkt. 103-1 (under seal)). Even if the Court could trust the results of the query Seamless ran as a result of Plaintiff's motion to compel, *see* Mot. at n.5, the class size would be ▮▮▮ Resch Decl. ¶3.

---

[3] Seamless again incorrectly argues Plaintiff "seeks emotional distress damages." Opp. at 9. This is not true. Plaintiff and the Class seek only statutory damages under IRPA. Mot. at 3, 23.

7

As to commonality, Seamless challenges only whether all class members have suffered (1) any injury and (2) the same injury of emotional distress. Opp. at 10. This is a red herring. Neither Plaintiff nor the Class are seeking damages based on emotional distress; they seek only IRPA's statutory damages.[4] Mot. at 3, 23. And, Plaintiff and the Class do not rely on emotional distress as their injury; they were injured by having their identities used for a commercial purpose without their consent. *Id.*

### D. Dr. Naaman's Opinions Regarding Class Size Are Reliable.

Seamless asks the Court to exclude Dr. Naaman's testimony as it relates to numerosity (although not as to damages). This request fails because Dr. Naaman's opinions are reliable and will "assist the trier of fact to understand the evidence or to determine a fact in issue,"—specifically as to class size and class damages. *See* Fed. R. Evid. 702.

Seamless is correct that Dr. Naaman's class-size opinions are uncomplicated. In fact, his opinions rely on Seamless's discovery responses, confirming that, as of October 7, 2022, ▮▮▮▮ Mot. Ex. 27 (First Supp. Resp. to Interrogatory 11). Without any more reliable data, it was reasonable for Dr. Naaman to take Seamless at its word. *See* Dkt. 103-1 ¶7; *see Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011) (an expert's opinion is admissible where it is "reasoned and founded on data"). In any event, "[r]eliability [] is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013). This is because "[t]he soundness of the factual underpinnings of the expert's

---

[4] Also, because Plaintiff has shown an injury as a result of her information having been held out by Seamless, she can seek injunctive relief on behalf of the class. 765 ILCS 1075/50.

analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment." *Id.* (quotations omitted; citation omitted). Instead, "[t]he critical inquiry is whether there is a connection between the data employed and the opinion offered," not simply the *ipse dixit* of the expert. *Id.*

  Dr. Naaman's class size opinion is based on data *Seamless provided* about the number of Illinois contact profiles returned by a search on its platform, and confirmed through a cross-check of data from the Bureau of Labor Statistics about the number of professionals in Illinois. *See* Dkt. 103-1 ¶8. There is nothing inherently unreliable about this data in the context of this case. Seamless's main criticism appears to be that Dr. Naaman did not instead rely on the results of the query Seamless provided, but, as Seamless acknowledges, that query is inherently unreliable and the results limited to contact profiles saved in a My Contacts list and would not encompass those in Plaintiffs' class definition.[5] In fact, had Dr. Naaman relied on that (admittedly inaccurate query), his opinions would potentially run afoul of *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013), in that they would not be tied to the class Plaintiff seeks to certify.

  Seamless's criticisms about whether the 2.3 million Illinoisians whose identities were returned by a search (1) actually reside in Illinois or (2) represent some overcounting based on variations in name, name changes, or misspellings are irrelevant here because minor adjustments to the class size would not affect whether numerosity is satisfied and whether Dr. Naaman's methodology is sound. *Van v. Ford Motor Co.*, 332 F.R.D. 249, 268 (N.D. Ill. 2019) ("Rule 702's requirement that the district judge determine that the expert used reliable methods does not ordinarily extend to the reliability of the conclusions those methods produce.") (citation omitted)

---

[5] Seamless argues that Dr. Naaman did not use the class definition from Plaintiff's class certification motion, but this is incorrect. Plaintiff contends that all contact profiles for Illinois residents that are accessible on Seamless.ai are used to promote paid subscriptions to Seamless.

9

(quoting *Stollings v. Ryobi Technologies, Inc.*, 725 F.3d 753, 765 (7th Cir. 2013)). It is for the trier of fact to determine the accuracy of Dr. Naaman's class size estimate methodology. For the purposes of class certification, Dr. Naaman's opinions are reliable and should not be excluded.

II. **Plaintiff Satisfies Rule 23(b)(3)**

    A. **Whether a Commercial Purpose Exists Can Be Proven With Common Evidence**

Seamless's arguments about commercial purpose fail entirely as it <u>admits</u> it holds out individual's identities in connection with offering for sale subscriptions to its platform: "▉

▉

▉. *Until such time*, Seamless has never used, held out, or taken any act relating to any individual's information." Opp. at 15-16 (emphasis added). When a free customer searches by filters or search bar, a search result list is populated with names, titles, and companies of those individuals, Mot. Exs. 16, 18—Seamless admits this is holding out, Opp. at 15-16. ▉

▉ Dkt. 135-2 at 121:8-124:1. And, when a free customer then clicks the "Find" or "Find All" buttons on a particular individual (or set of them) shown in the search results list, they view all of the available information for that individual, Opp. at 3—Seamless admits this is holding out, *id*. at 15-16. These folks compromise the ▉ list compiled by Seamless. Resch Decl. ¶3.

The common evidence is Seamless's platform itself—it operates the same way every time, for every search, and every customer. Simply by virtue of how Seamless's platform works (regardless whether it is a real-time search, directory, or database), ▉

▉

▉. Dkt. 135-2 at 121:8-124:1. Seamless's statement that it has not "undertook

any conduct *at all* in connection with the putative class members," Opp. at 15 (emphasis in original), cannot be true. Seamless's platform's main function is to provide a directory of people for B2B professionals—of course Seamless "categorically" holds out individual's identities. *See* Opp. at 17. And, according to *Fischer*, liability "turns on the defendant's conduct, not on what the public perceived," when it "deliberately plac[ed]" personal information in its commercial product.[6] *Fischer v. Instant Checkmate LLC*, No. 19 C 4892, 2022 U.S. Dist. LEXIS 59143, at *32 (N.D. Ill. Mar. 31, 2022).

Finally, that Seamless is a "real time search engine" does not exempt it from complying with the law. An individual's identity is held out for a commercial purpose every time a free customer runs a search that returns Illinoisians. The same flow is used in connection with a sale of Seamless's service following each search and "Find," ███████████████████████████████████████████████████████████████████████████████████████. Mot. Exs. 8 (Hopkins Tr. at 40:10-41:6), 21, 23-26.

### B. The Lack of Consent Can Be Proven With Common Evidence

Seamless relies only on a third-party consent defense. Opp. at 18-19. This is expressly rejected by the statute: "A person may not use an individual's identity for commercial purposes during the individual's lifetime *without having obtained previous written consent from the appropriate person*." 765 ILCS 1075/30(a) (emphasis added). In other words, did Plaintiff and Class Members give their written consent to Seamless for use in connection with its sales of its subscription service, not to some third party? *See Fischer*, 2022 WL 971479, at *9 ("[W]hatever

---

[6] This is one example of a common and predominating issue that can and should be certified under Rule 23(c)(4).

11

consent a putative class member gave to a non-party to use or share her identity has no bearing on whether that putative class member consented to [the defendant]'s use of her identity."). It is irrelevant whether and to whom any individual voluntarily and consensually shared their identity, apart from if that entity was Seamless.[7] Mot. at 12, 20.

Next, and similarly, Seamless argues consent is an individualized inquiry because each person may have "provided affirmative consent to multiple third parties to collect, share, and publicly display [their] contact information." Opp. at 18. This is not an individualized inquiry because (1) third-party consent is no defense, and (2) Plaintiff has presented common evidence that Seamless did not collect *any* "previous written consent" from the Illinoisians displayed in its platform. Mot. at 12 (citing Mot. Ex. 27 (Response to Interrogatory 6)). And, notably, Seamless does not refute ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. *See* Mot. at 21. Consent must come from the entity that uses the identity.

Finally, the cases cited by Seamless are inapposite because the evidence proves that Seamless does not collect or obtain consent from anyone that appears in its platform. Mot. at 12. In *Dancel v. Groupon, Inc.*, 2020 WL 4926538, at *3 (N.D. Ill. Aug. 21, 2020), defendant presented evidence showing specifically *how* it obtained consent to use plaintiff's photograph via Instagram. Seamless has presented no similar evidence here. Instead, Seamless presents only hypotheticals. Opp. at 18-20. And, the facts regarding the methods of consent in *Block v. Major League Baseball*, 65 Cal. App. 4th 538, 544, (1998), are vastly different than those here, where Class Members, by definition, have no connection to Seamless.

---

[7] This is another example of a common and predominating issue that can and should be certified under Rule 23(c)(4).

12

### C. The Identity Element of IRPA is a Classwide Question of Law and Fact

That Seamless's use implicates the "identity" of each Class Member may be shown by common proof that Seamless incorporates "attribute[s] of an individual" that "serve[] to identify that individual to an ordinary, reasonable viewer" in connection with its sale of its subscription service. *See* 765 ILCS 1075/5. This is not an individualized issue.

A person's identity is held out if the information used, taken as a whole and as presented to the prospective purchaser, is sufficient to identify the person. In *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 761 (N.D. Ill. 2020), a teaser profile listing an individual's "name . . . two telephone numbers, a Chicago address, a Virginia address, and as a relation of [another individual]" could "uniquely identif[y]" the plaintiff and therefore gave rise to an IRPA claim. Here, free customers are shown (at least) name, title, company, and (likely also) location every time a search is run, and they are shown even more information—like e-mail and phone—when they use one of their limited credits by clicking "Find." *See* Dkt. 135-1 at 129:3-25. As in *Lukis*, this information alone is sufficient to identify the Class member.

Seamless does not contest that the combination of information presented in its search results list and Contact Profiles is sufficient to identify an individual. Instead, it undercuts the reliability of its own product, stating that certain of the data in *Plaintiff's* contact profile is not accurate. However, Ms. Hoffower had no issue identifying her own Contact Profile such that she chose to bring this lawsuit. *See* Dkt. 135-7 at 247:10-13. And Seamless advertises that its product allows users to find the "best" contacts and build "accurate leads lists" by "fill[ing] in missing contact information" for users' sales prospects. *See* https://seamless.ai/. The question of identifiability is common to the Class, and boils down to: does Seamless's presentation of information in the search results list and Contact Profiles serve to "identify" the Class member?

13

Seamless contends the answer depends on individual proof, but that is belied by the common evidence showing that each search result list and contact profile, used in connection with a sale of Seamless's subscription, looks nearly identical. *See, e.g.* Mot. Exs. 18, 20.

Seamless misplaces reliance on *Dancel v. Groupon, Inc.*, 949 F.3d 999 (7th Cir. 2019), which actually supports certification here. In *Dancel*, the plaintiff contended that an Instagram username could identify an individual under IRPA, but the court disagreed, finding that the attribute (or attributes) in question must "serve to identify an individual," including, for example, a name in combination with other information. *See id.* at 1009. By contrast, Seamless always displays a name and some other set of personal information (Dkt. 135-1 at 22:3-10, 139:2-8; 194:7-13; Mot. Exs. 18, 20.) that, in combination, certainly identifies an individual. *Cf. Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2017 U.S. Dist. LEXIS 138587, at *21 (N.D. Ill. Aug. 29, 2017) (although a name alone was insufficient for an IRPA claim, finding that commercial use of a name is "actionable if the defendant's use serves to identify that individual to a reasonable audience," *i.e.* in combination with additional information).

### III. The Class is Superior, Manageable, and Ascertainable

Seamless lodges unsupported generalizations that the Class is overbroad or impossible to identify. Plaintiff seeks certification of "the number of persons who are available *in the Seamless real time directory* and have a business contact address in Illinois (and are not customers)," not of the persons saved to 'My Contacts' lists. Dkt. 103 at 9 n.5. Class Members can be categorically identified on a "systematic, objective basis," *Bowman v. Int'l Bus. Machines Corp.*, 2013 WL 12291430, at *6 (S.D. Ind. Aug. 19, 2013), by running searches on Seamless's platform to obtain each Class Member's profile and contact information. Although Plaintiff is not required to show that it would be administratively feasible to identify class members, she has. *See* Dkt. 107 ¶¶8-17

14

(attesting to the feasibility of Class Member identification and class notice). Moreover, ascertainability does not focus on whether it would be *difficult* to identify particular members of the class, as Seamless suggests. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015); Mot. at §V.D. Finally, Plaintiff's unjust enrichment claim is also manageable because the IRPA claim is manageable.

## CONCLUSION

Plaintiff respectfully requests this Court grant her motion to certify the class and deny Seamless's motion to strike Dr. Naaman's expert opinions.

Dated: March 26, 2024

Respectfully Submitted,

By: */s/ Brittany Resch*
Brittany Resch
Raina C. Borrelli
Samuel J. Strauss
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
brittanyr@turkestrauss.com
raina@turkestrauss.com
sam@turkestrauss.com

Michael F. Ram (*pro hac vice*)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923
mram@forthepeople.com

Shelby Serig (*pro hac vice*)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
501 Riverside Ave., Suite 1200

15

        Jacksonville, FL 32002
        Telephone: (904) 330-3819
        sserig@forthepeople.com

*Attorneys for Plaintiff and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I, Brittany Resch, hereby certify that on March 26, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 26th day of March, 2024.

        TURKE & STRAUSS LLP

        By: */s/ Brittany Resch*
            Brittany Resch
            brittanyr@turkestrauss.com
            TURKE & STRAUSS LLP
            613 Williamson St., Suite 201
            Madison, WI 53703
            Telephone: (608) 237-1775
            Facsimile: (608) 509-4423