**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KATE HOFFOWER, on behalf of herself and all others similarly situated,<br><br>                      Plaintiff,<br><br>v.<br><br>SEAMLESS CONTACTS, INC., a Delaware Corporation,<br><br>                      Defendant. | Case No. 1:22-cv-02079<br><br>Judge Matthew F. Kennelly |

**PLAINTIFF'S OPPOSITION TO DEFENDANT SEAMLESS CONTACTS, INC.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD ......................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

    I.      Plaintiff has Article III Standing ................................................................... 1

    II.    Seamless Used and Held Out Plaintiff's Name and Likeness For A Commercial Purpose ..................................................................................................... 7

    III.   Seamless Uses Plaintiff's Name and Likeness to Entice the Purchase of Its Subscription Service ............................................................................................ 10

    IV.   The "Use" of Plaintiff's Name and Likeness by Seamless is Not Protected Non-Commercial Speech Under IRPA and the First Amendment .......................... 11

    V.    Seamless is Not Immune from Liability under Section 230 of the CDA .................... 13

    VI.   Plaintiff's Claims Are Not Barred by the Statute of Limitations ................................ 14

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................................. 1

*Blair v. Nevada Landing P'ship*,
369 Ill. App. 3d 318 (2d Dist. 2006) ...................................................... 14

*Bolger v. Youngs Drug Prods.*,
463 U.S. 60 (1983) ....................................................................................11, 12

*Bonilla v. Ancestry.com Ops. Inc.*,
574 F. Supp. 3d 582 (N.D. Ill. 2021).................................................... 2, 13, 14

*Callahan v. PeopleConnect,*
No. 20-cv-09203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ......................... 3, 13

*Cervantes v. Ardagh Grp.*,
914 F.3d 560 (7th Cir. 2019) ......................................................................... 1

*Dobrowolski v. Intelius*,
No. 17-CV-1406, 2018 U.S. Dist. LEXIS 240434 (N.D. Ill. May 21, 2018) ........................ 8, 9

*Fischer v. Instant Checkmate LLC*,
No. 19 C 4892, 2022 U.S. Dist. LEXIS 59143 (N.D. Ill. Mar. 31, 2022)........... 5, 6, 7, 9, 10, 14

*Fry v. Ancestry.com Operations Inc.*,
No. 3:22-CV-140 JD, 2023 U.S. Dist. LEXIS 50330 (N.D. Ind. Mar. 24, 2023) ...................... 4

*Gabiola v. Sarid*,
No. 16-cv-02076, 2017 WL 4264000 (N.D. Ill. Sep. 26, 2017) ................................. 3

*Gaul v. Truth Now, LLC*,
No. 21-CV-1314-JES-JEH, 2022 WL 3647257 (C.D. Ill. Aug. 24, 2022) ....................6, 11, 12

*Hanover Ins. Co. v. N. Bldg. Co.*,
751 F.3d 788 (7th Cir. 2014) ......................................................................... 1

*Huston v. Hearst Commc'nc, Inc.*,
53 F.4th 1097 (7th Cir. 2022).................................................................. 8, 9

*Kellman v. Spokeo, Inc.*,
599 F. Supp. 3d 877 (N.D. Cal. 2022) ................................................... 3, 13

*Knapke v. PeopleConnect*,
553 F. Supp. 3d 865 (W.D. Wash. 2021) ................................................. 3

*Krause v. Rocketreach*,
    561 F. Supp. 3d 778 (N.D. Ill. 2021) ...................................................................... 12

*Lukis v. Whitepages Inc.*,
    549 F. Supp. 3d 798 (N.D. Ill. 2021) ..............................................2, 3, 8, 9, 10, 11, 13

*Mackey v. PeopleConnect, Inc.*,
    No. 22 C 342, 2023 U.S. Dist. LEXIS 44836 (N.D. Ill. Mar. 17, 2023) .................................. 6

*Martinez v. ZoomInfo Techs.*,
    82 F. 4th 785 (9th Cir. 2023) ............................................................................ 3

*Martinsville Corral, Inc. v. Soc'y Ins.*,
    910 F.3d 996 (7th Cir. 2018) ............................................................................ 1

*Nolen v. PeopleConnect, Inc.*,
    No. 20-cv-09203-EMC, 2023 U.S. Dist. LEXIS 113630 (N.D. Cal. June 30, 2023) ................ 4

*Ridgeway v. Spokeo, Inc.*,
    No. 23-1660, 2023 U.S. Dist. LEXIS 186339 (C.D. Cal. Oct. 11, 2023) ................................ 5

*Sessa v. Ancestry.com*,
    561 F. Supp. 3d 1008 (D. Nev. 2021) ..............................................................3, 11

*Siegel v. ZoomInfo Techs.*,
    21 C 2032, 2021 WL 4306148 (N.D. Ill. Sept. 22, 2021) ........................................11

*Spindler v. Seamless Contacts, Inc.*,
    No. 22-cv-787, 2022 WL 16985678 (N.D. Cal. Oct. 24, 2022)................................. 3

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...................................................................................... 2

*Thompson v. Getty Images (US), Inc.*,
    13 C 1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013)............................................ 10

*Trannel v. Prairie Ridge Media, Inc.*,
    2013 IL App (2d) 120725, 987 N.E.2d 923 ..................................................... 5, 7

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ............................................................................... 2, 3

*Verde v. Confi-Chek, Inc.*,
    No. 21 C 50092, 2021 U.S. Dist. LEXIS 178595 (N.D. Ill. Sept. 20, 2021) ................. 3, 6

*Yeager v. Innovus Pharms., Inc.*,
    No. 18-cv-397, 2019 U.S. Dist. LEXIS 18095 (N.D. Ill. Feb. 5, 2019) ................... 14, 15

**Statutes**

llinois Right of Publicity Act, 765 ILCS 1075/1, *et seq*. ........... i, 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 14

## INTRODUCTION

This case is about individuals' rights to control the commercial use of their identities. Under Illinois law, each person has "[t]he right to control and to choose whether and how" their "identity" is used "for commercial purposes." 765 ILCS 1075/10 ("IRPA"). It is a violation of Illinois law for a company to "hold[] out . . . an individual's identity . . . for purposes of advertising or promoting products" without that individual's "previous written consent." 765 ILCS 1075/5&30. Seamless admits that Plaintiff's and ▮▮▮▮▮▮▮▮▮▮▮▮ Illinoisians names and identifying information are included in its real-time directory that Seamless uses to promote and sell paid subscriptions to seamless.ai. Seamless moves for summary judgment, essentially copying its arguments in support of its motion to dismiss and opposition to class certification. All of Seamless's arguments are contrary to the undisputed facts, lack support in the statutory text, and are against the weight of the caselaw. Seamless's motion should be denied.

## LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Martinsville Corral, Inc. v. Soc'y Ins.*, 910 F.3d 996, 998 (7th Cir. 2018). There is a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court draws all reasonable inferences in the nonmoving party's favor. *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019).

## ARGUMENT

### I. Plaintiff has Article III Standing

Seamless argues, without proper citation, that "even where a statutory claim has a common law analog, to maintain standing a Plaintiff must establish an actual injury in fact." Dkt. 144

("Mem.") at 5. Seamless goes on to argue that because "Plaintiff's information was never viewed by anybody other than her attorney, it is clear that Plaintiff has suffered no injury and lacks standing." *Id*. However, Seamless gets both the law and the facts wrong.

**Article III.** The misappropriation of Plaintiff's name and likeness is a concrete injury-in-fact under Article III. *Lukis v. Whitepages Inc.*, 549 F. Supp. 3d 798, 805 (N.D. Ill. 2021) ("It necessarily follows, under the analysis articulated in *Spokeo* and recently reiterated in *TransUnion*, that an IRPA violation inflicts a concrete injury-in-fact under Article III."). As the Court previously held, Plaintiff has standing because "[s]he is asserting the sort of harm that traditionally gives rise to a claim under the common law for violation of the right of publicity, specifically misappropriation of her name and likeness." Dkt. 37 at 2 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021)); *see also Bonilla v. Ancestry.com Ops. Inc.*, 574 F. Supp. 3d 582, 590-91 (N.D. Ill. 2021). The evidence before this Court shows that Plaintiff's name and likeness has been misappropriated by Seamless without her prior written consent. Plaintiff's L.R. 56.1(b)(3) Statement of Additional Material Facts ("Additional Facts"), ¶¶1-2.

Under *TransUnion*, courts evaluating whether a statutory violation gives rise to Article III standing must "ask[] whether plaintiffs have identified a . . . common-law analogue for their asserted injury." 141 S. Ct. at 2204. If a common-law analogue exists, and the harm alleged "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit" at common law, then Article III standing exists. *Id*. at 2209 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Plaintiff alleges claims under Illinois' right of publicity statute, which "codifies the common law tort of right of publicity." *Bonilla*, 574 F. Supp. 3d at 591 (citations omitted). Because Plaintiff has shown she was denied her right to control the commercial use of

her name and likeness,[1] Additional Facts ¶¶1-2, a harm that traditionally gave rise to a common law claim, Plaintiff has Article III standing to pursue both her statutory and common law claims.

Copying verbatim from its class-certification opposition, Seamless again relies on three outlier and wrongly-decided cases. <u>First</u>, in *Verde v. Confi-Chek, Inc.*, No. 21 C 50092, 2021 U.S. Dist. LEXIS 178595, at \*15 (N.D. Ill. Sept. 20, 2021), in a Rule 12 decision issued shortly after *TransUnion* was decided, the court held that it "reads *TransUnion* to require an allegation of disclosure to a third party to allege a concrete injury caused by a violation of the IRPA; alleging only that the statute was violated is not enough to allege an injury in fact." The *Verde* court took *TransUnion* at its literal word: *TransUnion* involved a Fair Credit Reporting Act ("FCRA") claim and required a disclosure because the FCRA required a disclosure, thus an IRPA claim must also state a disclosure. *Id.* at \*11-15. However, the statutory text of IRPA, unlike the FCRA, does ***not*** require disclosure. The *Verde* court erroneously relied upon the "statutory analog to the tort of defamation," *id.* at \*12, not the sort of harm that traditionally gives rise to a claim for misappropriation of name or likeness, as in *Lukis*, 549 F. Supp. 3d at 805. All other courts that have considered this issue, including this Court (Dkt. 37), have relied on *Lukis* and not on *Verde*.[2]

---

[1] Plaintiff also has shown other forms of concrete injury-in-fact: actual damages, Dkt. 103-1/Dkt. 106 (Naaman Decl.), and denial of economic compensation for this commercial use of her identity, *id.*

[2] The Ninth Circuit Court of Appeals and several district courts have agreed with this Court's ruling that Plaintiff's allegations establish Constitutional injury-in-fact and statutory injury under state right of publicity statutes. *See, e.g., Martinez v. ZoomInfo Techs.*, 82 F. 4th 785, 789 (9th Cir. 2023) (the plaintiff "has plausibly pleaded that she suffered sufficient injury to establish standing") (vacated on other grounds); *Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008, 1020-23 (D. Nev. 2021) (motion to dismiss); *Callahan v. PeopleConnect,* No. 20-cv-09203, 2021 WL 5050079, at \*14-15 & \*18 (N.D. Cal. Nov. 1, 2021) (analyzing statutory standing under Cal. Civ. Code § 3344 and California's UCL on motion to dismiss); *Knapke v. PeopleConnect*, 553 F. Supp. 3d 865, 878 (W.D. Wash. 2021) (motion to dismiss); *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 887-91 (N.D. Cal. 2022) (motion to dismiss); *Gabiola v. Sarid*, No. 16-cv-02076, 2017 WL 4264000, at \*6 (N.D. Ill. Sep. 26, 2017) (motion to dismiss); *Spindler v. Seamless Contacts, Inc.*, No. 22-cv-787, 2022 WL 16985678, at \*3-4 (N.D. Cal. Oct. 24, 2022) (motion to dismiss); *Martinez v.*

_Second_, Seamless relies on _Fry v. Ancestry.com Operations Inc._, No. 3:22-CV-140 JD, 2023 U.S. Dist. LEXIS 50330 (N.D. Ind. Mar. 24, 2023), which interprets Indiana's right of publicity statute. What Seamless fails to mention about _Fry_, is that the court <u>denied</u> the defendant's motion to dismiss and found the plaintiff had standing to sue. 2023 U.S. Dist. LEXIS 50330, at *10-14. As explained by the _Fry_ court:

> In order to determine whether a concrete harm exists for statutory violations, a court must consider both the judgment of the enacting body and whether the harm has a close relationship to one traditionally regarded as providing a basis for a lawsuit in English or American courts. One alleged injury in Mr. Fry's statutory claim is the injury to his right of publicity, a substantive right. The Indiana statute largely codifies the common law right of publicity. At common law, the misappropriation of the person's likeness is an injury to the right of publicity in itself. Therefore, the statutory injury has a basis in the common law and alleging a violation of the statute would be sufficiently concrete to give rise to Article III standing.

_Id._ at *11-12 (internal citations omitted). But, the court cautioned that the Indiana statute contains a unique section requiring a "jurisdictional act" in Indiana that IRPA does not have, Ind. Code § 32-36-1-9. The _Fry_ court also cautioned about what it viewed as a self-inflicted harm to manufacture standing by having counsel view the advertisement containing plaintiff's photograph. _Fry_, 2023 U.S. Dist. LEXIS 50330, at *14-19. However, in a similar case analyzing California's right of publicity statute, _Nolen v. PeopleConnect, Inc._, No. 20-cv-09203-EMC, 2023 U.S. Dist. LEXIS 113630, at *14-16 (N.D. Cal. June 30, 2023), the court expressly considered and rejected _Fry's_ analysis. After holding there was "no material distinction between 'use' under [California's right of publicity statute] and 'hold out' under the IRPA," the _Nolen_ court observed that "Plaintiff's claims do not result solely from an attorney manufactured event. As alleged under [California's right of publicity statute] here, the commercial use of Plaintiff's publicly accessible image stems

_ZoomInfo Techs. Inc._, No. 21-cv-5725, 2022 WL 1078630, at *2-4 (W.D. Wash. Apr. 11, 2022) (motion to dismiss).

in part from the loss of control over her image. Such an injury is sufficient to establish standing." *Id.* at *8 (internal citation omitted). And, importantly, *Nolen* rejected the argument that advertisements generated from online search results do not "exist" until a search is performed:

> PeopleConnect may be correct that, technically, a subscription ad would not be generated until, e.g., a Free Member did a search for a person's name in a yearbook. But that ignores the fact that PeopleConnect's system was set up to generate a subscription ad after a search; thus, in a broader sense there was a preexisting subscription ad; it simply was not visually displayed until later.

2023 U.S. Dist. LEXIS 234002, at *25 (N.D. Cal. Dec. 14, 2023) (conditionally granting certification of a class under California's right of publicity statute). The fact that Plaintiff's information exists online (███████████), Plaintiff's LR 56.1(b)(2) Response to Defendant's LR 56.1(a)(2) Statement ("Response Facts") ¶¶6-7, and can be scraped by Seamless's algorithm, Response Facts ¶¶6, 11, to be used by Seamless without her consent, Additional Facts ¶2, is enough to show Plaintiff has standing.

Third, Seamless again relies on *Ridgeway v. Spokeo, Inc.*, No. 23-1660, 2023 U.S. Dist. LEXIS 186339 (C.D. Cal. Oct. 11, 2023), which interprets Alabama's right of publicity statute. Here too, this is a different complaint with different allegations regarding a different statute. Moreover, no other court has relied on *Ridgeway*'s analysis and the weight of authority rejects *Ridgeway*. *See supra*, note 2.

**IRPA.** IRPA does not require viewership by a third party. *See* 765 ILCS 1075/30; *Fischer v. Instant Checkmate LLC*, No. 19 C 4892, 2022 U.S. Dist. LEXIS 59143, at *36 (N.D. Ill. Mar. 31, 2022) (IRPA "does not impose a viewership requirement."). Instead, IRPA addresses the "public use" or "holding out" of an individual's identity or likeness, not whether it was viewed. *Trannel v. Prairie Ridge Media, Inc.,* 2013 IL App (2d) 120725, 987 N.E.2d 923, 929–30 (IRPA "prohibits the holding out—meaning the representation—of an individual's identity on or in connection with

certain activities. [] We conclude that, in deliberately placing plaintiff's and her daughter's identities on the cover [of the sales brochure], defendant was representing, or holding out, plaintiff's and her daughter's identities."). Here, Plaintiff's name and likeness are in Seamless's real time directory. Additional Facts ¶1. This is holding out "on" or "in connection" with subscription sales to seamless.ai. *Trannel*, 987 N.E.2d at 930. Moreover, the <u>only</u> support Seamless has that "standing under IRPA requires a disclosure of Plaintiff's identifying information," Mem. at 8, is the wrongly-decided case, *Verde*, 2021 U.S. Dist. LEXIS 178595.

      **Logic.** Seamless's misreading of IRPA would make a defendant's liability turn not on its own actions, but rather on the actions of a third party, making a defendant's conduct both legal and illegal depending on whether a third party viewed the identity. That is not the law. *See Fischer*, 2022 U.S. Dist. LEXIS 59143, at *32 ("holding out" does not require an individual's identity to have been seen by others; holding out "turns on the defendant's conduct, not on what the public perceived."); *Mackey v. PeopleConnect, Inc.*, No. 22 C 342, 2023 U.S. Dist. LEXIS 44836, at *26 (N.D. Ill. Mar. 17, 2023) (IRPA "focuses on defendant's conduct—not consequences of this conduct on third parties"); *Gaul v. Truth Now, LLC*, No. 21-CV-1314-JES-JEH, 2022 WL 3647257, at *6 (C.D. Ill. Aug. 24, 2022) ("holding out does not require that the individual's identity was seen by others").

      **Facts.** Finally, even if third-party viewing were required, Seamless cannot confirm with any certainty that Plaintiff's information was never searched for or viewed by anybody other than her attorney. Response Facts ¶¶24-26; Additional Facts ¶¶7-9; Plf.'s Rule 56(d) Decl.[3] ¶2-15. Seamless only knows that Ben Osborn searched for "Kate Hoffower" by name. Response Facts

---

[3] Pursuant to Fed. R. Civ. P. 56(d)(3), this Court should compel Seamless to produce the requested information or disallow Seamless from making arguments in reliance on the missing information.

¶¶24-26. Seamless does not know whether Plaintiff's information appeared in a search result list after a search was run using the available filters. Rule 56(d) Decl. ¶2-11. Also, Seamless does not know definitively, because ███████████████████████████████, Response Facts ¶26, Additional Facts ¶¶7-9, that Plaintiff's information was not saved to a free customer's My Contacts List, Rule 56(d) Decl. ¶12-15.

## II. Seamless Used and Held Out Plaintiff's Name and Likeness For A Commercial Purpose

It is disputed whether Plaintiff's information has ever been returned in a search results list, Response Facts ¶¶24-26, Rule 56(d) Decl. ¶2-15, and it is disputed whether Plaintiff's information has ever been saved to a customer's My Contacts List. Response Facts ¶¶24-26, Additional Facts ¶¶3-9, Rule 56(d) Decl. ¶12-15. What is not in dispute is that Seamless's platform displays ████ ██████ of individuals, including Plaintiff, who live and/or work in Illinois in response to searches run on the platform. *See* Additional Facts ¶¶10, 15; Dkt. 135 at 15-16; Mem. at 9 ("the <u>only</u> time that Plaintiff's information has ever existed on the Seamless platform was when Plaintiff's own attorney searched for it"). In an attempt to save its entire business model, Seamless argues "████████████████████████████████████ in response to a search . . . cannot be a 'public use or holding out' of Plaintiff's identity."[4] Mem. at 9. But this is exactly what the IRPA prohibits. Seamless uses information sufficient to identify an Illinoisian (*e.g.*, first name plus last name) in the search results list displayed to a free customer—<u>before</u> a purchase of a subscription and <u>after</u> using one free credit—to entice a purchase of a subscription after the limited free credits are gone. Additional Facts ¶¶11, 14. This conduct is "holding out." *Trannel*, 987 N.E at 930; *Fischer*, 2022 U.S. Dist. LEXIS 59143, at *32. And, Seamless displays

---

[4] Plaintiff disputes that Seamless's algorithm only searches "public sources." Response Facts ¶¶6, 11, 12.

all aspects of an Illinoisian's name and likeness, including contact information, in the profile page displayed after the customer clicks "Find—again, <u>before</u> a purchase and <u>after</u> using one free credit—to entice a purchase of a subscription after the limited free credits are gone. Additional Facts ¶¶12, 14. This is also "holding out." *Trannel*, 987 N.E at 930; *Fischer*, 2022 U.S. Dist. LEXIS 59143, at *32.

The weight of authority in this Circuit agrees with Plaintiff's interpretation. In *Huston v. Hearst Commc'nc, Inc.*, 53 F.4th 1097, 1100-01 (7th Cir. 2022), the Seventh Circuit confirmed that a plaintiff states an IRPA claim when she alleges that "prospective . . . purchasers were able to see her . . . information . . . prior to their purchase." *Id*. at 1100. The Court observed that, "[o]n its face, the [IRPA] prohibits the use or holding out of an individual's identity with the aim of effectuating a sale." *Id.* at 1101. Therefore, a website's use of an individual's identity or likeness in a way that "either accompan[ies] an offer to sell or precede[s] the sale" is a "public use" and a "holding out" of that individual's identity or likeness within the meaning of the IRPA. *Id*. The Seventh Circuit observed that, in both *Lukis*, 542 F. Supp. 3d 831 and in *Dobrowolski v. Intelius*, No. 17-CV-1406, 2018 U.S. Dist. LEXIS 240434 (N.D. Ill. May 21, 2018), the defendant websites engaged in "public use" and "holding out" because they "held out limited information about the plaintiff to entice a commercial transaction" by publishing a searchable "free preview" of information about the plaintiff, which anyone could access by entering the plaintiff's name in a search bar on the defendants' websites. *Huston*, 53 F.4th at 1100; *see Lukis*, 542 F. Supp. 3d at 835 ("Anyone can search the Whitepages website for a person's name and gain access to free information connected with that name"); *Dobrowolski*, 2018 U.S. Dist. LEXIS 240434, at *3 ("When a consumer searches for a person's first and last name . . . an advertisement is automatically generated"). In *Huston*, by contrast, no aspect of the plaintiff's name and identity

was visible until <u>after</u> a purchase. *Huston*, 53 F.4th at 1101-02. Therefore, there was no "holding out" and no "use[] to sell" under the IRPA. *Id*. at 1100.

Here, as in *Lukis* and *Dobrowolski*, Seamless displays and holds out Plaintiff's (and Class Members') identities in its search results and profiles which are available to free customers <u>before</u> a purchase is made. Under *Huston*, Seamless's pre-purchase display of search result lists and profiles is therefore a "commercial use" under the IRPA. *See Huston*, 53 F.4th at 1102. In fact, Seamless admits that the purpose of making search results and profiles available to free customers is to induce them to purchase a paid membership. Additional Facts ¶¶ 13-14.

In an attempt to refute the applicable caselaw, Seamless argues, first, that it does not use "preview advertisements," and second, that it does not ███████████████████ from which to create the preview advertisements. Mem. at 9-10. That the operation of the Seamless website, platform, algorithm, and real-time search does not exactly duplicate the fact patterns in similar right of publicity cases does not exempt Seamless from liability, it simply adjusts the analysis required. ████████████████████████████████████████████████████████ Additional Facts ¶14. Seamless sells access to its software in four subscription tiers. Response Facts ¶18. It does not matter whether the search result list and profiles are populated from a database or from a real-time search, it matters that Seamless accesses and acquires the information of non-consenting Illinoisians to create and compile its search results lists and profiles that are used and held out to free customers as part of the advertisement for the subscription service. *Lukis*, 549 F. Supp. 3d at 805; *Fischer*, 2022 U.S. Dist. LEXIS 59143, at *32.

Seamless cannot escape liability under IRPA because it is a real-time search engine that offers a free trial. Indeed, it is the combination of these two facts that makes it liable under IRPA for using Illinoisans' names and likenesses for a commercial purpose without their consent.

9

### III.    Seamless Uses Plaintiff's Name and Likeness to Entice the Purchase of Its Subscription Service

Plaintiff agrees that "IRPA prohibits the use of an individual's image to promote or entice the purchase of some other product than the photograph [or profile] itself." Mem. at 10 (quoting *Thompson v. Getty Images (US), Inc.*, 13 C 1063, 2013 WL 3321612, at \*2 (N.D. Ill. July 1, 2013)). It is undisputed that the running of a search expends one credit and to "Find" an individual expends one credit. Response Facts ¶¶12, 16, 19. However, the one-off results of these expenditures of free credits are not the product or service that Seamless sells. ████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████. Additional Facts ¶13; Response Facts ¶¶18, 21. When a free customer has expended all of their free credits by performing searches and "Find[ing]" contact information, if they wish to continue using the platform, they must either ██████████████████████████████

█████████ or purchase a subscription by clicking an "Upgrade" button at a cost between ████████ ██████████████ to continue searching and viewing profiles and contact information. Additional Facts ¶¶16, 17; Response Facts ¶18.

This is the exact same type of service analyzed in *Lukis*, where defendant's similar conduct was found to violate IRPA. 454 F. Supp. 3d at 760 (monthly subscription service gave purchaser access to background reports on anybody in the database). It is disputed what access to Seamless's features a free customer has, Response Facts ¶19, but no matter the offerings made available to a free customer, █████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████. Additional Facts ¶14. Many courts, including three in this District, have held that highly similar website flows were "advertising or selling" and using identities "for a commercial purpose" under IRPA, *see Fischer* and *Lukis*, and parallel state right

of publicity statutes. In *Sessa* (Nevada Right of Publicity Statute) and *Siegel*, the courts held that plaintiffs stated statutory right of publicity claims when they plead that websites provided public access to profiles of the plaintiffs' personal information as part of a "free trial" that expired and required payment after a certain number of searches. *Sessa v. Ancestry.com Ops. Inc.*, 561 F. Supp. 3d 1008, 1030 (D. Nev. 2021) ("free-trial subscribers are expected to convert to paid users if their searches generate sufficient value to the trial subscriber to motivate them to pay for a subscription"); *Siegel v. ZoomInfo Techs.*, 21 C 2032, 2021 WL 4306148, at \*3 (N.D. Ill. Sept. 22, 2021) ("after the free trial expires . . . ZoomInfo sell[s] paid access"); *see also Lukis*¸ 454 F. Supp. 3d at 751 (reaching similar conclusion for website flow using "free preview" reports). This Court has already agreed with *Lukis*, Dkt. 37 at 3, and it should continue to do so. Seamless's use of Plaintiff's identity as part of a free trial, and as part of pages soliciting "Upgrades" to paid subscriptions plans, is use "on or in connection with the offering for sale" and/or "advertising or promoting," and Plaintiff has an IRPA claim.

**IV.  The "Use" of Plaintiff's Name and Likeness by Seamless is Not Protected Non-Commercial Speech Under IRPA and the First Amendment**

Seamless fails to conduct the required analysis under *Bolger v. Youngs Drug Prods.*, 463 U.S. 60, 66-67 (1983), regarding whether its speech contains both commercial and non-commercial elements. *See Gaul v. Truth Now, LLC*, 2022 WL 3647257, at \*8 (C.D. Ill. Aug. 24, 2022); *see also Lukis v. Whitepages, Inc.*, 542 F. Supp. 3d 831, 843-33 (N.D. Ill. 2020) (finding "conclusory" defendant's First Amendment claim that its free previews were non-commercial speech where it did not discuss *Bolger*). Under the *Bolger* test, speech is "commercial" where "(1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech." *Lukis*, 542 F. Supp. 3d at 843. Without citation to *Bolger* and with only one citation to fact, Mem. at 12-13 (citing Dkt. 141 ¶¶19-20), Seamless

makes two conclusory arguments that its free trial is not an advertisement because: (1) it does not offer free previews, and (2) free customers have access to the entire platform and the same functionality as paid customers, *id*.[5]

First, the *Gaul* and *Bolger* analyses do not <u>require</u> the use of free previews to find a commercial purpose. Instead, "[c]ommercial speech is speech that proposes a commercial transaction." Mem. at 12 (quoting *Krause v. Rocketreach*, 561 F. Supp. 3d 778, 783-84 (N.D. Ill. 2021)). The facts show that the flow of Seamless's platform repeatedly proposes a commercial transaction. Response Facts ¶¶12, 16-21; Additional Facts ¶¶11-12, 14, 16-17; *see also* Additional Facts ¶13 ("████████████████████████████████████████████████████████ ██████"). Moreover, Seamless does tease information in its search results list by only showing name and title and a lock icon, and requiring the expenditure of one credit to "Find" the rest of the contact information, Additional Facts ¶¶11-12, ████████████████████████████, *id*. ¶15. Under *Krause*, the use of the plaintiff's identity and likeness to promote defendant's subscription service was enough to find a commercial transaction. 561 F. Supp. 3d at 783. The facts here are undisputed, and, drawing all reasonable inferences in Plaintiff's favor as the non-moving party, the Court should find as a matter of law that Seamless's flow for free trial customers is speech for a commercial purpose and thus an advertisement.

Second, it is disputed whether and to what extent free customers have access to the entire platform and the same functionality as paid customers. Response Facts ¶¶18-19. It is undisputed that free customers are given a limited number of credits ████████████████████████████

---

[5] This Court previously rejected Seamless's First Amendment arguments at the motion to dismiss stage based on allegations in the complaint. Dkt. 37 at 4. Seamless has abandoned its "news" or "public affairs" theories and now rests solely on its argument that Seamless's entire platform is non-commercial speech.



Response Facts ¶16; Additional Facts ¶¶13-16. Drawing all reasonable inferences in Plaintiff's favor, summary judgment is inappropriate here.

## V. Seamless is Not Immune from Liability under Section 230 of the CDA

███████████████████████ Mem. at 14. Google is free for all users forever and requires no credits (free or paid) to find information. ████████████████████████████████

██████████ but that is where the similarities end. Seamless's algorithm scrapes public ███████ information, Response Facts ¶¶6, 11-12, accumulates, reads, and sorts that information, *id.* ¶¶11-13 (Seamless's ██████████████████████████████████████), ████████████████ ████████████████████████████████████████, *id.* ¶¶12, 20, and then provides its software service to free customers to use while pushing for Upgrades at every turn, Additional Facts ¶¶14-17. Seamless is so much more than a "passive conduit" under the undisputed facts here. This Court agreed. Dkt. 37 ("immunity under the CDA applies to websites that are a passive conduit for information posted by others. [] That's not the situation here, at least not so far as it appears from Hoffower's complaint."). Nothing in any of the cases cited by Seamless <u>requires</u> that Seamless's platform use a static database from which Plaintiff's information is compiled into a 'preview advertisement.'[6] Rather, mere compilation and collation of a plaintiff's personal information gathered from public or private sources is sufficient to preclude CDA immunity. *See Lukis*, 454 F. Supp. 3d at 763 (precluding CDA immunity from IRPA liability where

---

[6] Seamless cites another wrongly decided and outlier case, *Callahan v. Ancestry.com Inc.*, 20-CV-08437-LB, 2021 WL 2433893, at *1 (N.D. Cal. June 15, 2021). Mem. at 14. Multiple courts have disagreed with its analysis. *See, e.g.* Dkt. 37 at ¶6 (Seamless is not just a "passive conduit for information posted by others"); *Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 582, 592 (N.D. Ill. 2021) (where defendant "collected and organized records" and used them for commercial gain, CDA immunity does not apply); *Aviva Kellman v. Spokeo, Inc.*, No. 3:21-cv-08976-WHO, 2022 U.S. Dist. LEXIS 135668, at *5 (N.D. Cal. July 8, 2022) (noting that many courts disagreed with the analysis in *Callahan v. Ancestry.com. Inc.*, citing cases).

the plaintiff alleged that the defendant "actively compiled and collected, from several sources, information regarding Lukis"); *Bonilla*, 574 F. Supp. 3d at 592 (allegations "Ancestry collected and organized records and subsequently used Plaintiff's and the putative class members' names, likenesses, and identities in these records they curated for commercial gain" sufficient on Rule 12 to preclude CDA immunity). Accordingly, Seamless is not immune from IRPA liability under the CDA.

## VI. Plaintiff's Claims Are Not Barred by the Statute of Limitations

"Whether the IRPA statute of limitations is one year or five years is an open question, but [t]he weight of authority from this District supports the application of a one-year statute of limitations." *Fischer*, 2022 U.S. Dist. LEXIS 59143, at *19 (internal quotations and citations omitted); *see also Bonilla v. Ancestry.com Operations, Inc., et al*, 628 F. Supp. 3d 812, 818 (N.D. Ill. 2022) ("the one-year limitations period begins with the first publication" of the high school yearbook at issue to the static database operated by defendant). However, what action triggers the running of that statute of limitations given how Seamless's platform operates has yet to be decided. Because Seamless purports to be a "real-time" search engine, Dkt. 141 ¶8, that gathers information about queried individuals from "███████████████████," Response Facts ¶11, it is not "first published" as of a date certain, like in *Blair v. Nevada Landing P'ship*, 369 Ill. App. 3d 318, 323 (2d Dist. 2006) (emphasis added) or *Bonilla v. Ancestry.com Operations Inc.*, 20 C 7390, 2023 WL 3602801, at *3 (N.D. Ill. May 23, 2023). Rather, Seamless's advertisements are a "continuing violation" for which each republication triggers the statute of limitations. *See Yeager v. Innovus Pharms., Inc.*, No. 18-cv-397, 2019 U.S. Dist. LEXIS 18095, at *13 (N.D. Ill. Feb. 5, 2019) (finding the defendant's advertisements that were directed at new audiences and different geographic locations "to continuously advertise to new audiences" was a continuing violation for statute of limitations purposes).

14

As Seamless acknowledges, ███████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████. Additional

Facts ¶18; Response Facts ¶11. Thus, "publication" for the purposes of the statute of limitations

analysis occurs each time a search result and contact profile is returned, ███████████████████

████████████████████████████████████████ and because they are directed

at different users in "different geographic locations." *See Yeager*, 2019 U.S. Dist. LEXIS 18095,

at *13. Seamless's real-time search is therefore more akin to "a continuing violation [] occasioned

by continuing unlawful acts and conduct, not continual ill effects from an initial violation." *Blair*,

369 Ill. App. 3d at 324.

Seamless has taken the position that the only time Plaintiff's contact profile was viewed

was by her prior counsel shortly before this action was filed. Dkt. 141 ¶¶26, 27. Although Plaintiff

disputes this factual contention, *see* Response Facts ¶¶26, 27, Additional Facts ¶¶8, 9, Rule 56(d)

Decl., for the purposes of the statute of limitations, Plaintiff's claims are certainly timely based on

this factual assertion. Seamless offers no evidence that Plaintiff's information could have been

obtained via a search on Seamless's website prior to one year before she brought this action, nor

does it offer any evidence that, even if Plaintiff's information was available to be searched, that it

has not changed such that it has not been re-published since. Plaintiff's claims are not time barred.

## CONCLUSION

Plaintiff respectfully requests this Court deny Defendant Seamless Contacts, Inc.'s motion

for summary judgment.

Dated: April 12, 2024                    Respectfully Submitted,

                                         By: */s/ Brittany Resch*
                                              Brittany Resch

Raina C. Borrelli
Samuel J. Strauss
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
brittanyr@turkestrauss.com
raina@turkestrauss.com
sam@turkestrauss.com

Michael F. Ram (*pro hac vice*)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923
mram@forthepeople.com

Shelby Serig (*pro hac vice*)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
501 Riverside Ave., Suite 1200
Jacksonville, FL 32002
Telephone: (904) 330-3819
sserig@forthepeople.com

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I, Brittany Resch, hereby certify that on April 12, 2024, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to counsel of record via the ECF system.

DATED this 12th day of April, 2024.

TURKE & STRAUSS LLP

By: */s/ Brittany Resch*
    Brittany Resch
    brittanyr@turkestrauss.com
    TURKE & STRAUSS LLP
    613 Williamson St., Suite 201
    Madison, WI 53703
    Telephone: (608) 237-1775
    Facsimile: (608) 509-4423