**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **KATE HOFFOWER, on behalf of herself and all others similarly situated,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 22 C 2079** |
| ) | |
| **SEAMLESS CONTACTS INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**REDACTED AND PUBLICLY FILED
<u>MEMORANDUM OPINION AND ORDER</u>[1]**

MATTHEW F. KENNELLY, District Judge:

Plaintiff Kate Hoffower filed suit on behalf of a putative class against defendant Seamless Contacts Inc. alleging violations of the Illinois Right of Publicity Act (IRPA), 765 ILCS 1075/30. Seamless has moved for summary judgment. For the reasons stated below, the Court grants Seamless's motion.

**Background**

The following facts are undisputed unless otherwise noted.

---

[1] The Court is issuing this decision initially under seal because it includes information that has been designated by the defendant as confidential. The Court is relatively confident that the confidentiality designation has been significantly overused by the defendant in connection with the briefing of the summary judgment motion. The defendant is ordered to show cause in writing by no later than May 24**,** 2024 why the entire decision should not be filed publicly. The defendant's submission must include a point-by-point justification for any material in this decision that it contends should be maintained under seal. The fact that the defendant has designated material as confidential for discovery purposes will not constitute a justification for maintaining that material under seal as incorporated in the Court's decision.

**A.     The Seamless platform**

Seamless is a Delaware corporation headquartered in Ohio.  Seamless operates
a website, seamless.ai.com, that "allows business professionals to use a real-time
search engine to seek information about other businesses and business professionals."
Def.'s L.R. 56.1 Stmt. ¶ 8.  Seamless "utilizes a proprietary algorithm to search in real-
time from billions of available data points on the internet."  *Id*. ¶ 11.  A user can access
Seamless's online platform by registering for a free account.  After creating an account,
a Seamless user is automatically given fifty credits that can be used to access the
website's search functions.  For users with free accounts, credits are refilled monthly.
After a customer has used all their free credits, they are redirected to a page that
provides options for gaining more credits, such as by inviting contacts to join Seamless
or subscribing to a Seamless membership.  Seamless has multiple subscription tiers
ranging in price from $147 to $500 per month. █████████████████████████
███████████████████████████████████████  Def.'s Resp. to Pls.' L.R. 56.1
Stmt. ¶ 13.

A user can perform a search by entering keywords in the search bar on the
Seamless website, or using various search filters, such as "name" or "location."
Conducting a search on the Seamless platform costs one credit.  Once the user has
entered search terms or filters, Seamless displays a list of search results on a new
webpage.  Each search result shows the name, job title, company, and potentially the
location of individuals and businesses that match the user's search parameters.  A user
can view more information about an individual or business by spending an additional
credit to click the "find" button next to the corresponding search result.  After a user

2

clicks the "find" button, information obtained through the platform's algorithm is populated into a template that displays additional information, such as phone numbers, email addresses, locations, or social media pages. Clicking the "find" button also automatically adds the individual or business to the user's "My Contacts" list.

The Seamless platform "operates entirely in real time." Mot. for Summ. J. at 1. After search queries are entered, the information that is displayed in the search results is "compiled from available internet sources" using the algorithm. *Id.* ████████████

████████████████████████████████████████████████████

██████████████████████████████████████████ Def.'s L.R. 56.1 Stmt. ¶ 10. Seamless also asserts that it does not maintain a fixed archive of profiles for individuals or businesses because each profile is a "compilation of many pieces of data gathered over time from various sources, which Seamless generates in real time as it is requested by the user's search." Def.'s Mem. in Opp. to Pl.'s Mot. for Class Cert. at 4-5. ████████████████████████████████

████████████████████████████████████████████████████

██████████████████ *Id.* at 13. Individuals can request to have their information removed from Seamless, and Seamless fulfills those requests by preventing certain pieces of information from being displayed on the platform. Demming Dep. at 167:14-21.

Hoffower disputes Seamless's description of its platform and contends that Seamless stores information about individuals on the "back end" of the platform, which can be accessed only by certain Seamless administrators, such as chief architect officer Austin Floyd. Specifically, Hoffower points to two event logs that the Seamless platform

creates: the "Contacts Search" log and the "My Contacts" log.  When a user performs a search using search filters, those search parameters are saved in the Contacts Search event log.  Floyd Dep. at 117:1-5.  The Contacts Search event log displays the search parameters that the customer used for their search, but not the results that appeared in the search results list.  *Id.* at 109:22-110:14; 117:1-5.  The My Contacts event log tracks every time a user with sufficient credits to perform a search has clicked the "find" button on the website.  *Id.* at 112:1-5.  ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████  *Id.* at 116:2-18.  Through the platform's back end, Seamless administrators can also discover if a user attempted to search for a particular individual or business.  *Id.* at 110:15-22.  Floyd testified that Seamless does not record if an individual has appeared in the results of a search on the platform.  *Id.*  Seamless's co-founder and chief operating officer Danielle Demming testified that she "believe[s] that we have a way to go in and see what our customers have seen" but that Seamless does not keep records of users' search results.  Demming Dep. at 33:18-34:2; 35:20-36:6.  Demmings also testified that users can save the search filters that they entered but not the search results that were displayed after they used those filters.  *Id.* at 32:12-33:6.

**B.  Hoffower's information on Seamless**

After Hoffower initiated this suit, Seamless conducted an investigation to determine whether a Seamless user had ever searched for or viewed Hoffower's information on the platform.  Floyd led this investigation by making a query using Hoffower's name in the back end platform.  Floyd testified that he did not recall how

many queries he ran to determine if Hoffower's name had been searched on the platform or how long it took but that the process was "complex and involved." Floyd Dep. at 107:16-19; 108:3-6. The results of that query showed "the time of the search, the name that was searched," "the filters that were used in the search, and the individual customer that had done the search" on Hoffower. *Id.* at 106:11-21. The query did not indicate whether the search was performed by a free or subscribing customer, but Floyd was able to determine that information by reviewing Stripe, Seamless's subscription and payment management system. *Id.* at 106:22-107:3. The parties agree that Hoffower's former attorney, Ben Osborn, "is the only person to have searched for 'Kate Hoffower' by name" on Seamless. Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶ 24.

Osborn searched the name "Kate Hoffower" on the Seamless platform sometime before she brought this suit in February 2022. Osborn's search displayed two results that purport to contain information about an individual named "Kate Hoffower" on a webpage that also includes the user's number of remaining credits and an "upgrade plan" button:



Compl. at 35. When Osborn clicked "find" on one of the entries, the following profile appeared:



Mot. for Class Cert., Ex. 19.

Hoffower alleges that Seamless violated IRPA, which prohibits the use of an individual's identity for commercial purposes without her written consent. 765 ILCS 1075/30. Specifically, Hoffower alleges that because her name and identifying information appear on the Seamless platform, and Seamless offers potential subscribers the opportunity to conduct additional searches through the purchase of credits, her identity is being used to advertise Seamless's subscription services. Seamless argues that Hoffower does not have standing to bring an IRPA claim and alternatively that no reasonable jury could conclude that Seamless violated her IRPA rights.

## Discussion

Summary judgment is appropriate if "the movant shows that there is no genuine

dispute as to any material fact."  Fed. R. Civ. P. 56(a).  A genuine dispute of material

fact exists only if "sufficient evidence favoring the nonmoving party exists to permit a

jury to return a verdict for that party."  *Egonmwan v. Cook Cnty. Sheriff's Dep't.*, 602

F.3d 845, 849 (7th Cir. 2010) (citation omitted).  When considering a motion for

summary judgment, the Court must "construe all facts and reasonable inferences in

favor of the nonmoving party."  *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d

1068, 1074 (7th Cir. 2016).  "The mere existence of an alleged factual dispute will not

defeat a summary judgment motion; instead, the nonmovant must present definite,

competent evidence in rebuttal."  *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924

(7th Cir. 2004).

## A.    Standing

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and

'Controversies.'"  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting

U.S. Const., Art. III, § 2)).  A case is justiciable only if the plaintiff's personal interest in

the litigation is sufficient to confer standing.  To establish Article III standing, a plaintiff

must show "(1) an injury in fact (2) a sufficient causal connection between the injury and

the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a

favorable decision."  *Susan B. Anthony List*, 573 U.S. at 157-158 (internal quotation

omitted).  "To establish injury in fact, a plaintiff must show that he or she suffered an

invasion of a legally protected interest that is concrete and particularized and actual or

imminent, not conjectural or hypothetical."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339

(2016).

Seamless argues that Hoffower lacks standing because she has not established

8

that her alleged injury is sufficiently concrete. To determine whether an alleged harm is concrete, courts consider whether that harm "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, Inc.*, 578 U.S. at 341. This evaluation "asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021).

Here, Hoffower alleges that Seamless violated IRPA, which prohibits the use of an individual's identity for commercial purposes without written consent. 765 ILCS 1075/30. IRPA codified the common law tort of "right of publicity," also known as the "appropriation of likeness" tort. *Lukis v. Whitepages Inc.*, 549 F. Supp. 3d 798, 805 (N.D. Ill. 2021) (quoting *Douglass v. Hustler Mag., Inc.*, 769 F.2d 1128, 1138 (7th Cir. 1985)). Seamless argues that alleging a violation of IRPA is insufficient to show a concrete injury. *See TransUnion LLC*, 594 U.S. at 427 ("Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."). But multiple judges of this court have concluded that "an IRPA violation inflicts a concrete injury-in-fact under Article III." *Lukis*, 549 F. Supp. 3d at 805 (Feinerman, J.); *Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 590-91 (N.D. Ill. 2021) (Kendall, J.) (concluding that allegation that defendant had used plaintiff's information in violation of IRPA was sufficient to establish standing). Given that the statutory rights provided by IRPA stem directly from the common law right of publicity, Hoffower has identified an adequate common-law analogue that supports her asserted injury as a sufficient basis to confer standing.

Seamless contends that even if Hoffower has properly identified a common law

9

analogue, she lacks standing because she has not shown that her information was shown to a third-party other than her attorney. In support of its argument, Seamless relies heavily on a decision by another judge in this district, *Verde v. Confi-Chek, Inc.*, No. 21 C 50092, 2021 WL 4264674 (N.D. Ill. Sept. 20, 2021) (Reinhard, J.). In that case, a plaintiff alleged that a company violated IRPA by displaying identifying information such as her name, age and address on its website for commercial purposes. *Id.* at *1. The court found that the "plaintiff fail[ed] to allege a concrete injury because she d[id] not allege defendant disclosed any of her information to any third party." *Id.* at *5. But the court also noted that another court in the district had recently come to the opposite conclusion in *Lukis*. Shortly before *Verde*, the judge in *Lukis* considered a case with similar allegations to those at issue in *Verde* and held that the plaintiffs had properly established Article III standing. *Lukis*, 549 F. Supp. 3d at 804-05. After describing the origins and legislative history of IRPA, the judge in *Lukis* noted that "the Seventh Circuit and the Appellate Court of Illinois unsurprisingly have recognized the continuity between the common law and the IRPA." *Id.* at 805. Calling IRPA violations an "easy case" under the Supreme Court's common law analogue test, the court did not consider whether the plaintiffs had alleged that a third party viewed their information on the defendant's website but emphasized the close relationship between IRPA and the common law right of publicity it codified. *Id.*

This Court agrees with the reasoning in *Lukis*. "The Right of Publicity Act . . . completely replaced the common-law tort of appropriation of likeness . . . ." *Blair v. Nevada Landing P'ship*, 369 Ill. App. 3d 318, 323, 859 N.E.2d 1188, 1192 (2006); *see also Dancel v. Groupon, Inc.*, 949 F.3d 999, 1009 (7th Cir. 2019) ("[T]he IRPA has

supplanted the common law right of publicity.").  And IRPA provides that "[t]he rights and remedies provided for in this Act are meant to supplant those available under the common law."  765 ILCS 1075/60.  Furthermore, since *Verde*, courts in other districts have overwhelmingly concluded that alleging third party viewership of the plaintiff's information is not required to establish standing to bring right of publicity claims arising from statutes that are similar to IRPA.  *See, e.g.*, *Nasser v. S. Bend Clinic, LLC*, No. 3:23-CV-506 DRL-MGG, 2024 WL 940065, at *8-9 (N.D. Ind. Mar. 5, 2024) (holding that plaintiff had adequately established injury in fact by alleging violation of state right of publicity statute); *Wilson v. Ancestry.com LLC*, 653 F. Supp. 3d 441, 453 (S.D. Ohio 2023) (same); *Nolen v. PeopleConnect, Inc.*, No. 20-CV-09203-EMC, 2023 WL 4303645, at *5 (N.D. Cal. June 30, 2023) (same).

Seamless contends that at common law, right of publicity claims could only be sustained by individuals who established that "their name and contact information actually had commercial value."  Def.'s Reply at 4.  Seamless argues that because Hoffower has not shown that her identity had "notoriety," she cannot rely on the right of publicity to establish a common law analogue sufficient to confer Article III standing.  *Id.* This argument is unpersuasive.  The Supreme Court has stated that the historical inquiry used to evaluate a potential injury in fact "does not require an exact duplicate in American history and tradition."  *TransUnion LLC*, 594 U.S. at 424.  In other words, to establish standing, a plaintiff need not demonstrate that they are able to meet all of the elements of the common law analogue.  Where, as here, the plaintiff sues for a statutory violation that has a clear relationship to a traditionally cognizable harm, Hoffower's allegation that Seamless violated that statute is sufficient to confer standing.

11

Additionally, although the right of publicity tort was initially established to "protect the commercial value of a celebrity's identity," it evolved to protect both "a private individual whose harm was to personal feelings as well as the celebrity whose likeness had an established value." *Trannel v. Prairie Ridge Media, Inc.*, 2013 IL App (2d) 120725, ¶ 15 (2013); *Sessa v. Ancestry.com Operations Inc.*, 561 F. Supp. 3d 1008, 1022 (D. Nev. 2021), *vacated on other grounds*, No. 220CV02292, 2024 WL 195995, at *6 (D. Nev. Jan. 17, 2024) ("At common law, even individuals whose likenesses did not have inherent value could assert a property interest in their likenesses.").  In short, Hoffower is not required to show that her identity has "value" to have standing to bring an IRPA claim.

This Court finds that Hoffower has articulated a concrete injury sufficient to confer Article III standing.

**B.    Commercial purpose**

IRPA prohibits the unauthorized use of an individual's identity for "commercial purposes."  765 ILCS 1075/30.  A commercial purpose is defined as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; [or] (ii) for purposes of advertising or promoting products, merchandise, goods, or services . . ."  765 ILCS 1075/5.  IRPA "covers all aspects of a person's identity, whether the information is derived from public or private sources."  *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 761 (N.D. Ill. 2020) (citing *Gabiola v. Sarid*, No. 16-CV-02076, 2017 WL 4264000, at *6-7 (N.D. Ill. Sept. 26, 2017) (holding IRPA consent requirement applies to information contained in a public record)).  Seamless argues that no reasonable jury could find that it used or held out

12

Hoffower's identity on its website at any time other than when her former lawyer searched her name on the Seamless platform.  The Court agrees.

"The term 'public use' in the IRPA means that some substantial number of people saw or were exposed to a person's identity."  *Fischer v. Instant Checkmate LLC*, No. 19 C 4892, 2022 WL 971479, at *10 (N.D. Ill. Mar. 31, 2022).  In contrast, "the term 'holding out' does not require that the individual's identity was seen by others."  *Id.* (citing *Trannel*, 2013 IL App (2d) 120725, ¶ 21).  Holding out means "the representation . . . of an individual's identity on or in connection with certain activities."  *Trannel*, 2013 IL App (2d) 120725, ¶ 21.  Hoffower does not argue that her identifying information was seen by or exposed to a substantial number of people.  Hoffower therefore can only withstand summary judgment if there is a genuine factual dispute regarding whether Seamless "held out" her identity.

Hoffower argues that Seamless held out her identity by displaying her name and other identifying information in search results and on a profile page created after a Seamless user clicks the "find" button.  Pl.'s Resp. at 7-8.  Even if the Court were to agree that an individual's information appearing in a search result or being saved to a customer's My Contacts list constitutes "holding out" within the meaning of IRPA, there is no evidence that the Seamless platform displayed Hoffower's information at any time other than the single instance when her then attorney searched her name on the Seamless website.  Hoffower admits that Seamless's chief architect officer reviewed event logs and determined that Hoffower's former attorney was the only user to have ever clicked the "find" button on a search result for an entry titled "Kate Hoffower." Def.'s L.R. 56.1 Stmt. ¶¶ 25-26; Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶ 26.  Seamless

claims that it does not track or store the results that are displayed to users after they initiate a search. Def.'s L.R. 56.1 Stmt. ¶ 10. Seamless asserts that it saves information regarding the search filters that the user inputted to run a search on the platform, but because the platform's algorithm produces search results in real-time, searches using the same filters can yield different results. Demming Dep. at 33:7-17. Additionally, Seamless maintains that there is "no way" for its staff to determine the origin of the data points that appear in search results or profiles that are displayed on the platform. *Id*. at 91:3-24; 92:8-17. Thus, a search conducted today using search filters that were applied by a Seamless user in the past may display information about Hoffower that was not displayed when the Seamless user conducted the original search that was saved in the event log. Based on the evidence in the record, it is impossible to determine that Hoffower's identifying information ever appeared in a prior search result.

Seamless contends that "the only time that [Hoffower]'s information has ever existed on the Seamless platform was when Plaintiff's own attorney searched for it." Def.'s Reply at 8. And as just indicated, there is no evidence—and, it appears, no way to find evidence—to the contrary. Thus Hoffower must "provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Hoffower points to no specific facts disputing Seamless's contention. She says that Seamless "cannot confirm with any certainty that [Hoffower]'s information was never searched for or viewed by anybody other than her attorney." Pl.'s Resp. at 6. But identifying a "[m]etaphysical doubt as to the material facts"—which is all Hoffower has done—is insufficient to withstand summary judgement. *Carroll*, 698 F.3d at 564 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Hoffower's claims regarding whether her information "has ever been returned in a search results list" or "has ever been saved to a customer's My Contacts List" are based entirely on speculation and not on any admissible evidence in the record.  *See* Pl.'s Resp. at 7.  And although Hoffower receives the benefit of all reasonable inferences, a court's "favor toward the nonmoving party does not extend to drawing '[i]nferences that are supported by only speculation or conjecture.'"  *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 721 (7th Cir. 2018) (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008)).

The cases Hoffower cites are distinguishable.  In *Trannel v. Prairie Ridge Media, Inc.*, 2013 IL App (2d) 120725 (2013), the plaintiff sued a magazine that included a photo of her and her daughter in a "media kit" that was distributed to various advertisers.  *Id.* at ¶¶ 3-6.  The Illinois Appellate Court overruled the defendant's motion for summary judgment, holding that "in deliberately placing plaintiff's and her daughter's identities on the cover, defendant was representing, or holding out, plaintiff's and her daughter's identities."  *Id.* ¶ 21.  Due to the nature of magazine publication, it was undisputed that the plaintiff's likeness had been displayed on the defendant's product.  The court's decision in *Trannel* does not support Hoffower's argument.

*Fischer v. Instant Checkmate* involved a motion for class certification, not a summary judgment motion.  *See Fischer*, 2022 WL 971149, at *1.  In that case, the plaintiff brought a putative class action against Instant Checkmate, a company that "searches for and obtains private and public records and identifying information" about individuals in order to "compile[] and generate[]" online background reports.  *Lukis*, 454 F.Supp.3d at 754.  Instant Checkmate also offers a "monthly subscription enabling the

subscriber to view background reports of persons in Instant Checkmate's database." *Id.* at 755. Unlike the defendant in *Fischer*, there is no evidence that Seamless stores the information that appears on its platform in an electronic database or directory. Hoffower asserts that IRPA liability should not depend on whether a defendant acquires information from a static database or a real-time search engine. But she cites no legal authority in support of the proposition that the mere *possibility* that a plaintiff's information could be held out on the defendant's platform is sufficient to establish IRPA liability. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at 9.

Additionally, the plain text of IRPA does not support Hoffower's reading of the statute. Although state and federal court guidance on the application of IRPA in the context of real-time search engines is limited, "[s]tatutory interpretation begins with the plain language of the statute." *United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008); *Int'l Ass'n of Fire Fighters, Loc. 50 v. City of Peoria*, 2022 IL 127040, ¶ 12, 193 N.E.3d 1208, 1213 ("The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent, and the best indicator of that intent is the statutory language, given its plain and ordinary meaning.") (citation omitted). IRPA defines an individual's right of publicity as "[t]he right to control and to choose whether and how to use an individual's identity for commercial purposes." 765 ILCS 1075/10; *Brown v. ACMI Pop Div.*, 375 Ill. App. 3d 276, 283, 873 N.E.2d 954, 959 (2007). This right, thus defined, is infringed only if the defendant used or exercised control over the plaintiff's identity in a manner to which the plaintiff did not consent. Before Hoffower's information was displayed on the Seamless platform when her lawyer ran a search for her name, her identity was only "used" by Seamless to the extent that her identifying information

16

could potentially appear among the billions of data points that Seamless's algorithm draws from to complete users' search queries. That is insufficient to constitute "holding out" her identity.

Furthermore, as noted above, the only evidence Hoffower presents of Seamless displaying her identifying information resulted from her former attorney searching for her name on the Seamless platform. This Court cannot endorse a reading of IRPA that permits a plaintiff to obtain relief based on her own attorney making a direct request for, and then obtaining, the plaintiff's identifying information. And allowing a plaintiff to bring an IRPA claim without the defendant having actually shown or displayed the plaintiff's identifying information would negate the statute's requirement that a violation consists of the defendant's *handling* of that information, specifically the "use" or "holding out" of it.

Hoffower has adduced no evidence that would allow a reasonable jury to conclude that Seamless publicly used or held out her identifying information on its platform for commercial purposes. This Court therefore grants Seamless's motion for summary judgment.

## Conclusion

For the reasons stated above, the Court grants the defendant's summary judgment motion [dkt. no. 143]. Because the Court is granting summary judgment on the plaintiff's claim, it denies as moot her motion for class certification [dkt. no. 104]. In addition, because of the amount of information in this decision that has been designated as confidential in the parties' briefs (mostly at the defendant's instance), the Court is initially filing the entire order under seal. The defendant is ordered to show cause in writing by no later than May 24, 2024 why the entire decision should not be filed

17

publicly.  The defendant's submission must include a point-by-point justification for any material in this decision that it contends should be maintained under seal.  The fact that the defendant has designated material as confidential for discovery purposes will not constitute a justification for maintaining that material under seal as incorporated in the Court's decision.  A telephonic status hearing, unless deemed unnecessary by the Court, is set for May 28, 2024 at 9:30 a.m., using call-in number 888-684-8852, access code 746-1053.

MATTHEW F. KENNELLY
United States District Judge

Date:  May 20, 2024